UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| D.A., A.A., and LUCINDA DEL CARMEN PADILLA-GONZALES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 20 C 3082 |
| UNITED STATES OF AMERICA, HEARTLAND ALLIANCE FOR HUMAN NEEDS AND HUMAN RIGHTS, and HEARTLAND HUMAN CARE SERVICES, INC., | ) ) ) ) ) ) | Judge Pacold |
| Defendants. | ) ) | |

## MOTION TO DISMISS

Date: September 9, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DOUGLAS G. SMITH
Deputy Assistant Attorney General, Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

LEGAL FRAMEWORK ......................................................................................... 2

    I.   Legal Framework for Aliens Entering The United States Unlawfully ................................ 2

    II.  Legal Framework for Immigration Custody and Release of Minor Aliens ........................ 3

    III. Executive Branch Directives Regarding Immigration Enforcement ................................. 5

PLAINTIFF'S COMPLAINT ................................................................................... 7

ARGUMENT ......................................................................................................... 8

    I.   Plaintiff's Claims Are Barred Because the FTCA Does Not Authorize Recovery For Constitutional Torts. .......................................................................................... 8

    II.  Plaintiff's Claims Are Barred By the FTCA's Discretionary Function Exception ........... 10

    III. Plaintiff's Claims Are Barred By the FTCA's Due Care Exception ................................. 18

    IV. Plaintiff's Claims Are Barred Because There Is No Private Analog ................................ 20

CONCLUSION ..................................................................................................... 23

CERTIFICATE OF SERVICE .............................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Statutes:**

6 U.S.C. § 279 ........................................................................................................... 3, 4

8 C.F.R. § 1236.3 ............................................................................................................. 14

8 C.F.R. § 235.3 ................................................................................................................. 3

8 U.S.C. § 1182 ........................................................................................................... 2, 3, 4

8 U.S.C. § 1225 ................................................................................................................. 3

8 U.S.C. § 1226 ................................................................................................................. 3

8 U.S.C. § 1231 ................................................................................................................. 3

8 U.S.C. § 1232 ...................................................................................................... 3, 4, 13, 14

8 U.S.C. § 1325 ........................................................................................................... 2, 6, 7

8 U.S.C. § 1225 ............................................................................................................... 20

8 U.S.C. § 1226(a) ........................................................................................................... 20

8 U.S.C. § 1231(g)(1) ....................................................................................................... 20

8 U.S.C. § 1232 ............................................................................................................... 20

16 U.S.C.A. § 703 ........................................................................................................... 19

28 U.S.C. § 1346 ............................................................................................... 1, 2, 9, 17, 19, 20

28 U.S.C. § 2674 ............................................................................................................. 20

28 U.S.C. § 2680 ...................................................................................................... 2, 10, 15, 18

**Cases:**

*Accardi v. United States,*
  435 F.2d 1239 (3d Cir. 1970) ............................................................................... 18

*Aguilar v. United States,*
  No. 1:16-048, 2017 WL 6034652 (S.D. Tex. June 7, 2017) ............................... 15

*Air Shuttle Corp. v. United States,*
  112 F.3d 532 (1st Cir. 1997) ............................................................................... 21

*Akutowicz v. United States,*
  859 F.2d 1122 (2d Cir. 1988) ......................................................................... 21, 22

*Antonelli v. Crow,*
  No. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ............................... 15

*Bailor v. Salvation Army,*
  51 F.3d 678 (7th Cir. 1995) ............................................................................. 12, 13

*Berkovitz v. United States,*
  486 U.S. 531 (1988) ....................................................................................... 11, 16

*Bhuiyan v. United States,*
  772 Fed. App'x 564 (9th Cir. 2019) ................................................................... 21

*Borquez v. United States*,
    773 F.2d 1050 (9th Cir. 1985) ........................................................................ 19

*Bultema v. United States*,
    359 F.3d 379 (6th Cir. 2004) .......................................................................... 15

*Bunikyte v. Chertoff*,
    No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............................... 5

*Burkhart v. Wash. Metro. Area Trans. Auth.*,
    112 F.3d 1207 (D.C. Cir. 1997) ..................................................................... 15

*C.M. v. United States*,
    No. 19-5217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ...................... 17, 21

*Calderon v. United States*,
    123 F.3d 947 (7th Cir.1997) ........................................................................... 12

*Cassens v. St. Louis River Cruise Lines*,
    Inc., 44 F.3d 508 (7th Cir. 1995) ................................................................... 11

*Chen v. United States*,
    854 F.2d 622 (2d Cir. 1988) ........................................................................... 20

*Cmtte. Of Cent. Am. Refugees v. I.N.S.*,
    795 F.2d 1434 (9th Cir. 1986) .................................................................. 12, 13

*Cosby v. Marshals Service*,
    520 F. App'x 819 (11th Cir. 2013) ................................................................. 15

*Dalehite v. United States*,
    346 U.S. 15 (1953) ......................................................................................... 18

*Dupree v. United States*,
    247 F.2d 819 (3d Cir. 1957) ........................................................................... 18

*Edwards v. Johnson*,
    209 F.3d 772 (5th Cir. 2000) .......................................................................... 17

*Elgamal v. Bernacke*,
    714 Fed. App'x 741 (9th Cir. 2018) ............................................................... 21

