**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| D.A., A.A., and LUCINDA DEL CARMEN PADILLA-GONZALES, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, HEARTLAND ALLIANCE FOR HUMAN NEEDS AND HUMAN RIGHTS, and HEARTLAND HUMAN CARE SERVICES, INC. <br><br> Defendants. | Case No. 1:20-cv-03082 <br><br> Hon. Martha M. Pacold |

**MEMORANDUM OF LAW IN SUPPORT OF HEARTLAND'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants Heartland Alliance for Human Needs and Human Rights ("Heartland Alliance") and Heartland Human Care Services ("HHCS" and, collectively, "Heartland"), by and through their undersigned counsel, respectfully submit this motion to dismiss Plaintiffs D.A., A.A., and Lucinda del Carmen Padilla-Gonzales's (collectively, "Plaintiffs") First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

The FAC tells the story of a traumatic family separation. According to the allegations therein, D.A. and A.A. suffered "immense trauma" at the hands of the government when they were separated from their mother following their entry into the United States. *See generally* FAC, Dkt. Entry #35. The family had come to the United States in search of safety and asylum after being the target of political violence in their native Honduras. After being forcibly separated from their mother at the border, D.A. and A.A. were sent to live in a facility for unaccompanied immigrant

minors operated by HHCS.  HHCS was tasked with caring for children such as D.A. and A.A. until they could be unified with a family member or sponsor.

Once the children arrived at the HHCS facility, where they stayed for a little over a month, they received medical treatment, counseling, food, shelter and schooling.  HHCS maintained various practices and policies reasonably designed to ensure the safety and well-being of all children at the facility, some of which are misguidedly referenced in the FAC.  For example, Plaintiffs complain about the delay in being able to speak with their father on the telephone, but a federally-mandated policy requires an identity verification before minors are allowed contact with anyone.  This policy is not intended to penalize children, but rather to keep them safe.

While Heartland is sympathetic to the difficulties Plaintiffs experienced as a result of their separation, Plaintiffs' complaint nevertheless falls short of pleading any cognizable claim as to Heartland and should therefore be dismissed.

## PROCEDURAL HISTORY

The FAC alleges claims against Heartland Alliance and HHCS that arise from D.A. and A.A.'s time in HHCS's care.  Specifically, Plaintiffs assert Illinois state law claims for breach of fiduciary duty (Count III), negligence (Count V), and negligent supervision (Count VII).  FAC ¶¶ 107-114, 120-124, 132-137.  Plaintiffs also assert claims for alleged violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq. (2018) (Count XI).  *Id*. ¶¶ 151-159.  Heartland now seeks dismissal of Counts III, V, VII and XI of the FAC.

## ARGUMENT

Plaintiffs' claims against Heartland should be dismissed because they are nothing more than bare and conclusory assertions that fail to state any plausible, legally cognizable claims for relief.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009) (holding that "labels and conclusions"

or "formulaic recitation[s] of the elements of a cause of action" are insufficient and that a complaint must "permit the court to infer more than the mere possibility of misconduct"); *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) (holding that to survive a Rule 12(b)(6) motion, (1) "[a] complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level").

I.   **PLAINTIFFS' CLAIM UNDER § 504 OF THE REHABILITATION ACT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

Plaintiffs' § 504 claim should be dismissed because they have not adequately alleged either a *prima facie* violation of § 504 or a plausible entitlement to relief.

A.   **Plaintiffs Fail to Adequately Allege a § 504 Claim**

To state a § 504 claim, plaintiffs must adequately allege that: (1) they have covered disabilities; (2) they are otherwise qualified to participate in—or to receive benefits from—the challenged program or activity; (3) the defendant denied them access to the program or activity solely because of their disabilities; and (4) the program or activity receives federal financial assistance. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019) (citing *Mallett v. Wisconsin Div. of Voc. Rehabilitation*, 130 F.3d 1245, 1257 (7th Cir. 1997)).

