UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| D.A., A.A., and LUCINDA DEL CARMEN PADILLA-GONZALES, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 20 C 3082 |
| UNITED STATES OF AMERICA, | ) | |
| HEARTLAND ALLIANCE FOR HUMAN | ) | Judge Pacold |
| NEEDS AND HUMAN RIGHTS, and | ) | |
| HEARTLAND HUMAN CARE SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS

Date: December 4, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DOUGLAS G. SMITH
Deputy Assistant Attorney General, Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

I.  Plaintiff's Opposition Further Confirms That Plaintiff Is Seeking A Prohibited Recovery For Alleged Constitutional Torts ................................................................................... 1

II.  Plaintiff's Claims Are Barred By the FTCA's Discretionary Function Exception ................. 3

III. Plaintiff's Claims Are Barred By the FTCA's Due Care Exception.................................... 11

IV. Plaintiff's Claims Are Barred Because There Is No Private Analogue................................ 14

V.  Plaintiff's Claims Are Barred As A Matter of Public Policy ................................. 15

CERTIFICATE OF SERVICE ...................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. ICE*,
   510 F.3d 1 (1st Cir. 2007) ........................................................................ 11

*Aguilar v. United States*,
   No. 1:16-048, 2017 WL 6034652 (S.D. Tex. June 7, 2017) ...................... 7

*Air Shuttle Corp. v. United States*,
   112 F.3d 532 (1st Cir. 1997) ................................................................... 15

*Bailor v. Salvation Army*,
   51 F.3d 678 (7th Cir. 1995) ....................................................................... 4

*Bergquist v. U.S. Nat. Weather Serv.*,
   849 F. Supp. 1221 (N.D. Ill. 1994) ........................................................... 5

*Blanco Ayala v. United States*,
   -- F.3d --, 2020 WL 7050099 (4th Cir. Dec. 2, 2020) ............................... 4

*Borquez v. United States*,
   773 F.2d 1050 (9th Cir. 1985) ................................................................. 12

*Bunikyte v. Chertoff*,
   No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............... 8, 9, 14

*Castro v. United States*,
   608 F.3d 266 (5th Cir. 2010) .................................................................... 9

*Comm. Of Cent. Am. Refugees v. I.N.S.*,
   795 F.2d 1434 (9th Cir. 1986) ................................................................... 4

*D.B. v. Cardall*,
   826 F.3d 721 (4th Cir. 2016) ................................................................... 14

*Doe v. DiGenova*,
   779 F.2d 74 (D.C. Cir. 1985) .................................................................. 12

*Dorman v. Simpson*,
   893 F. Supp. 1073 (N.D. Ga. 1995) .......................................................... 2

*Dupree v. United States*,
   247 F.2d 819 (3d Cir. 1957) .................................................................... 12

*Elgamal v. United States*,
   No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) ................... 15

*Farley v. Greyhound Canada Trans.* Corp.,
No. 03-cv-0344 (SR), 2009 WL 1851037 (W.D.N.Y. June 26, 2009) ..................................... 15

*Fazaga v. Fed. Bureau of Investigation*,
916 F.3d 1202 (9th Cir. 2019) ........................................................................................... 10

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*,
592 F.2d 364 (7th Cir. 1979) ............................................................................................. 12

*FDIC v. Meyer*,
510 U.S. 471 (1994) ....................................................................................................... 1, 10

*Flores v. Lynch*,
828 F.3d 898 (9th Cir. 2016) ...................................................................................... 7, 8, 14

*Hatahley v. United* States,
351 U.S. 173 (1956) ........................................................................................................... 13

*Hornbeck Offshore Transp., LLC v. United States*,
569 F.3d 506 (D.C. Cir. 2009) ............................................................................................. 2

*J.F.G. v. Hott*,
921 F.3d 204 (4th Cir. 2019) ............................................................................................. 10

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ........................................................................................................ 13

*Kiiskila v. United States*,
466 F.2d 626 (7th Cir. 1972) ......................................................................................... 9, 10

*Linder v. United States*,
937 F.3d 1087 (7th Cir. 2019) .................................................................................... 2, 9, 10

*Lipsey v. United States*,
879 F.3d 249 (7th Cir. 2018) ............................................................................................... 4

*Maas v. United States*,
94 F.3d 291 (7th Cir. 1996) ................................................................................................. 4

*Marin-Garcia Holder*,
647 F.3d 666 (7th Cir. 2011) ............................................................................................. 10