*Elgamal v. United States*,
    No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) ........................... 21

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*,
    592 F.2d 364 (7th Cir. 1979) .......................................................................... 19

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ..................................................................................... 8, 9

*Franklin Sav. Corp. v. United States*,
    180 F.3d 1124 (10th Cir. 1999) ..................................................................... 16

*Halverson v. United States*,
    972 F.2d 654 (5th Cir. 1992) ............................................................................... 15

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987) ............................................................................... 12

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) ..................................................................... 4, 5, 14

*J.F.G. v. Hott*,
    921 F.3d 204 (4th Cir. 2019) ............................................................................... 17

*Jennings v. Rodriguez*,
    138 S. Ct. 830 (2018) ........................................................................................ 2-3

*Kiiskila v. United States*,
    466 F.2d 626 (7th Cir. 1972) ............................................................................... 17

*Linder v. United States*,
    937 F.3d 1087 (7th Cir. 2019) ................................................................. 9, 12, 16-17

*Lineberry v. United States*,
    No. 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ..................... 15

*Lipsey v. United States*,
    879 F.3d 249 (7th Cir. 2018) ............................................................................... 13

*Liranzo v. United States*,
    690 F.3d 78 (2d Cir. 2012) ................................................................................. 20

*Maas v. United States*,
    94 F.3d 291 (7th Cir. 1996) ............................................................................... 11

*Marin-Garcia Holder*,
    647 F.3d 666 (7th Cir. 2011) ............................................................................... 17

*Mazur v. United States*,
    957 F. Supp. 1041 (N.D. Ill. 1997) ..................................................................... 21

*McGowan v. United States*,
    825 F.3d 118 (2d Cir. 2016) ............................................................................... 22

*Mejia-Mejia v. ICE*,
    No. 18-1445, 2019 WL 4707150 (D.D.C. Sept. 26, 2019) .............................. 13

*Menolascina v. United States*,
    No. 12-cv-90, 2013 WL 707920 (N.D. Ill. Feb. 26, 2013) .............................. 15

*Molzof v. United States*,
    502 U.S. 301 (1992) ........................................................................................... 10

*Ms. L. v. ICE*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018) ....................................................... 8, 10

*Olim v. Wakinekona*,
  461 U.S. 238 (1983) ......................................................................................... 17

*Parrott v. United States*,
  536 F.3d 629 (7th Cir. 2008) ..................................................................... 12, 15

*Patel v. United States*,
  398 F. App'x 22 (5th Cir. 2010) ....................................................................... 15

*Payne-Barahana v. Gonzales*,
  474 F.3d 1, 2 & n.1 (1st Cir. 2007) ................................................................. 17

*Powell v. United States*,
  233 F.2d 851 (10th Cir. 1956) ..................................................................... 18-19

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ......................................................................................... 12

*Reynolds v. United States*,
  549 F.3d 1108 (7th Cir. 2008) ..................................................................... 11, 16

*Richards v. United States*,
  369 U.S. 1 (1962) ............................................................................................. 10

*Santana-Rosa v. United States*,
  335 F.3d 39 (1st Cir. 2003) ......................................................................... 13, 15

*Sickman v. United States*,
184 F.2d 616 (7th Cir. 1950) ............................................................................. 19

*Sutter v. United States*,
  No. 17-07245, 2019 WL 1841905 (C.D. Cal. March 12, 2019) ....................... 15

*Thompson v. United States*,
  No. 1:14–0894, 2015 WL 5567934 (M.D. Pa. Sept. 21, 2015)......................... 15

*United States v. Armstrong*,
  517 U.S. 456 (1996) ......................................................................................... 12

*United States v. Dominguez-Portillo*,
  No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ............... 4-5, 5, 17

*United States v. Gaubert*,
  499 U.S. 315, 322-23 (1991)....................................................................... 11, 12

*United States v. Olson*,
  546 U.S. 43 (2005) ........................................................................................... 20

*United States v. Orleans*,
  425 U.S. 807 (1976) ........................................................................................... 8

*United States v. Delgado-Garcia*,
  374 F.3d 1337 (D.C. Cir. 2004) ....................................................................... 12

*Vinzant v. United States*,
    458 F. App'x 329 (5th Cir. 2012) ........................................................................................ 15

*Walding v. United States*,
    955 F. Supp. 2d 759 (W.D. Tex. 2013) ............................................................................. 14

*White v. Pazin*,
    2016 WL 6124234 (E.D. Cal. Feb. 16, 2017) ................................................................. 17

**Other Authorities**:

83 Fed. Reg. 16179 (Apr. 13, 2018) ........................................................................................ 6

Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2018) ........................................... 5, 6

Fed. R. Civ. P 12 ...................................................................................................................... 1

*U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry
(April 6, 2018)*, 2018 WL 1666622 ....................................................................................... 6-7

Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction based on the grounds set forth below in the memorandum in support.