1.   **Plaintiffs fail to adequately allege that A.A. and D.A. had covered disabilities during their time in HHCS's care.**

The FAC fails to adequately allege that A.A. and D.A. had covered disabilities while in HHCS's care. The Rehabilitation Act defines "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1) (2018). "An impairment substantially limits a major life activity when a person 'is either unable to perform a major life activity or is significantly restricted as to the condition, manner or duration under which

3

the individual can perform the major life activity as compared to the average person in the general population.'" *Prince v. State Dep't of Revenue*, 73 F. Supp. 3d 889, 893 (N.D. Ill. 2010) (quoting *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 450 (7th Cir. 2001)). To state a claim under § 504, a plaintiff must allege enough detail about the supposed impairment and its impact on her ability to conduct one or more major life activities to give the defendant fair notice of the claimed disability. *See Jackson v. Northwestern Univ. School of Law*, No. 10 C 1986, 2010 WL 5174389, *3 (N.D. Ill. Dec. 15, 2010) (dismissing complaint because "[plaintiff] does not plead what her disability is or how it substantially limits one or more major life activities"). Furthermore, the plaintiff must allege that she was disabled at the time of the alleged discrimination. *See Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1312 (11th Cir. 2007) (noting that the Rehabilitation Act protects only those "disabled at the time of the discriminatory act").

Here, Plaintiffs have failed to adequately allege A.A. and D.A. were disabled within the meaning of the Act. Plaintiffs allege that A.A. and D.A.'s "flight from Central America, apprehension at the border, and separation from their mother" were "extraordinarily traumatizing" events and that the "mental and emotional injuries" sustained by A.A. and D.A. "manifested as anxiety and depression" and "symptoms of post-traumatic stress." FAC ¶¶ 7, 44, 152. But Plaintiffs have failed to adequately allege that their alleged disabilities substantially limited one or more major life activities. The FAC recites in conclusory fashion that the Plaintiffs' impairments "substantially limited one or more major life activities, including thinking, sleeping, eating, learning, and safe play," *id.* ¶ 156, without specifically alleging, for each child, if or how their particular impairments limited any of these activities during their time in HHCS's care.

To the extent the FAC does contain specific allegations about these activities, they actually undermine the § 504 claim. With respect to learning, for example, the sole allegation is that

Heartland offered the Plaintiffs schooling "very few hours a day, with almost no curriculum, and in combined classrooms with children whose ages ranged from 5 years old to 17 years old." *Id.* ¶ 41. According to the Plaintiffs' own allegations, therefore, they were unable to receive proper schooling because of shortcomings in Heartland's program, not because of their alleged disabilities. As to other major life activities, the FAC fails to make any specific allegations at all; Plaintiffs fail to allege any facts that indicate *how* their claimed impairments prevented or restricted their "thinking, sleeping, eating, learning, and safe play" during their time in HHCS' care. And to the extent that Plaintiffs' § 504 claim relies on the alleged issues that the children have experienced since leaving HHCS's care, *see id.* ¶¶ 62-63, these allegations cannot provide a plausible basis for concluding that A.A. and D.A. had covered disabilities at the time of the alleged discrimination.

### 2. Plaintiffs fail to identify the specific programs or activities at issue.

A plaintiff seeking to state a § 504 claim must adequately allege that she was otherwise qualified to participate in the challenged program or activity. A plaintiff is "otherwise qualified" if, but for her disability, she would have been eligible for the program or activity to which she was denied access on the basis of her disability. *See Jones v. Mathews,* No. 16-2364, 2018 WL 9878318, at *7–8 (C.D. Ill. Apr. 19, 2018) (citing *Grzan v. Charter Hosp.*, 104 F.3d 116, 120 (7th Cir. 1997). In this case, Plaintiffs do not even meet the preliminary step of identifying the challenged program or activity. At some points, Plaintiffs appear to be claiming that HHCS had an affirmative duty to provide treatment. *See* FAC ¶ 156 (stating that A.A. and D.A. "required the ability to interact and develop in a therapeutic setting that did not restrict basic human interaction"); ¶ 43 (suggesting that HHCS should have provided "programs and detention conditions [that] address these disabilities"). Section 504 does not create a general right to a therapeutic setting or to treatment, however; rather, it guards against discrimination in programs and activities. At other points, Plaintiffs appear to challenge isolated acts of HHCS's employees.