*Martinez v. United States*,
2020 WL 4036763 (10th Cir. July 17, 2020) ..................................................................... 10

*McGowan v. United States*,
825 F.3d 118 (2d Cir. 2016) ............................................................................................... 14

*Mejia-Mejia v. ICE*, No. 18-1445,
   2019 WL 4707150 (D.D.C. Sept. 26, 2019) ............................................................ 5

*Ms. L. v. ICE*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................. 2, 3, 11, 13

*Ms. L. v. ICE*,
   302 F. Supp. 3d 1149 (S.D. Cal. 2018) ............................................................ 11

*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) ............................................................................ 10

*Palay v. United States*,
   349 F.3d 418 (7th Cir. 2003) ............................................................................. 6

*Payne-Barahana v. Gonzales*,
   474 F.3d 1 (1st Cir. 2007) ............................................................................... 11

*Pena Arita v. United States*,
   -- F. Supp. 3d --, 2020 WL 3542256 (S.D. Tex. June 30, 2020) ................. passim

*Powell v. United States*,
   233 F.2d 851 (10th Cir. 1956) .......................................................................... 12

*Prince v. Massachusetts*,
   321 U.S. 158 (1944) .......................................................................................... 11

*Quilloin v. Walcott*,
   434 U.S. 246 (1978) .......................................................................................... 11

*Reynolds v. United States*,
   549 F.3d 1108 (7th Cir. 2008) ............................................................................ 4

*Ryan v. U.S.,*
   *INS*, 974 F.3d 9 (1st Cir. 2020) ....................................................................... 15

*Saks v. Sawtelle, Goode, Davidson & Troilo*,
   880 S.W.2d 466 (Tex. App. 1994) ..................................................................... 15

*Santa-Rosa v. United States*,
   335 F.3d 39 (1st Cir. 2003) ................................................................................. 4

*Santosky v. Kramer*,
   455 U.S. 745 (1982) .......................................................................................... 11

*Sickman v. United States*,
   184 F.2d 616 (7th Cir. 1950) ............................................................................. 12

*Sloan v. H.U.D.*,
   236 F.3d 756 (D.C. Cir. 2001) ................................................................. 5

*Sutton v. United States*,
   819 F.2d 1289 (5th Cir. 1987) ................................................................. 9

*Troxel v. Granville*,
   530 U.S. 57 (2000) ................................................................................. 11

*United States v. Dominguez-Portillo,*
   No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ............... 7, 8

*United States v. Gaubert,*
   499 U.S. 315 (1991) ..................................................................... 4, 5, 6, 7

*Van Dinh v. Reno,*
   197 F.3d 427 (10th Cir. 1999) ................................................................. 4

*W.S.R. v. Sessions,*
   318 F. Supp. 3d 1116 (N.D. Ill. 2018) .............................................. 11, 13

*Ward v. Emmett,*
   37 S.W.3d 500 (Tex. App. 2001) ........................................................... 15

## **Statutes**

6 U.S.C. § 279(g)(2) .............................................................................. 13, 14

8 U.S.C. § 1232(b)(3) .................................................................................. 13

8 U.S.C. § 1232(c)(3)(A) ............................................................................... 9

12 U.S.C. § 1823(e) ..................................................................................... 12

28 U.S.C. § 2680(a) ................................................................................. 3, 11

The government's renewed motion laid out multiple legal grounds supporting dismissal of Plaintiff's complaint. For the reasons stated in the government's motion, the United States has not waived its sovereign immunity and agreed to subject itself to suit for monetary damages for claims such as those Plaintiff brings here, which allege constitutional violations by government officials engaged in discretionary decision-making expressly authorized by federal law.

In response, Plaintiff repeatedly asserts that government agents carried out their discretionary duties in a manner that was "harsh", "cruel" and even "torturous". However, no such characterizations change the fundamental legal principles barring this action. Nor, contrary to Plaintiff's suggestion, do these legal barriers leave Plaintiff without a "remedy" (Opp'n at 1); Plaintiff's complaint itself relies on decisions issuing injunctive relief in cases challenging alleged constitutional violations resulting from family separations at the border. (*See id.* at 11-12.) Nonetheless, the FTCA's waiver of sovereign immunity is limited and thus, as the cases make clear, many potential tort plaintiffs are left without a "remedy" for monetary damages.