## <u>INTRODUCTION</u>

This case arises from events occurring during a time of crisis on the southern border, when there was a surge of illegal immigration and human-trafficking, as tens of thousands of immigrants from Central America crossed Mexico and sought to enter the United States unlawfully.  In response, the United States government, exercising its prosecutorial discretion, increased its enforcement efforts, leading to the detention of individuals unlawfully crossing the border pending prosecution and/or deportation for violation of criminal and immigration law. Plaintiff – Lucinda del Carmen Padilla-Gonzalez ("Plaintiff") – brings this action against the United States on her own behalf and on behalf of two of her children, D.A. and A.A., under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages based on her detention and separation from her children after they entered the United States unlawfully.  Plaintiff alleges that her family was needlessly separated for approximately five weeks pursuant to "family separation practices" that she alleges were unconstitutional.

Plaintiff's claims are barred for multiple reasons.  First, Plaintiff's claims are barred because the FTCA does not authorize recovery for "constitutional torts" like those Plaintiff pursues here.  The Supreme Court and Seventh Circuit have held that the FTCA waives the government's sovereign immunity only for certain common-law torts and does not provide a mechanism for pursuing torts involving alleged constitutional violations.  Second, Plaintiff's claims are barred by the discretionary function exception to the FTCA, which shields the United States from liability for discretionary decision-making relating to enforcement of federal

criminal and immigration law.  28 U.S.C. § 2680(a).  Courts have consistently recognized that the federal government must remain free to make such discretionary decisions without the threat of tort liability, particularly where, as here, the government exercised its broad prosecutorial discretion to respond to a significant crisis on the border.  Third, Plaintiff's claims are barred by the due care exception to the FTCA because the government actions that resulted in the separation were authorized by a well-established statutory and regulatory framework of federal criminal and immigration law.  *Id.*  Finally, there is no private person analog for Plaintiff's claims, as required for waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1), because the claims arise out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement that are activities in which only the government, and not private parties, may engage.

## LEGAL FRAMEWORK

### I.  Legal Framework for Aliens Entering The United States Unlawfully

Under the Immigration and Nationality Act ("INA"), any alien present in the United States without being admitted or paroled is inadmissible and subject to removal.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers."  8 U.S.C. § 1325.

Aliens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by immigration officers" to assess the validity of their claims.  *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b).  The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded."  *Jennings v. Rodriguez*, 138 S.

Ct. 830, 842 (2018).  Specifically, such aliens "shall be detained pending a final determination of credible fear prosecution and, if found not to have such fear, until removed."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A).  The Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under narrowly prescribed circumstances assessed on a "case-by-case basis."  *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii).

The detention of aliens is further authorized by 8 U.S.C. § 1226(a), which provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  *See* 8 U.S.C. § 1231(g)(1).

## II.      Legal Framework for Immigration Custody and Release of Minor Aliens

Federal immigration law expressly authorizes the United States to provide for the custody and care of minor children entering the United States unlawfully.  *See* 6 U.S.C. § 279 and 8 U.S.C. § 1232.  Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B).

The TVPRA provides that a child may be placed with a proposed custodian only after ORR "makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. §1232(c)(3)(A). "Such determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.*

In addition to this legal framework, the federal government entered into a consent decree (the *Flores* Agreement)[1] enforced in the Central District of California that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). Under the *Flores* Agreement, "[w]ithin five days of arrest, [DHS] must transfer the minor to a non-secure, licensed facility[.]" *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12).

However, the Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id*. at 906; *see also United States v. Dominguez-Portillo,* No. 17-MJ-4409, 2018 WL 315759, at *9

---

[1] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101).

4

(W.D. Tex. Jan. 5, 2018) *9 ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").

Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). While the *Flores* Agreement gives preference to release of minors to a parent, that "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

### III.     Executive Branch Directives Regarding Immigration Enforcement

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws in response to a "surge of illegal immigration at the southern border with Mexico" and the operation of "sophisticated drug- and human-trafficking networks" – events the Executive Branch determined were a "significant threat to national security and public safety." Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2018).

In January 2017, the President issued Executive Order No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" *Id.* § 2(b). EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law[,]" *id*. § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain

language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole," *id*. § 11(d).

On April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement, and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325, noting that "[c]onsistent and vigorous enforcement of key laws will disrupt organizations and deter unlawful conduct."[2]

On April 6, 2018, the White House issued a Presidential Memorandum entitled "Ending 'Catch and Release' at the Border of the United States and Directing Other Enhancements to Immigration Enforcement," which required the Secretary of DHS to report on progress implementing EO 13767's directive "to issue policy guidance regarding the appropriate and consistent use of detention authority under the Immigration and Nationality Act (INA), including termination of the practice known as 'catch and release,' whereby aliens are released in the United States shortly after their apprehension for violations of our immigration laws." 83 Fed. Reg. 16179 (Apr. 13, 2018).

That same day, the Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter the "Zero Tolerance Memorandum"). Citing "a 203 percent increase in illegal border crossings" in the prior year and "the largest month-to-month increase since 2011," the memorandum directed federal prosecutors along the southwest border to immediately accept for

---

[2] *See* U.S. Department of Justice, Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

prosecution, to the extent practicable, all § 1325(a) offenses referred for prosecution. *Id*. As the Attorney General explained, "a crisis has erupted at our Southwest Border that necessitates an escalated effort to prosecute those who choose to illegally cross our border." *Id*.