5

*See, e.g.*, *id.* ¶ 45 (alleged punishment of A.A. for crying and getting into a scuffle). Such allegations fail to identify any particular program to which either plaintiff was denied access and thus the § 504 claim must be dismissed.

### 3. Plaintiffs have not adequately alleged that HHCS discriminated against A.A. and D.A. solely on the basis of their alleged disabilities.

Plaintiffs must also establish that they were "excluded from the participation in," "denied the benefits of," or "subjected to discrimination under" the challenged program or activity "solely by reason of [their] disabilit[ies]." 29 U.S.C § 794 (2018). A plaintiff may raise a claim under the Rehabilitation Act by asserting either "that she was intentionally discriminated against or that the defendant failed to afford her a reasonable accommodation for her disability." *Reed*, 915 F.3d at 484.

Plaintiffs have not adequately alleged discrimination under either theory. As to intentional discrimination, a plaintiff must allege facts that plausibly suggest that 1) the defendant's conduct was discriminatory, 2) the sole cause of this disparate treatment was plaintiff's disability, 3) discriminatory intent. *See Reed*, 915 F.3d at 484 ("[T]he Rehabilitation Act prohibits discrimination only if it is 'solely by reason of' a person's disability."); *Finch v. Hous. Auth. of Cook Cty.*, No. 17-CV-8492, 2019 WL 3766113, at *3 (N.D. Ill. Aug. 9, 2019) ("Plaintiffs must allege a causal connection between their disability and the alleged discrimination [and] the first method of proof (intentional discrimination) requires a showing of discriminatory animus.")

Here, Plaintiffs fail to adequately allege HHCS intentionally discriminated against A.A. and D.A. solely on the basis of their purported mental and emotional injuries. Plaintiffs allege, in conclusory fashion, that HHCS "actively discriminated against A.A. and D.A. because of their disabilities." FAC ¶ 158. As an example of this supposed "active disability discrimination," Plaintiffs allege that HHCS employees "punish[ed]…A.A. for crying and getting in a scuffle." *Id.*

¶ 45. But Plaintiffs fail to allege facts that plausibly suggest that A.A. was treated any differently from any other child or that this conduct was in any way discriminatory. Nor do they allege facts that plausibly suggest that HHCS's employees punished A.A. solely because of his alleged disability. In fact, at least as to the scuffle, Plaintiffs' allegations make clear that A.A. was punished for misbehaving rather than for being disabled. And the FAC is devoid of allegations that these employees acted with intent to discriminate.

Plaintiffs allege further that HHCS employees "ma[de] hostile remarks to A.A. and D.A. regarding…traumatic events…to which both children had been exposed." FAC ¶ 45. Again, Plaintiffs fail to allege facts that plausibly suggest that this conduct was discriminatory or that it was motivated solely because of the children's claimed disability. Plaintiffs also allege that "D.A. felt that [HHCS] staff frequently treated her and other Central American children at the facility worse than others in their care." FAC ¶ 40. But allegations of disparate treatment on the basis of national origin cannot serve as a basis for a claim under § 504, which prohibits discrimination on the basis of disability. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). Thus, Plaintiffs have failed to plausibly assert that that HHCS intentionally discriminated against A.A. and D.A., and their § 504 claim cannot proceed under this theory.

Plaintiffs have also failed to adequately allege discrimination under a "refusal to accommodate" theory. A plaintiff seeking to prove discrimination in this manner must establish that: (1) the defendant was aware of her disability and (2) the defendant failed to reasonably accommodate it. *See Finch*, 2019 WL 3766113, at *4 (citing *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019)). A proposed modification is "unreasonable if it imposes significant financial or administrative costs, or it fundamentally alters the nature of the program or service." *See A.H. v. Illinois High Sch. Ass'n*, 881 F.3d 587, 594 (7th Cir. 2018). In addition, a plaintiff must establish

a "causal connection between the major life activity that is limited and the accommodation sought." *Brumfield v. City of Chi.*, 735 F.3d 619, 633 (7th Cir. 2013).

Here, Plaintiffs have failed to adequately allege a refusal to accommodate for three reasons. First, Plaintiffs do not allege that HHCS was even aware of D.A.'s and A.A.'s supposed disabilities. Although they assert "it was well known that children like D.A. and A.A. are disabled" and "require[] accommodation," FAC ¶¶ 42, 157, Plaintiffs do not assert that HHCS knew that *these particular children* were disabled.