In sum, the issue here is whether the federal government has waived its sovereign immunity and authorized claims for monetary damages of the sort Plaintiff brings here. It has not. Congress did not contemplate any such action under the FTCA, and this case should therefore be dismissed.

I.      **Plaintiff's Opposition Further Confirms That Plaintiff Is Seeking A Prohibited Recovery For Alleged Constitutional Torts**

Plaintiff does not dispute that the Supreme Court has held that plaintiffs bringing claims under the FTCA may not recover for constitutional torts. (*See* U.S. Mem. at 8-9 (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)).) Nonetheless, Plaintiff contends that her complaint does not bring claims involving constitutional violations because she pleads "common-law" torts. (Opp'n

at 2-3.)[1]  However, the law is clear that the particular labels applied to a claim do not deprive a plaintiff's claim of its constitutional nature, and indeed courts routinely hold that claims pleaded as so-called "common-law torts" are in fact prohibited "constitutional torts" because they invoke alleged constitutional violations.  *See, e.g., Dorman v. Simpson*, 893 F. Supp. 1073, 1078 (N.D. Ga. 1995) ("Even if the Court construed Plaintiff's claims as common law tort claims brought under the FTCA, Plaintiff's claims still would be barred by sovereign immunity because the FTCA does not waive immunity for tort claims which are constitutional in nature."); *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009) ("merely re-label[ing] a violation of a federal statute as common law claims" does not establish FTCA claim).

The Seventh Circuit's decision in *Linder v. United States* is instructive.  There, the court affirmed dismissal of claims for intentional infliction of emotional distress and malicious prosecution – *i.e.*, "common-law torts" – because the FTCA "does not apply to constitutional violations."  937 F.3d 1087, 1091 (7th Cir. 2019).  As the court explained, these "common-law" claims were prohibited because the complaint invoked constitutional theories and the FTCA is "a means to seek damages for common-law torts, without regard to constitutional theories."  *Id.*; *see also  Peña Arita v. United States*, -- F. Supp. 3d --, 2020 WL 3542256, at *8 (S.D. Tex. June 30, 2020) (dismissing intentional infliction of emotional distress and negligence claims based on family separation because "constitutional tort claims are not actionable under the FTCA").

Here, there is no dispute that Plaintiff's complaint likewise includes such "constitutional theories."  Plaintiff alleges that she and her children were subjected to the same family separation practices that the court ruled were likely "unconstitutional" in *Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018), violating her equal protection and due process rights, Am. Compl. ¶¶ 78, 86-94.

---

[1] Plaintiff suggests the court in *C.M.* and *A.P.F.* addressed this argument (Opp'n at 3); it did not, but rather addressed only whether constitutional violations could obviate the discretionary function exception.

Far from refuting the constitutional nature of her claims, Plaintiff's Opposition only confirms it. Plaintiff maintains, for example, that: "Plaintiffs have plausibly *pled* that the government's separation of families was *unconstitutional* because it violated the Plaintiffs' Fifth Amendment rights to family integrity." (Opp'n at 11 (emphasis added).) "Plaintiffs have also plausibly *pled* that the *federal immigration agents' actions violated their constitutional right* to equal protection under the law" and "*constitute a clear equal protection violation*." (*Id.* at 12 (emphasis added).) "Plaintiffs have plausibly *pled* that *DHS agents violated their procedural rights* by using family separation, threats and harsh treatment to pressure and coerce Lucinda into abandoning her immigration claims. Such actions are *straightforward violations of procedural due process*." (*Id.* at 13 (emphasis added).) Plaintiff alleges "the *Constitution* deprived DHS agents of the discretion to pursue *the course of action they did against Plaintiffs . . . .*" (*Id.*)

## II.     Plaintiff's Claims Are Barred By the FTCA's Discretionary Function Exception

For similar reasons, Plaintiff's Opposition also confirms that her claims are barred by the FTCA's discretionary function exception. Plaintiff does not dispute the FTCA's plain language stating the discretionary function exception bars "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Instead, Plaintiff misstates the standard and argues, contrary to her own allegations and well-settled law, that the government actions at issue were not discretionary.

While Plaintiff asserts in cursory fashion that DHS agents violated "regulations and directives" (Opp'n at 8), the law is clear that the discretionary function exception applies unless the government violated a legal directive that is both *mandatory* and *specific* (U.S. Mem. at 10-11 & n.3): Plaintiff must show that "a federal statute, regulation or policy *specifically prescribes* a

course of action for an employee to follow," *United States v. Gaubert*, 499 U.S. 315, 322 (1991)

(emphasis added), by providing a "*precise and optionless* directive," *Maas v. United States*, 94

F.3d 291, 297 (7th Cir. 1996) (emphasis added).  That is not the case here.