Consistent with EO 13767, the April 2018 Presidential Memorandum, and the Zero Tolerance Memorandum, DHS referred for prosecution adult aliens – including those traveling with children – who unlawfully entered the United States on the southwest border in violation of § 1325 or other statutory provisions authorizing criminal prosecution. Alien minor children of those adults were transferred to ORR custody as UACs.

## PLAINTIFF'S COMPLAINT

On or about May 23, 2018, Plaintiff illegally crossed the United States border into Texas between ports of entry with her minor children, D.A. and A.A., in violation of 8 U.S.C. § 1325. Compl. ¶¶ 2, 20. Shortly after crossing the border, Plaintiff and her children were apprehended by Customs and Border Protection ("CBP") officers and transported to a holding center at the Ysleta Port of Entry in El Paso, Texas, where they were held together for approximately a day and a half. Compl. ¶¶ 21-23. Consistent with the Executive Branch enforcement directives discussed above, Plaintiff was charged criminally for improper entry; on approximately May 24, 2018, Plaintiff was detained and separated from her children as she was transported from the CBP holding facility to criminal custody for her criminal proceedings. Compl. ¶¶ 25, 50.

On June 4, 2018, Plaintiff was convicted for improper entry under 8 U.S.C. § 1325 and was sentenced to a one-year probation. Compl. ¶ 51. Following the criminal proceedings, Plaintiff was transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE"), where she remained in secure adult immigration detention until August 21, 2018, when she was released on bond. Compl. ¶¶ 52, 58.

Because Plaintiff was detained pending criminal prosecution, her children were designated UACs. Compl. ¶ 19. Following Plaintiff's transfer from CBP custody for her criminal proceedings, the children were transferred to ORR, and temporarily placed with Heartland Human Care Services, Inc. ("Heartland") in Chicago, Illinois, a grantee that houses and cares for UACs. Compl. ¶¶ 19, 28-31. After ORR completed its assessment regarding his suitability as a sponsor, on June 29, 2018, the children were released to their father, who had crossed the border a month before Plaintiff and was already living in the United States. Compl. ¶¶ 2, 45.

Nearly two years later, Plaintiff filed this lawsuit against the United States seeking money damages pursuant to the FTCA, alleging that "Defendants needlessly separated the fourteen-year-old and the five-year-old from their parents for approximately five weeks." Compl. ¶ 49. Plaintiff alleges that she and her children were subjected to the same "family separation practices" ruled "unconstitutional" on due process grounds in *Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018). Compl. ¶¶ 64, 71-73. In addition, Plaintiff alleges that the separation practices were unconstitutional because they were "motivated by discriminatory animus toward Latino immigrants of Central American origin." Compl. ¶ 73.

## ARGUMENT

### I. Plaintiff's Claims Are Barred Because the FTCA Does Not Authorize Recovery For Constitutional Torts.

The United States enjoys broad immunity from suit and "can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976). Accordingly, absent a specific waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

While the FTCA provides a limited waiver of sovereign immunity that authorizes suits against the United States for certain common-law tort claims, the Supreme Court has held that the FTCA does not provide a cause of action for torts involving alleged constitutional violations. *Id.* at 477. As the Supreme Court explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person'" "'in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)). "A constitutional tort claim . . . could not contain such an allegation." *Id.* at 477-78. This is because, as the Supreme Court observed, the Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA." *Id.* at 478. "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Id.* Accordingly, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Id.*

The Seventh Circuit recently issued a similar decision in *Linder v. United States*, affirming the dismissal of claims for malicious prosecution and intentional infliction of emotional distress that included allegations of constitutional violations on the ground that the FTCA "does not apply to constitutional violations." 937 F.3d 1087, 1091 (7th Cir. 2019). As the court explained, the FTCA "applies to torts as defined by state law—that is to say, 'circumstances where the United States, *if a private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)(1)) (emphasis in original). The FTCA is "a means to seek damages for common-law torts, without regard to constitutional theories." *Id.*

Here, Plaintiff seeks to recover for alleged violations of her constitutional rights in the face of these rulings. Plaintiff alleges that she and her children were subjected to the same

"family separation practices" that the court ruled "unconstitutional" in *Ms. L. v. ICE*, 310 F.

Supp. 3d 1133 (S.D. Cal. 2018).  Compl. ¶¶ 64, 71-73.  According to Plaintiff, the court in *Ms. L*

determined in a preliminary injunction ruling that "the family separation practice Lucinda, D.A.

and A.A. were subject to likely violated parents' and children's due process rights."  Compl. ¶

72.  Plaintiff further alleges that "[t]he separation of Lucinda, D.A., and A.A. was additionally

unconstitutional because it was motivated by discriminatory animus toward Latino immigrants of

Central American origin in particular."  Compl. ¶ 73.  However, as the Supreme Court and

Seventh Circuit have held, the FTCA does not authorize recovery for torts involving such alleged

constitutional violations, and accordingly Plaintiff's complaint should be dismissed.

## II.    Plaintiff's Claims Are Barred By the FTCA's Discretionary Function Exception

Plaintiff's claims further fail because they fall within express exceptions in the FTCA

that "are designed to protect certain important governmental functions and prerogatives from

disruption."  *Molzof v. United States*, 502 U.S. 301, 311 (1992); *see also Richards v. United

States*, 369 U.S. 1, 13 n.28 (1962).