Second, the FAC does not allege a causal connection between the accommodations that Plaintiffs claim D.A. and A.A. should have been given—namely, practices that would have permitted "basic human interaction including, physical touch, hugging of family members, phone calls with family and relatives, and personal conversation" *Id.* ¶ 156—and their ability to engage in basic life activities. Mere speculation that these practices would have addressed D.A.'s and A.A.'s needs is insufficient.

Finally, Plaintiffs have failed to allege that the accommodations they now seek could have been provided without imposing administrative costs or fundamentally altering HHCS's services. The FAC assumes that such accommodations could have been offered, *see id.*, but mere speculation that reasonable modifications exist is not enough. Plaintiffs must affirmatively identify the particular modifications that would have permitted the allegedly absent "basic human interaction" to occur without imposing undue costs or fundamentally changing the nature of the programs or activities. They have failed to do so; their claim must be dismissed.

### B. Plaintiffs Have Not Adequately Alleged That They Are Entitled to Relief Under § 504

In addition to failing to allege a prima facie § 504 claim, Plaintiffs have not stated a plausible claim of entitlement to relief under the statute. Plaintiffs demand the following relief:

"(1) compensatory damages; (2) punitive damages; (3) Attorneys' fees and costs; and (4) Such other and further relief as the Court may deem just and appropriate." FAC at 34. But no such relief is available for their § 504 claim. Compensatory damages are not available absent proof of intentional discrimination, which—as demonstrated above—Plaintiffs have failed to adequately allege. *See Phipps v. Sheriff of Cook Cty*, 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009) (noting that "it is necessary to show intentional discrimination in order to recover compensatory damages"). Punitive damages are not available under any circumstances. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (holding that "punitive damages…may not be awarded in suits brought under…§ 504 of the Rehabilitation Act"). While injunctive relief is ordinarily available under the Rehabilitation Act, *see Field*, 2018 WL 3831513, at *10, no such relief is sought here because Plaintiffs are no longer seeking access to any program or activity from Heartland. Plaintiffs cannot demonstrate a plausible entitlement to relief, so their § 504 claim must be dismissed. *See generally* Fed. R. Civ. P. 12(b)(6) (providing for dismissal of claims for which no relief may be granted).[1]

## II. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. Plaintiffs Fail to Adequately Plead What, If Any, Fiduciary Duty Heartland Had or Breached

"To state a claim for breach of fiduciary duty, it must be alleged: (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the

---

[1] Heartland is unaware of any authority that would support maintenance of Plaintiffs' § 504 claim because Plaintiffs generically include attorney's fees in their prayer for relief. While attorney's fees may be awarded under the Rehabilitation Act, any such fees should be limited to an otherwise viable claim for monetary or injunctive relief and should not themselves be the basis for maintaining the claim (and thereby incurring the fees). *See, e.g.*, *Ruffin v. Winnebago County Jail*, No. 03-CV-210-DRH, 2010 WL 3905362 at *2, 9 (N.D. Ill. Sept. 27, 2010) (allowing attorney in addition to compensatory damages for Rehabilitation Act claims).

injury of which the party complains." *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 69; 983 N.E.2d 414, 433 (Ill. 2012). Plaintiffs' breach of fiduciary duty claim against Heartland should be dismissed for three independent reasons. First, the FAC fails to identify what legally viable fiduciary relationship even existed between the parties. Second, the FAC contains no allegations showing a breach of an actionable fiduciary duty or that the alleged breach resulted in harm to Plaintiffs. Third, the fiduciary duty claim is entirely duplicative of the negligence claim.