Likewise, under the second prong, "[t]he relevant inquiry is merely whether the conduct at

issue is '*susceptible to* policy analysis.'" *Id.* at 298 (emphasis added).  This standard is an objective

one; government agents' alleged "subjective intent is irrelevant to [the] analysis." *Reynolds v.*

*United States*, 549 F.3d 1108, 1112 (7th Cir. 2008).  Thus, asserting that government agents acted

in "cruel fashion" (Opp'n at 8) or had some other subjective intent does not avoid the exception.[2]

Applying these principles here, it is clear that the discretionary function exception applies.

Plaintiff does not dispute that "Congress has placed the responsibility of determining where aliens

are detained *within the discretion* of the Attorney General." *Comm. Of Cent. Am. Refugees v.*

*I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added).[3]  Indeed, "[d]iscretion lies at the

heart of the DHS law enforcement function." *Blanco Ayala v. United* States, -- F.3d --, 2020 WL

7050099, at *3 (4th Cir. Dec. 2, 2020).  In exercising this function, DHS agents must "make all

the classic judgment calls the discretionary function was meant to exempt from tort liability." *Id.*

Moreover, because (among other things) immigration policy involves "vital national interests in

law enforcement at the borders," "DHS officers' decisions in investigating and responding to

potential violations of immigration law are infused with public policy considerations." *Id.* at *5.

---

[2] Plaintiff acknowledges as much in a footnote, agreeing that it "[m]aybe so" that "allegations about the DHS agents' deliberate cruelty . . . do[] not defeat application of the DFE."  (Opp'n at 13 n.4.)

[3] *See also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (federal statutes specify "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate"); *Bailor v. Salvation Army*, 51 F.3d 678, 684 (7th Cir. 1995) (whether to detain or release prisoners are policy-based decisions protected by the discretionary function exception); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santa-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception to the FTCA").

Accordingly, as other courts have recognized, the "zero tolerance" policy that resulted in family separations was not only "susceptible to" policy analysis, but "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No. 18-1445, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019). It is "an 'administrative decision[n] grounded in social, economic, and political policy' that this Court is without jurisdiction to second-guess." *Pena Arita,* -- Supp. 3d --, 2020 WL 3542256, at *7. That conclusion is dispositive here.

**_The government did not violate any mandatory and specific directives._** Nonetheless, in the face of this law, Plaintiff attempts to avoid dismissal by citing a grab bag of allegations regarding "individual DHS agents'" actions in "implementing" the separation. (Opp'n at 4-5.) As a threshold matter, this attempt to recharacterize Plaintiff's allegations ignores the numerous statements in the complaint making clear that the gravamen of Plaintiff's claim is a challenge to government policies resulting in family separation. More fundamentally, in focusing on implementation of the alleged family separation policy, Plaintiff seeks to create a false dichotomy between the policy itself and its "implementation" in the field that the Supreme Court rejected in *Gaubert*. 499 U.S. at 324-25; *Bergquist v. U.S. Nat. Weather Serv.*, 849 F. Supp. 1221, 1226 (N.D. Ill. 1994); *see Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (claims "inextricably linked" to conduct protected by § 2680(a) also barred); U.S. Mem. at 14. As the court observed in dismissing similar family separation claims in *Peña Arita*, the "family separation policy itself and its implementation by officers in the field are discretionary" and thus "such claims are foreclosed by the discretionary function exception." -- F. Supp. 3d --, 2020 WL 3542256, at *7.

In fact, the very cases Plaintiff cites make clear that "'[w]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government

agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Palay v. United States*, 349 F.3d 418, 428 (7th Cir. 2003) (quoting *Gaubert*, 499 U.S. at 324-25). The government actor need not "belong to the policymaking or planning ranks of the government in order for the exception to apply." *Id.* Likewise, "applicability of the exception depends not on the intent of the government actor 'but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Id.*

Nonetheless, even if Plaintiff's allegations had been made outside the context of family separation, they would still be barred because they involve precisely the sort of discretionary actions with respect to detainees' conditions of confinement that courts have repeatedly held are not actionable under the FTCA. As the cases cited at pages 14-16 and footnote 8 of the government's motion make clear, courts invoking the discretionary function exception have rejected similar claims regarding the type of medical care detainees receive (*Cosby* and *Patel*), safety precautions taken when detainees are transferred (*Vinzant* and *Menolascina*), the sort of items to which individuals have access while in detention (*Bultema* and *Santa-Rosa*), detainees' opportunities for communication while in detention (*Harrison*), the sort of computer systems and databases the government uses (*Campos* and *Cruz*), and general conditions such as temperature and crowding (*Antonelli* and *Lineberry*). (*See* U.S. Mem. at 14-16 & n.8; Opp'n at 1, 5, 7.)