One such exception – the "discretionary function" exception – bars "[a]ny claim" that is

"based upon the exercise or performance or the failure to exercise or perform a discretionary

function or duty on the part of a federal agency or an employee of the Government, whether or

not the discretion involved be abused."  28 U.S.C. § 2680(a).  As the legislative history of the

FTCA explains, the statute was "not intended to authorize suit for damages to test the validity of

or provide a remedy on account of such discretionary acts even though negligently performed

and involving an abuse of discretion."  H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The discretionary function exception bars claims based on government acts that "involve an element of judgment or choice"[3] and are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (citation and internal quotation marks omitted). "The basis for the discretionary function exception was Congress' desire to 'prevent judicial "second-guessing"' of legislative and administrative decisions grounded on social, economic, and political policy through the medium of an action in tort." *Berkovitz v. United* States, 486 U.S. 531, 536 (1988).

Under this exception, "[t]he relevant inquiry is merely whether the conduct at issue is 'susceptible to policy analysis.'" *Maas*, 94 F.3d at 298 (citing *Gaubert*, 499 U.S. at 325). "The focus of the inquiry is *not* on the agent's subjective intent in exercising the discretion conferred by statute or regulation." *Gaubert*, 499 U.S. at 325 (emphasis added). Rather, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324; *see also Cassens*, 44 F.3d at 515; *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (discretionary function exception applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis").

In sum, if the challenged actions "involve an element of judgment or choice" and are "susceptible to" policy analysis, the discretionary function exception applies and the complaint must be dismissed for lack of subject matter jurisdiction, regardless of whether the government

---

[3] This is in contrast to situations in which "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow," *Gaubert*, 499 U.S. at 322, by providing a "precise and optionless directive" that the employee fails to follow, *Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996). *See also Cassens v. St. Louis River Cruise Lines, Inc.,* 44 F.3d 508, 513 (7th Cir. 1995) (conduct is discretionary when the statutes or regulations do not "specify a course of conduct" or lack "specific directives").

acted negligently or abused its discretion. *See Gaubert*, 499 U.S. at 323; *Linder*, 937 F.3d at 1090; *Calderon v. United States*, 123 F.3d 947, 948 (7th Cir.1997) (affirming dismissal of action pursuant to Federal Rule of Civil Procedure 12(b)(1)); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (same).[4]

Here, Plaintiff's claims are barred because they involve precisely the sort of discretionary decision-making that is shielded by the FTCA. As the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong,* 517 U.S. 456, 464 (1996). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)).

Concerns about "subjecting the prosecutor's motives and decisionmaking to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). This is because the "country's border-control policies are of crucial importance to the national security and foreign policy of the United States." *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004).

A corollary of this prosecutorial discretion is that law enforcement authorities have discretionary decision-making authority regarding detention and conditions of confinement. Thus, for example, "Congress has placed the responsibility of determining where aliens are detained *within the discretion* of the Attorney General." *Cmtte. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added). Indeed, decisions relating to aliens,

---

[4] *But see Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008) (Section 2680 defenses are affirmative defenses). Where, as here, a motion brings a facial attack on the complaint that accepts all allegations as true, the standard of review is the same and does not affect the outcome here.

including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.* (quoting *Hampton v. Mow Sung Wong*, 426 U.S. 88 (1975)).[5]

Where children are involved, there are many additional policy considerations to take into account. As is evidenced by the regulatory framework outlined above, government officials take into account not only a number of law enforcement considerations, but also child welfare considerations, such as what is in the "best interests of the child." *See* 8 U.S.C. § 1232(c)(2)(A). Such decisions relating to health and welfare are the very sort of discretionary decisions that the discretionary function exception was designed to protect.

Plaintiff here was detained and prosecuted pursuant to the government's policy to increase enforcement of existing immigration law when confronted with a surge in illegal immigration and human-trafficking along the southern border. That decision was not merely "susceptible to" a policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of specific Executive directives. As other courts have recognized, the "zero tolerance" policy at issue here "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No. 18-1445, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019).

As a result of the government's discretionary decision to prosecute and detain Plaintiff, her minor children were placed in the care and custody of ORR, which was vested with authority

---

[5] *See also Bailor*, 51 F.3d at 685 (decisions regarding whether to detain or release are policy-based decisions protected by the discretionary function exception); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units. . . must be viewed as falling within the discretionary function exception to the FTCA").

to make a range of discretionary decisions to ensure their health and welfare. In particular, "[i]t is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations." *Walding v. United* States, 955 F. Supp. 2d 759, 771-72 (W.D. Tex. 2013). Accordingly, the separation that forms the basis of Plaintiff's complaint was the consequence of discretionary decision-making, and Plaintiff's claims are therefore barred.[6]

Similarly, while Plaintiff's complaint alleges that defendants "unnecessarily delay[ed]" the release of the children to their father until five weeks after their apprehension (Compl. ¶¶ 46-49), again that alleged "delay" was occasioned by discretionary decisions regarding the protection of the health and safety of children in the government's care and custody. As outlined above, in the exercise of its discretion, ORR seeks to verify the "custodian's identity and relationship to the child" and ensure "that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). There is no specific deadline for release of children to custodians that is imposed by law[7] and such discretionary

---

[6] Plaintiff's suggestion that a CBP policy referencing family unity constrained the government's discretion (Compl. ¶ 25 & n.4) is refuted by the policy itself, which addresses family unity only during the limited time that aliens are in CBP custody and even then gives discretion to agents based on operational considerations.