Plaintiffs have failed to establish the existence of a fiduciary relationship. "The burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief, and where the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence." *Fernandes v. First Bank & Trust Co.*, 1993 WL 339286 (N.D. Ill. 1993) (*quoting Farmer City State Bank v. Guingrich,* 139 Ill. App.3d 416, 424 (Ill. App. Ct. 1985); 487 N.E.2d 758, 763 (Ill. App. Ct. 1985). The FAC fails to do so. Plaintiffs' fiduciary duty claim relies on the conclusory allegation of a guardian-ward relationship, but the FAC provides no factual basis to support the existence of such a relationship. FAC ¶¶ 108-110. To the contrary, Heartland was not appointed and did not obtain legal guardianship of D.A. and A.A. *See, e.g.*, *In re Winks,* 150 Ill. App. 3d 657, 661 (Ill. App. Ct. 1986); 502 N.E.2d 35, 38 (Ill. App. Ct. 1986) ("guardian…status arises only from a grant of authority"); 755 ILL. COMP. STAT. § 5/11-13 ("before the guardian of a minor may act, the guardian shall be appointed by the court"); *see also In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 46; 28 N.E.3d 776, 790 (Ill. 2015) ("Illinois does not recognize functional parent theories" which means that a parental / legal guardian relationship cannot arise without a legal basis, no matter the circumstances."). Indeed, as recognized by the FAC, A.A. and D.A. remained in the custody of the federal government during their stay at the HHCS facility. FAC ¶ 18.

Even if a fiduciary relationship existed between the parties, Plaintiffs have not alleged an actionable breach of fiduciary duty. Plaintiffs allege that Heartland failed to "act in the best interests of D.A. and A.A." FAC at ¶¶ 111-112. "Acting in the best interest" is not a specific fiduciary duty on which a claim may be brought, however. Rather, the actionable fiduciary duties consist of the duty of loyalty and the duty of care. *See generally* RESTATEMENT (THIRD) OF AGENCY § 8.01 cmts. (a)(b) (explaining the contours of fiduciary duties). In its nebulous recitation of this claim against Heartland, the FAC is silent as to which of these duties Heartland allegedly violated. Indeed, the FAC fails to state a breach of either duty. It does not state a plausible claim for breach of the duty of loyalty because it contains no allegations that Heartland acted to further its own interests at A.A. and D.A.'s expense. *See, e.g., In re Estate of Swiecicki*, 106 Ill. 2d 111, 118 (Ill. 1985); 477 N.E.2d 488, 490 (Ill. 1985) ("The [duty of loyalty] prohibits a guardian from dealing with a ward's property for the guardian's own benefit"). Nor does the FAC state a claim for breach of the duty of care because it includes no allegations of gross negligence by Heartland. *See, e.g., In re Discover Financial Services Derivative Litig.*, 2015 WL 1399282 (N.D. Ill. Mar. 23, 2015) (recognizing that the fiduciary duty of care requires gross negligence). Simply claiming, without pleading any facts to identify and support the contention, that Heartland breached a (non-existent) fiduciary duty does not make it so.

Plaintiffs also fail to allege any facts that support their bare legal contention that any alleged harm was caused by the purported breach of fiduciary duty. FAC ¶ 113. There is simply nothing of substance in the FAC that alleges how the (nonexistent) breach of fiduciary duty caused any harm. *Cf. In re Estate of Swiecicki,* 106 Ill. 2d 111 (Ill. 1985); 477 N.E.2d 488 (Ill. 1985) (Plaintiff's loss of funds caused directly by guardian's exploitation of the fiduciary relationship).

11

Most fundamentally, the Court should dismiss Plaintiffs' fiduciary duty claim because it is duplicative of Plaintiffs' negligence claims. In such circumstances, the fiduciary duty claim should be dismissed. *See Neade v. Portes,* 193 Ill. 2d 433, 439-450 (Ill. 2000);739 N.E.2d 496, 500-504 (Ill. 2000) (holding that dismissal of breach of fiduciary duty claim was proper where it was duplicative of and a re-presentment of negligence claim).