Thus, for example, in another family separation case that Plaintiff fails to address at all (*Peña Arita*), the court dismissed allegations that government agents violated a "nondiscretionary duty to provide medical care" and detained an alien without "adequate safeguards" leading to his suicide on the ground that such decisions are barred by the discretionary function exception. -- F. Supp. 3d --, 2020 WL 3542256, *8-9. As the court observed, decisions regarding conditions of confinement such as medical care and detainee transfers are the sort of decision-making that is

"'grounded in social, economic, and policy'" that the court was "without jurisdiction to second-guess." *Id.* at *1 (quoting *Gaubert*, 499 U.S. at 323).

Likewise, Plaintiff completely ignores the materials she incorporated in her own complaint that further confirm that such decisions regarding conditions of confinement are discretionary, and which suggest that government agents consider, under the circumstances, what measures are "reasonable," "acceptable", and "proper[]." (U.S. Mem. at 15 & n.9.) Far from laying out a set of mandatory and specific steps that agents must always follow, the alleged "directives" on which Plaintiff relies only underscore that agents have discretion with respect to these decisions.

Finally, Plaintiff ignores the repeated judgment of the courts rejecting similar "'attacks on general conditions, practices, rules, or restrictions of pretrial confinement"—in the context of family separation or otherwise—on the ground that such claims are essentially "constitutional tort" claims and "the United States is not vicariously liable for constitutional torts of its officials since the United States has not waived sovereign immunity from such actions.'" *Aguilar v. United States*, No. 1:16-048, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017); U.S. Mem. at 16.

**_Flores does not prohibit separation._**  Likewise, while Plaintiff attempts to argue that the *Flores* decree prohibits family separation, as the government observed in its motion (U.S. Mem. at 4-5, 14 n.7), the courts responsible for implementing that order have made clear that it does not. As the Ninth Circuit has observed, the *Flores* consent decree "*does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]*" and it "*does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'*" *Flores v. Lynch*, 828 F.3d 898, 906 (9th Cir. 2016) (emphasis added); *see also United States v. Dominguez-Portillo,* No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan.

5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").

Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). While the *Flores* Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908. Accordingly, *Flores* does nothing to change the statutes and regulations requiring minors to be transferred to ORR custody and placed in the "least restrictive" facility when their parents are detained by immigration authorities. Under federal law and the *Flores* agreement, such children cannot be detained in adult detention facilities. Thus, far from prohibiting separation, once an adult is detained, the law essentially requires it.[4]

Likewise, nothing in *Flores* would authorize the government to circumvent the statutory procedures governing release of children from ORR custody in the event someone alleges there is "no uncertainty about the parentage or fitness" of the parents. (Opp'n at 8 n.1.) The statutory framework prescribes a process the agency follow to ensure, based on its own inquiry, that the individuals who will receive custody of the children are who they say they are and that the health and safety of the children will be ensured before they are released from ORR custody. Thus, the TVPRA states that a child may be placed with a proposed custodian only after ORR "makes a determination that the proposed custodian is capable of providing for the child's physical and

_____

[4] Plaintiff's cases further confirm that *Flores* does not prohibit separation: "Though family separation is a stated goal of both the Flores Settlement and U.S. immigration policy generally, nothing in the settlement agreement expresses a preference for releasing parents who have violated immigration laws. In fact, the context of the *Flores* Settlement argues against this result: the Settlement was the product of litigation in which unaccompanied minors argued that release to adults other than their parents was preferable to remaining in custody until their parents could come get them." *Bunikyte*, 2007 WL 1074070, at *16.

mental well-being." 8 U.S.C. § 1232(c)(3)(A). Among other things, ORR must "verify" the information and make its own "independent finding" after investigating the custodian's past activities: "Such determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.*