[7] Plaintiff suggests in the complaint that the *Flores* Agreement and 8 C.F.R. § 1236.3 somehow required immediate release. Compl. ¶ 69. However, nothing in the *Flores* Agreement or this regulation provides a deadline for release, much less provides that release shall be immediate. Rather, they merely address the types of individuals to whom children are released, expressing a "preference" for release to parents followed by legal guardians and adult relatives; they say nothing about a specific deadline, much less purport to supplant the statutes authorizing the government to conduct assessments to ensure the suitability of potential custodians. *See* 8 C.F.R. § 1236.3 (providing "preference" for release to certain individuals); *Flores*, 828 F.3d at 908 ("if available, the parent is the first choice"). In any event, by its terms, § 1236.3 is not even applicable here because it applies only to "[j]uveniles for whom bond has been posted, for whom parole is authorized, or who have been ordered released on recognizance."

decisions are the precise sort of decisions that are protected by the FTCA's discretionary

function exception.[8]

---

[8] More generally, courts have repeatedly held that challenges to conditions of confinement are barred by the discretionary function exception. Thus, for example, while Plaintiff's complaint references conditions such as the frequency of communications between Plaintiff and her children (Compl. ¶¶ 7, 29, 37, 52, 129), crowding, temperature and lighting (Compl. ¶¶ 22, 50), removal of Plaintiff's crutches (Compl. ¶ 24), the adequacy of restraints when Plaintiff was transported (Compl. ¶ 53), and the medical care Plaintiff received (Compl. ¶¶ 53-56), courts have repeatedly held that such claims are subject to discretionary decision-making involving numerous policy considerations and thus are barred by the discretionary function exception. *See, e.g., Bultema v. United* States, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Santa-Rosa*, 335 F.3d at 44 (whether to permit certain tools in detention facility susceptible to policy analysis); *Vinzant v. United States*, 458 F. App'x 329, 333 (5th Cir. 2012) (decision not to use seatbelts when transporting prisoners is policy-based decision protected by discretionary function exception); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee medical care decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (discretionary function exception shielded decision to transfer prisoner to facility with allegedly inadequate medical treatment); *Menolascina v. United* States, No. 12-cv-90, 2013 WL 707920, at *2 (N.D. Ill. Feb. 26, 2013) ("[D]etermining how to load prisoners into a van to transport them back to prison – is exactly the kind of discretionary function that the exception was designed to shield."); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by discretionary function exception); *Lineberry v. United* States, No. 3:08-cv-0597, 2009 WL 763052, at *3 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *see also Burkhart v. Wash. Metro. Area Trans. Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("hiring, training, and supervision choices" are "susceptible to policy judgment"). In fact, the very documents the complaint cites make clear that such decisions involve discretionary determinations about what measures are "reasonable," "acceptable", "comfortable", and "proper[]." Compl. ¶¶ 22 n.2-n.3, 53. In addition, a number of courts have held that conditions of confinement claims are constitutional claims that cannot even be brought in a suit under the FTCA. *See, e.g., Aguilar v. United States*, No. 1:16-048, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017) (dismissing nearly identical allegations regarding food, crowding, and sanitation at a CBP detention facility, holding that a conditions of confinement claim is more properly characterized as a "'[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement. . . [and] the United States is not vicariously liable for constitutional torts of its officials since the United States has not waived sovereign immunity from such actions'"); *Thompson v. United States*, No. 1:14–0894, 2015 WL 5567934, at *2 (M.D. Pa. Sept. 21, 2015) (condition of confinement claim is a constitutional claim that cannot be brought under FTCA); *Sutter v. United States*, No. 17-07245, 2019 WL 1841905, at * 4 (C.D. Cal. March 12, 2019) ("[E]ven though Plaintiff attempts to cloak his claims in terms of negligence, his [conditions of confinement] claims are constitutional tort claims and as such are not cognizable under the FTCA.") (citations omitted). Finally, such claims may be barred by other specific FTCA provisions. For example, Plaintiff's claim that the government failed to return her personal property is independently barred by 28 U.S.C. § 2680(c), which prohibits "claims arising out of the detention of goods." *See Parrot*, 536 F.3d at 635-36; *Halverson v. United States*, 972 F.2d 654, 656 (5th Cir. 1992).

Indeed, Plaintiff's complaint engages in precisely the sort of "second-guessing" and inquiry into government actors' intent in making policy determinations that the discretionary function exception was designed to prevent. *See Berkovitz*, 486 U.S. at 536. Thus, for example, the complaint alleges repeatedly that federal officials detained Plaintiff and separated her from her children "[o]ut of a desire to deliberately inflict cruelty" (Compl. ¶ 4), and that "[t]he government intended this cruelty" in order to "coerce Lucinda to give up their rights, including her and her children's asylum claims, and leave the United States" (*id.* ¶ 6). *See also id.* ¶¶ 7, 10, 25, 26, 27, 74 (repeating similar allegations). In fact, as evidenced by the Executive Branch directives, the government sought to address a surge in illegal immigration and human-trafficking along the southern border, balancing the need to enforce immigration law, limitations in enforcement resources, humanitarian concerns, and other factors. Nonetheless, such allegations regarding "government officials' intent or decisionmaking process" are indicative of precisely the sort of claims the discretionary function exception prohibits. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) ("FTCA claims are not vehicles to second-guess policymaking. That principle requires a federal court to dismiss an FTCA claim if jurisdiction is so dependent on allegations about government officials' intent or decisionmaking process that resolving the claim would require judicial inquiry into those subjective matters."); *Reynolds*, 549 F.3d at 1112 (holding that discretionary function exception applies in case alleging "malicious and bad faith conduct," noting that "subjective intent is irrelevant to our analysis").