**B.      Plaintiffs' Negligence Claim Is Similarly Inadequate**

Plaintiffs' negligence claim has the same flaws as the fiduciary duty claim: they have not adequately alleged duty, breach, or proximate cause. "A complaint for common law negligence must set forth the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from that breach." *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 373 (1990); 562 N.E.2d 967, 968 (Ill. 1990). "A duty requires a person to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm." *Id.*

The FAC sets forth the bare elements for pleading negligence and alleges that Heartland failed to act with ordinary care. FAC ¶¶ 120-124. While the FAC describes the heartbreaking perspective of D.A. and A.A. upon being brought to Heartland, it does not plead any facts that adequately allege how Heartland fell short of any duties owed to Plaintiffs, or the injury proximately caused by Heartland's alleged breach. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a "pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action"). Indeed, the pleadings leave unclear precisely which of Heartland's acts or omissions Plaintiffs allege to have been negligent, and on what basis. Similarly, the FAC fails to explain how Heartland's alleged negligence during the month the Plaintiffs were with HHCS, as opposed to other factors, caused the harm that Plaintiffs allege. In short, the grounds for the negligence claim are virtually

12

impossible to discern from the FAC; the negligence claim fails to articulate a proper standard of care, which actions by Heartland rise to the level of a breach, and how that breach caused any injury. As a result, the negligence claim should be dismissed.

## C. Plaintiffs Fail to Plead a Cognizable Claim of Negligent Supervision

Plaintiffs' negligent supervision claim as to Heartland is also insufficiently pled. An employer may be held liable for negligent supervision if (1) it had a duty to supervise the party that allegedly caused the harm, (2) it negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries. *Doe v. Coe*, 2019 IL 123521, ¶¶ 52, 61; 135 N.E.3d 1, 15-17 (Ill. 2019). The FAC sets forth no facts whatsoever relating to supervision. *See, e.g.*, *Mueller By Math v. Community Consol. Sch. Dist. 54*, 287 Ill. App. 3d 337 (1997); 678 N.E.2d 660 (Ill. App. Ct. 1997) (school district found in breach of duty for failure to conduct statutorily-required background check on teacher); *Doe v. Coe*, 2019 IL 123521 (plaintiff pled breach by alleging Church's pastor ignored youth pastor's violation of the "two adult" rule—an internal policy that forbade any adult from being alone with children during church events). Rather, Plaintiffs generically refer to an ambiguous "duty" that "Heartland and its employees in supervisory roles" have to "supervise their agents and to oversee their treatment of immigrants in their care." FAC ¶ 134. This conclusory assertion is insufficient to support Plaintiffs' claim and warrants dismissal of Plaintiffs' negligent supervision claim against Heartland.[2]

The negligent supervision claim also fails because Plaintiffs failed to plead facts showing how Heartland's supposed failure to supervise its employees caused the alleged harm. *See Vancura*

---

[2] Tellingly, Plaintiffs' cursory negligent supervision allegations against Heartland are in stark contrast to their negligent supervision claim as to the United States. *See* FAC ¶¶ 74-86- (citing several internal policies and legal standards to which the government allegedly failed to adhere).

*v. Katris*, 238 Ill. 2d 352, 375 (Ill. 2010); 939 N.E.2d 328, 343 (Ill. 2010). Indeed, the FAC offers nothing beyond the bare legal assertion that Heartland's "negligent supervision proximately caused" the harm of which they complain. FAC ¶ 135. The FAC is entirely devoid of facts that allege how such harm to A.A. and D.A. would have been averted if Heartland had properly supervised its employees. *See Mueller By Math*, 678 N.E.2d at 665 (dismissing negligent supervision claim because plaintiff failed to allege any facts connecting school's failure to run background check on assailant-teacher to plaintiff's sexual assault); *cf. Coe*, 2019 IL 123521 ¶¶ 62-63 (finding causation adequately pled by alleging that assault would not have taken place but for the head pastor's failure to enforce the school's "two-adult" policy).

## III.   PLAINTIFFS' CLAIMS AGAINST HEARTLAND ALLIANCE SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT ADEQUATELY PLED THAT HEARTLAND ALLIANCE IS LIABLE FOR HHCS'S ALLEGED CONDUCT

As explained above, each of Plaintiffs' claims against both Heartland defendants should be dismissed for failure to state a claim. Each of the claims against Heartland Alliance should be dismissed for an additional reason: Plaintiffs have failed to state a claim that Heartland Alliance, HHCS's parent, is liable for any of the alleged misconduct in the FAC. Under Illinois law, a corporation is an "entity that is separate and distinct from its shareholders…even where one corporation wholly owns another and the two have mutual dealings." *Selcke v. Hartford Fire Ins. Co. (In re Centaur Ins. Co.)*, 158 Ill. 2d 166, 172, 632 N.E.2d 1015, 1017 (Ill. 1994). Generally, parent corporations are not liable for the acts of their subsidiaries. *See Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 291, 864 N.E.2d 227, 238 (Ill. 2007). And "the mere fact of a parent-subsidiary relationship, without a great deal more, does not give rise to liability." *Id.*