***Alleged constitutional violations do not invalidate the exception.*** Finally, contrary to Plaintiff's suggestion that the Seventh Circuit "has not addressed the question" (Opp'n at 10 n.3), the Seventh Circuit (and other courts) have expressly held that alleged constitutional violations, such as those cited throughout Plaintiff's complaint, do not invalidate the discretionary function exception. As the court recently held in *Linder,* "[n]othing in [Section 2680(a)] suggests that some discretionary but tortious acts are outside the FTCA while others aren't." 937 F.3d at 1091. "[U]nless § 2680(a) is to be drained of meaning, it must apply to discretionary acts that are tortious," including tortious acts that "violate the Constitution." *Id.* (citing *Kiiskila v. United States*, 466 F.2d 626, 627-28 (7th Cir. 1972)). Accordingly, in *Linder*, the court dismissed the tort claims under the FTCA's discretionary function exception even though plaintiff alleged that the government's tortious acts violated the Sixth Amendment's Confrontation Clause. *Id.* at 1090.

The cases Plaintiff cites from outside the circuit do not govern here, but in any event many are mischaracterized. For example, while Plaintiff cites *dicta* from the Fifth Circuit panel in *Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987) to argue that the discretionary function exception is invalidated by alleged constitutional violations (Opp'n at 10), Plaintiff ignores the Fifth Circuit's subsequent en banc ruling in *Castro v. United States* reinstating a district court decision rejecting this position. 608 F.3d 266 (5th Cir. 2010). Thus, when this same argument recently was raised before a district court in the Fifth Circuit in another family separation case, the court rejected it,

holding the exception barred plaintiff's claims.  *Peña Arita*, -- F. Supp. 3d --, 2020 WL 3542256, at *8.

The other cases Plaintiff cites are similar.  While it is true that some courts have suggested constitutional violations may invalidate the discretionary function exception under some circumstances, that is not the law in the Seventh Circuit and many other jurisdictions.[5]  Moreover, Plaintiff never attempts to reconcile such a rule with the Supreme Court's decision in *Meyer* which made clear that the United States "simply has not rendered itself liable under § 1346(b) for constitutional tort claims."  510 U.S. at 478.  As the Seventh Circuit noted in *Linder*, tort claims invoking "constitutional theories" are prohibited under the FTCA.  937 F.3d at 1091.

Nonetheless, Plaintiff's argument independently fails because here there was no violation of any clearly established constitutional right.  As noted in the government's motion, there was no clearly-established right to family integrity in the context of immigration detention.  (U.S. Mem. at 19 n.12.)  *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *Marin-Garcia Holder*, 647 F.3d 666, 674 (7th Cir. 2011) ("nothing in the Constitution prohibits" separation of citizen children from parents when

---

[5] For example, in *Nurse v. United States*, the Ninth Circuit indicated there was no across-the-board prohibition on invoking the exception in cases alleging the government violated the Constitution, noting: "we do not make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor."  226 F.3d 996, 1002 (9th Cir. 2000).  Moreover, the same court subsequently held that "FTCA claims may be able to proceed" unless a court "determines that Defendants did violate a *nondiscretionary* federal constitutional or statutory directive." *Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019) (emphasis added).  Similarly, while the Tenth Circuit in *Martinez v. United States* observed that some courts had ruled the discretionary function defense inapplicable under certain circumstances where government conduct was unconstitutional, the court itself declined to decide the issue because the plaintiff's Fourth Amendment arguments were not persuasive.  2020 WL 4036763, at *6 (10th Cir. July 17, 2020).  Finally, Plaintiff mischaracterizes the Seventh Circuit's ruling in *Kiiskila*, 466 F.2d at 627 (Opp'n at 11 n.3), which in fact held that the discretionary function exception applied despite alleged First Amendment violations and which the Seventh Circuit specifically cited in its decision in *Linder*.

parents deported); *Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007) (rejecting due process right to family visitation in immigration detention); *Payne-Barahana v. Gonzales*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits that have addressed the constitutional issue (under varying incarnations of the immigration laws and in varying procedural postures) have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right.").[6]

Moreover, Plaintiff here was being held for a *criminal* immigration violation and, as even the *Ms. L.* court recognized, "parents and children may lawfully be separated when the parent is placed in criminal custody." 310 F. Supp. 3d at 1143.