Finally, the FTCA's discretionary function exception precludes government liability for discretionary decision-making even where the government acted unconstitutionally. *See, e.g., Linder*, 937 F.3d at 1090 (rejecting argument that discretionary function exception does not

16

apply if the alleged conduct is unconstitutional); *Kiiskila v. United States*, 466 F.2d 626, 627-28 (7th Cir. 1972) (military base commander's decision to prohibit civilian employee entering base protected by discretionary function exception, even though it was "constitutionally repugnant" and previously held to violate employee's First Amendment rights).[9]

As the Seventh Circuit explained in *Linder*, Section 2680(a) makes clear that the discretionary function exception bars claims based on discretionary decisionmaking, regardless of whether the government "abused" its discretion by acting unconstitutionally or issued a directive that was "invalid": "Section 2680(a) tells us that there is no liability even if a regulation or directive is invalid, and even if the discretion conferred under it has been abused." *Id.* "The upshot of § 2680(a) is that, when some legal doctrine creates discretion, the fact that the discretion was misused and a tort ensued does not lead to liability for the Treasury." *Id.* at 1091.[10]

---

[9] Plaintiff's complaint cites an unpublished decision from the District of Arizona that disagrees, asserting that a violation of constitutional rights such as "separation of . . . families" is "not shielded by the discretionary function exception." *C.M. v. United States*, No. 19-5217, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020), cited at Compl. ¶ 72. However, that ruling is plainly at odds with precedent in the Seventh Circuit and elsewhere.

[10] Nevertheless, it is notable that, at the time the separation at issue occurred here, the *Ms. L* decision had not yet been issued, and there was no case law clearly establishing a due process right to family integrity while in immigration detention. To the contrary, the issue was squarely addressed by the U.S. Court of Appeals for the Fourth Circuit, which found that no such right exists. *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *see also, Dominguez-Portillo*, 2018 WL 315759, at *6 (noting "lack of clearly established parental rights in these circumstances and under case law"). In addition, courts had repeatedly held that separating alien parents from their citizen children through deportation proceedings did not violate the Constitution. *See, e.g., Marin-Garcia Holder*, 647 F.3d 666, 674 (7th Cir. 2011) ("nothing in the Constitution prohibits" separation of citizen children from their parents when the parents are deported); *Payne-Barahana v. Gonzales*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits that have addressed the constitutional issue (under varying incarnations of the immigration laws and in varying procedural postures) have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right.").

More generally, courts had repeatedly held that separating individuals charged with federal crimes from their children while they were detained and awaiting criminal trials did not violate the Constitution. *See Olim v. Wakinekona*, 461 U.S. 238, 247-48 n.8 (1983) (interstate transfer of criminal

### III.     Plaintiff's Claims Are Barred By the FTCA's Due Care Exception

Plaintiff's claims also are barred by the FTCA's "due care exception," which bars "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]"  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957).  *See also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim arising out of "the enforcement of 'rules and regulations'" barred by due care exception).

Among other things, this exception "bars tests by tort action of the legality of statutes and regulations."  *Dalehite v. United States*, 346 U.S. 15, 33 (1953).  The "Tort Claims Act did not contemplate that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.  Nor did it contemplate a remedy for damages sustained by reason of the application of invalid laws or regulations."  *Dupree*, 247 F.2d at 824 (citation and internal quotation marks omitted).  *See also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care

---

detainee does not violate any due process right, even if the transfer leaves detainee separated hundreds of miles from his family); *White v. Pazin*, 2016 WL 6124234, at *6 (E.D. Cal. Feb. 16, 2017) (there is not "any clearly established right protecting an inmate from policies banning visitations with his minor children"); *see also Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee."); *Payne-Barahona*, 474 F.3d at 3 ("If there were such a right [to challenge a parent's valid deportation], it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service.").

exception barred claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective").