Here, Plaintiffs have failed to adequately plead that Heartland Alliance is liable for the alleged conduct that resulted in the supposed harms to A.A. and D.A. Plaintiffs allege that HHCS

14

operated the facility in question. FAC ¶ 31 (asserting that A.A. and D.A. were taken "to a detention facility for minors *operated by* [Heartland Alliance's] subsidiary, Heartland Human Care Services, in Chicago, believed to be named Casa Guadalupe") (emphasis added). All of Plaintiffs' claims arise out of conduct that supposedly occurred at this facility operated by HHCS. *See id.* ¶¶ 7, 31-51, 107-114, 120-124, 132-137, 151-159. The FAC fails to plead either any actual conduct by Heartland Alliance or any legal theory by which Heartland Alliance may be held liable for the conduct of its subsidiary. Instead, the FAC simply joins allegations against both entities together, lumping Heartland Alliance together with HHCS under the moniker "Heartland" and thereby failing to identify the activities for which Plaintiffs contend each entity is liable. This manner of pleading is inappropriate and fails to state a claim. *See, e.g.*, *Bryant v. Wells Fargo Bank, N.A.*, No. 5:10-cv-00237, 2012 WL 642524 at *3 (E.D.N.C. Jan. 5, 2012) ("Simply alleging causes of action against collective 'Defendants' without any factual allegations with respect to [a particular defendant] is insufficient to meet the pleading standard of Rule 8."); *PLS-Pacific Laser Systems v. TLZ Inc.*, No. C-06-04585, 2007 WL 2022020 at *10–11 (N.D. Cal. Jul. 9, 2007) (dismissing complaint that "grouped" defendants because such allegations were not "sufficient to give each named defendant sufficient notice of the particular claims and grounds for the claims against them"). Therefore, the Court should dismiss all claims against Heartland Alliance.

## CONCLUSION

For the foregoing reasons, Heartland Alliance and HHCS respectfully request that the Court grant their motion to dismiss Counts III, V, VII and XI of the FAC pursuant to Fed. R. Civ. P. 12(b)(6), and grant such other relief as the Court deems appropriate.

Dated: October 16, 2020                    Respectfully submitted,

*/s/ Kurt A. Mathas*
Kurt A. Mathas
ARDC No. 6286812
Saranya Raghavan
ARDC No. 6321346
Nasir Hussain
ARDC No. 6324090
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-8329
kmathas@winston.com
sraghavan@winston.com
nhussain@winston.com
*Counsel for Heartland Alliance and HHCS*

## <u>CERTIFICATE OF SERVICE</u>

I, Kurt Mathas, an attorney, certify that on October 16, 2020, I caused the foregoing *Memorandum of Law in Support of Heartland's Motion to Dismiss the First Amended Complaint* to be served via this Court's CM/ECF system upon the ECF-registered parties at the email addresses below:

Jimmy Lorenzo Arce
Jimmy.Arce@usdoj.gov

Phil Davis MacWilliams
phil.macwilliams@usdoj.gov

AUSA – Chicago
USAILN.ECFAUSA@usdoj.gov

*Attorneys for the United States of America*

Sarah Copeland Grady
sarah@loevy.com

Anand Swaminathan
anand@loevy.com

Stephen H. Weil
weil@loevy.com

Conchita Cruz
conchita.cruz@asylumadvocacy.org

Zachary Manfredi
info@asylumadvocacy.org

*Attorneys for A.A., D.A., and Lucinda del Carmen Padilla Gonzalez*

<u>*/s/ Kurt A. Mathas*</u>
Kurt A. Mathas
ARDC No. 6286812
Saranya Raghavan
ARDC No. 6321346
Nasir Hussain

ARDC No. 6324090
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-8329
kmathas@winston.com
sraghavan@winston.com
nhussain@winston.com
*Counsel for Heartland Alliance and HHCS*