## III.    Plaintiff's Claims Are Barred By the FTCA's Due Care Exception

Plaintiff's claims also are barred by the FTCA's "due care exception," which prohibits "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). While Plaintiff argues that, under the Fourth Circuit's decision in *Welch*, the exception only applies where a statute or law *requires* certain conduct, as Plaintiff implicitly acknowledges (Opp'n at 14), the Seventh Circuit has never adopted this standard, which is inconsistent with the statute's plain language. Section 2680 only references "execution" of a statute or regulation—language that is broad and encompasses both situations where a statute "requires" certain actions as well as circumstances where it merely "authorizes" certain actions.

---

[6] Moreover, even under the later-decided cases Plaintiff cites, any alleged right to family integrity would not require Plaintiff's release to avoid separation. *See W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018) (there is no authority for "the proposition that the substantive due process to family integrity dictates release of the parents (as distinct from reunification)"); *Ms. L.v. ICE*, 302 F. Supp. 3d at 1159 n.3 (plaintiffs did not challenge the decision to detain adult aliens while in removal proceedings for the "sound reasons" that the law requires detention). And, the earlier-decided cases Plaintiff cites do not even involve detainees. *See, e.g., Santosky v. Kramer*, 455 U.S. 745 (1982) (termination of parental rights); *Troxel v. Granville*, 530 U.S. 57 (2000) (visitation rights of grandparents); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (parental right to give children religious training and encourage them in the practice of religious belief); *Quilloin v. Walcott*, 434 U.S. 246 (1978) (right to challenge adoption).

Thus, in *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, the Seventh Circuit applied the due care exception in a case involving 12 U.S.C. § 1823(e), under which the "FDIC was *authorized* to enter into purchase and assumption agreements with respect to the assets of failing or closed banks." 592 F.2d 364, 366 (7th Cir. 1979). Likewise, in *Sickman v. United States*, the Seventh Circuit held that landowners' claims were barred by the due care exception because the government's actions were "authorized" by the Migratory Bird Treaty Act, and indeed did so while simultaneously finding that the government actions were "discretionary" and thus fell within the discretionary function exception. 184 F.2d 616, 619 (7th Cir. 1950). Accordingly, the Seventh Circuit's prior rulings are inconsistent with the standard Plaintiff asks this Court to adopt.

Indeed, contrary to Plaintiff's suggestion, numerous courts have similarly held that the due care exception applies where government employees are "authorized by" or act "pursuant to" regulations. *See, e.g., Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985) (due care exception barred claim where Secretary of the Interior was "authorized, in his discretion, to transfer . . . the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe"); *Doe v. DiGenova*, 779 F.2d 74, 88 n.26 (D.C. Cir. 1985) (actions authorized by regulations protected by due care exception); *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (exception applies "[w]here government employees act pursuant to and in furtherance of regulations"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective").

Nonetheless, even under the standard Plaintiff advocates, the exception would apply here because the statutory and regulatory framework requires separation where a parent is detained. While Plaintiff argues federal laws did not require her detention and separation from her children

because they do not reference "separating families" (Opp'n at 16), the INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). Once Plaintiff was detained, her children became "unaccompanied" alien children, 6 U.S.C. § 279(g)(2), and the TVPRA required that DHS "*shall transfer the custody of such child* to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child," 8 U.S.C. § 1232(b)(3) (emphasis added). The children could not be kept in an adult detention facility with their mother. Thus, federal law not only authorized, but mandated the separation. Indeed, the very cases Plaintiff cites agree that, "[w]hen a parent is charged with a criminal offense, the law ordinarily *requires* separation of the family." *Ms. L*, 310 F. Supp. 3d at 1139 (emphasis added); *W.S.R.*, 318 F. Supp. 3d at 1125 ("The fathers' criminal detentions necessitated the separation of W.S.R. and C.D.A.").[7]

Likewise, Plaintiff's assertion that federal agents failed to act with "due care" because they allegedly acted in a "cruel" or "tortious" manner in carrying out the separation misconstrues the due care exception. The "due care" inquiry asks only whether the government acted pursuant to statutes or regulations. *Hatahley v. United* States, 351 U.S. 173, 181 (1956). Plaintiffs do not allege that agents deviated from the statutory dictates of the TVPRA in transferring custody of Plaintiff's children to ORR—in fact, the transfer was statutorily required. The conduct upon which Plaintiff's claims are based—the separation of Plaintiff from her children—resulted from the government's enforcement of federal statutes and thus the due care exception still applies.