Accordingly, where a government employee's actions are authorized by statute or regulation, the due care exception applies and the claim must be dismissed for lack of subject matter jurisdiction. In *Sickman v. United States*, for example, the Seventh Circuit held that landowners' claims were barred by the due care exception because the claims arose out of the government's execution of the Migratory Bird Treaty Act, 16 U.S.C.A., § 703 *et seq.*, and, in particular, the Act's section that "provides that the Secretary of Interior is authorized and directed to determine when, to what extent if at all, and by what means it is comparable with the terms of the conventions between the United States, Great Britain and the United Mexican States to allow hunting and killing of migratory birds." 184 F.2d 616, 619 (7th Cir. 1950). The court of appeals found that "the acts and omissions complained of were in the execution of statutes and regulations. Hence the complaints fall within the first exception stated in Sec. 2680(a)." *Id.* Because those statutes conferred discretion on the government, instead of mandating specific actions, the Seventh Circuit further held that the discretionary function exception barred the claims as well, providing an alternative basis for its ruling. *See id.*[11]

Here, the due care exception likewise bars Plaintiff's claims because the United States plainly had the statutory authority to determine whether and where to detain Plaintiff after she

---

[11] *See also FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979) (applying due care exception to claim based on the FDIC's execution of 12 U.S.C. § 1823(e), pursuant to which the "FDIC was authorized to enter into purchase and assumption agreements with respect to the assets of failing or closed banks"); *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985) (due care exception barred claim based on exercise of statutory authority to transfer responsibility for care and maintenance of a dam, which provided that the Secretary of the Interior was "authorized, in his discretion, to transfer . . . the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe").

entered the country illegally, *see* 8 U.S.C. §§ 1225, 1226(a), 1231(g)(1), as well as the authority

to place her minor children in the custody and care of ORR while she was detained, *see* 8 U.S.C.

§§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g).  Accordingly, Plaintiff's claims are also barred

by the due care exception because the acts Plaintiff cites were specifically authorized by federal

immigration law.

### IV.  Plaintiff's Claims Are Barred Because There Is No Private Analog

Finally, Plaintiff's claims fail because the government acts that Plaintiff attacks have no

private person analog.  The FTCA requires that Plaintiff allege "circumstances where the United

States, if a private person, would be liable to the claimant in accordance with the law of the place

where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort

recovery against the United States only "in the same manner and to the same extent as a private

individual under like circumstances."  28 U.S.C. § 2674.

Accordingly, the FTCA "requires a court to look to the state-law liability of private entities,

not to that of public entities, when assessing the Government's liability under the FTCA [even] in

the performance of activities which private persons do not perform."  *United States v. Olson*, 546

U.S. 43, 46 (2005) (internal quotations omitted).  The FTCA does not waive sovereign immunity

for claims against the United States based on governmental "action of the type that private persons

could not engage in and hence could not be liable for under local law."  *Chen v. United States*, 854

F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted); *Liranzo v. United States*, 690 F.3d 78, 86

(2d Cir. 2012).

Here, because only the federal government has the authority to enforce federal criminal

and immigration laws and make determinations concerning detention, there is no private person

analog that would support a claim under the FTCA.  Plaintiff's alleged harms stem from the

federal government's decision to strictly enforce the Nation's immigration laws and refer Plaintiff for prosecution and detention, rendering her children "unaccompanied," which resulted in their placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law because such decisions have no private person counterpart. *See Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action).

Indeed, courts have repeatedly held that various governmental immigration decisions have no private person counterpart and thus cannot be the basis for a claim under the FTCA. *See, e.g., Bhuiyan v. United States*, 772 Fed. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 Fed. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (in matters relating to naturalization of aliens, "only the United States has the power to act," and, "[a]ccordingly . . . there is no private analog under state law").[12]

The Second Circuit's decision in *Akutowicz v. United States* is instructive. 859 F.2d 1122, 1125-26 (2d Cir. 1988). There, the court rejected plaintiff's FTCA suit challenging the Department of State's wrongful revocation of his U.S. citizenship on the ground that there was

---

[12] In contrast, the unpublished ruling from the District of Arizona that the complaint cites merely *asserts* that "Plaintiffs have demonstrated a private analogue under like circumstances" without explaining precisely what that analog was. *C.M.*, 2020 WL 1698191, at *2.

no private person analog. The court observed that, "for liability to rise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred." *Id.* at 1125. The court concluded that there was no such "comparable" action against a private citizen: "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* The fact that the State Department allegedly erred in the interpretation and application of the pertinent provisions of the INA was not relevant. The Second Circuit held that "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists." *Id.* at 1126.

The same is true here where the federal government's prosecution and detention decisions are ones that no private actor could make: "Private persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor." *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016). Accordingly, Plaintiff's claims should be dismissed as well. *See id.* (wrongful confinement claim brought by federal prisoner moved from halfway house to special housing unit in a detention facility not cognizable under the FTCA because decisions relating to location and conditions of detention cannot be made by private persons).

22

## **CONCLUSION**

For the foregoing reasons, this action should be dismissed.


Date: September 9, 2020                    Respectfully submitted,

                                           JEFFREY BOSSERT CLARK
                                           Acting Assistant Attorney General

                                           DOUGLAS G. SMITH
                                           Deputy Assistant Attorney General, Civil Division

                                           JAMES G. TOUHEY, JR.
                                           Director, Torts Branch

                                           *s/Phil MacWilliams*
                                           PHILIP D. MACWILLIAMS
                                           Trial Attorney
                                           D.C. Bar No. 482883
                                           THEODORE W. ATKINSON
                                           Trial Attorney
                                           D.C. Bar No. 458963
                                           E-mail: phil.macwilliams@usdoj.gov
                                           U.S. Department of Justice
                                           Civil Division, Torts Branch
                                           Benjamin Franklin Station, P.O. Box 888
                                           Washington, DC 20044
                                           Telephone: (202) 616-4285

                                           Attorneys for United States of America

23

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America