Plaintiff's interpretation would effectively remove the exception from the FTCA, allowing plaintiffs to sue wherever they allege the government failed to act with "due care"—i.e., negligently or tortiously. But every claim under the FTCA alleges tortious or negligent conduct.

---

[7] Plaintiff suggests she should have been granted "parole" (Opp'n at 16 n.6), but neither her complaint nor Opposition show she meets the statutory requirements for parole, much less that she sought it.

**IV.     Plaintiff's Claims Are Barred Because There Is No Private Analogue**

Plaintiff's claims further fail because the government actions Plaintiff attacks have no private analogue.  While Plaintiff argues the immigration cases dismissing FTCA claims on this ground are not applicable because they involved "quasi-adjudicative" decisions (Opp'n at 23), just as the government is the only entity with authority to "adjudicate" immigration status, so too it is the only entity with authority to "enforce" such determinations: private parties do not.  Moreover, here the government did make such a determination, concluding that Plaintiff's children were "unaccompanied alien children" and transferring them to ORR custody on that ground.[8]

In any event, many of the cases the government cited did *not* involve "quasi-adjudication." Rather, they involve the sort of decisions to prosecute and detain individuals charged with violating federal laws that are solely within the government's authority, regardless of whether they occur within the immigration context or not: "Private persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor." *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016).  The fact that a plaintiff purports to bring "state law causes of action" for torts under the FTCA does not establish a private analogue where the alleged tortious conduct relates to functions that only the government can perform.  (*See* Opp'n at 18-22.)  To hold to the contrary would mean there would be a private analogue in every

---

[8] In fact, Plaintiff appears to dispute that determination, arguing without basis that the children were not UACs. (Opp'n at 9 n.2.)  However, the statutory UAC definition is a broad one that includes circumstances where a parent is physically present but nevertheless unavailable to provide care and physical custody.  6 U.S.C. § 279(g)(2); *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016).  Of course, a parent who is detained in criminal custody or secure detention pending removal proceedings is no longer available to provide care and physical custody.  In any event, the *Flores* Agreement precludes detention of minors in secure detention facilities (absent circumstances not present here), and always precludes placing children in secure adult detention.  Under *Flores*, "[DHS] must transfer the minor to a non-secure, licensed facility."  828 F.3d at 902-03; *Bunikyte*, 2007 WL 1074070 at *16 (under *Flores*, DHS must "releas[e] the children to adult relatives not in custody, adult friends designated by their parents, or even state-operated foster care").  Thus, separation occurs regardless of the UAC designation.  Nonetheless, Plaintiff's argument makes clear that Plaintiff's claims in fact attack this "quasi-adjudicative" determination regarding the status of the children.

FTCA action, thereby reading this requirement out of the statute. *See also, e.g., Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (enforcement decision had no private analogue and thus did not give rise to FTCA action); *Ryan v. U.S. INS*, 974 F.3d 9, 26 (1st Cir. 2020) ("[A] private party cannot initiate proceedings to remove a noncitizen from the country. Nor does removal remotely resemble any type of civil remedy available to private litigants."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) ("immigration matters" are "an inherently governmental function").

## V. Plaintiff's Claims Are Barred As A Matter of Public Policy

Finally, Plaintiff's claims are barred because her alleged injuries resulted from her criminal conduct in entering the United States illegally. While Plaintiff now claims Texas law applies (her complaint does not specify which law applies), as the government's motion makes clear, this is a general principle that applies under the law of many states – including Texas. *See Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 470 (Tex. App. 1994) ("[P]ublic policy bars recovery for injuries arising from a knowing and willful crime"); *Ward v. Emmett*, 37 S.W.3d 500, 502 (Tex. App. 2001) ("Courts ... have used this rule, along with public policy principles, to prevent a plaintiff from recovering damages that arose out of his or her own illegal conduct.").

Moreover, while Plaintiff argues that it is "disturbing" to apply this principle in the immigration context (Opp'n at 25), as the government's motion notes, the principle contains no such exception and has in fact been applied by other courts where immigrants suffered alleged torts (and even death) while "attempting to illegally enter the United States." *Farley v. Greyhound Canada Trans.* Corp., No. 03-cv-0344 (SR), 2009 WL 1851037, at *3 (W.D.N.Y. June 26, 2009).[9]

Plaintiff's complaint should be dismissed.

---

[9] The assertion that certain claims were excluded from this argument (Opp'n at 25 n.13) is inaccurate.

Date: December 4, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DOUGLAS G. SMITH
Deputy Assistant Attorney General, Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America