# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| D.A., A.A., and LUCINDA DEL CARMEN PADILLA-GONZALES,<br>Plaintiffs,<br>v.<br>THE UNITED STATES OF AMERICA, HEARTLAND ALLIANCE FOR HUMAN NEEDS AND HUMAN RIGHTS, and HEARTLAND HUMAN CARE SERVICES, INC.<br>Defendants. | Case No. 1:20-cv-03082<br>Hon. Martha M. Pacold |

**HEARTLAND HUMAN CARE SERVICES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

As set forth in Heartland Human Care Services' ("HHCS")[1] motion to dismiss, ECF 40 ("Motion"), Plaintiffs' First Amended Complaint ("FAC") fails to state any plausible claims for relief. Plaintiffs' arguments to the contrary in their Response in Opposition, ECF 45 ("Response"), are unpersuasive, and the FAC should be dismissed.

**I. The First Amended Complaint fails to state a claim under § 504 of the Rehabilitation Act.**

Plaintiffs' Rehabilitation Act claim fails in several regards and should be dismissed.

**a. The FAC fails to allege facts that plausibly suggest that A.A. and D.A.'s claimed impairments substantially limited one or more of their major life activities during their time in HHCS's care.**

In its Motion, HHCS explained that the FAC failed to "allege any facts that indicate *how* [A.A. and D.A.'s] claimed impairments prevented or restricted [their identified major life activities] during their time in HHCS's care." ECF 40 at 5 (emphasis in original). In response, Plaintiffs inaptly cite to the FAC's undisputed assertions that mental impairments can qualify as

---

[1] Plaintiffs originally named both HHCS and Heartland Alliance for Human Needs and Human Rights ("Heartland Alliance") as defendants. In their response, Plaintiffs have agreed to dismiss Heartland Alliance. *See* ECF 45 at 15. As such, only HHCS is submitting this reply.

1

disabilities under the Rehabilitation Act and that thinking, sleeping, eating, learning and playing are all major life activities. ECF 45 at 4-5 (citing FAC ¶¶ 5-8; 40-43; 29 C.F.R. § 1630.2(i)(1)(i)). Plaintiffs then repeat the FAC's bare legal conclusion that "these impairments substantially limited life activities for both children." *Id.* at 4 (citing FAC ¶¶ 38, 43, 156). According to Plaintiffs, HHCS "misunderstands [these] allegations." *Id.* But it is Plaintiffs who misunderstand HHCS's argument. HHCS acknowledges that the FAC recites the bare legal conclusion that the children's alleged impairments substantially limited major life activities. *See* ECF 40 at 4 ("The FAC recites in conclusory fashion that [A.A. and D.A.'s] impairments 'substantially limited one or more major life activities, including thinking, sleeping, eating, learning, and safe play...'") (quoting FAC ¶ 156). But such an allegation is insufficient and Plaintiffs do not meaningfully engage with HHCS's argument that the FAC does not allege *facts* in support of this conclusory assertion, i.e., that it "fail[s] to allege any facts that indicate *how* [the children's] claimed impairments prevented or restricted their 'thinking, sleeping, eating, learning, and safe play' during their time in HHCS' care." *Id.* at 5 (emphasis in original).

In support of their conclusion that A.A. and D.A.'s alleged disabilities "substantially limited their ability to think, sleep, eat, learn, and engage in safe play, and interact with others," Plaintiffs cite allegations in the FAC that assert A.A. cried at night and asked for his mother on at least one occasion. *See* ECF 45 at 4 (citing FAC ¶ 38).[2] But neither there nor elsewhere in the FAC are there allegations that plausibly suggest that A.A.'s alleged disability—as opposed to, say, a small child's natural uncertainty about being in an unfamiliar place and desire to see his mother—caused this behavior. Moreover, since the FAC does not allege facts showing the frequency or

---

[2] Plaintiffs also cite to other paragraphs in the complaint to support their legal conclusion, but these paragraphs contain no allegations of fact that connect their alleged impairments with major life activities. *See* ECF 45 at 4 (citing FAC ¶ 43, 156).

2

extent of the conduct, it fails to show "substantial" interference with the major life activity of sleeping. Plaintiffs also cite allegations that A.A. "was . . . bullied by larger children." *Id.* Here too, the FAC is bereft of allegations explaining *how* A.A.'s alleged anxiety and depression contributed to the misbehavior of other children. And as to D.A., Plaintiffs cite to no factual allegations at all connecting her alleged impairment with the major life activities that Plaintiffs claim were substantially limited, nor do they allege any facts showing any "substantial" limitation that she suffered. *Id.* Without this crucial, *factual* nexus between A.A. and D.A.'s alleged impairments and the major life activities, Plaintiffs have failed to adequately allege that the children were disabled within the meaning of the act. Accordingly, their § 504 claim should be dismissed. *See, e.g.*, *Jackson v. Northwestern Univ. School of Law*, No. 10-C-1986, 2010 WL 5174389, *3 (N.D. Ill. Dec. 15, 2010) (dismissing complaint partially because "[plaintiff] does not plead . . . how [her disability] substantially limits one or more major life activities" but "simply makes the conclusory statement that it does").

      **b. Plaintiffs have failed to adequately identify which programs or activities they are challenging.**

In its Motion, HHCS detailed Plaintiffs' failure to adequately identify the program or activity at issue as a fatal flaw in their Rehabilitation Act claim. *See* ECF 40 at 5-6. As HHCS pointed out, the FAC is unclear whether Plaintiffs are challenging HHCS's care generally or specific policies, actions, or omissions (and, if the latter, which ones). *Compare* FAC ¶ 156 (stating that A.A. and D.A. "required the ability to interact and develop in a therapeutic setting that did not restrict basic human interaction"); ¶ 43 (suggesting that HHCS should have provided "programs and detention conditions [that] address these disabilities"); *with id.* ¶ 45 (alleged punishment of A.A. for "crying and getting into a scuffle").

3

Instead of responding to this argument, Plaintiffs engage in misdirection. They begin by cribbing together quotes from elsewhere in HHCS's Motion to mischaracterize HHCS's argument. According to Plaintiffs, HHCS's argument is that "Plaintiffs have not sufficiently pleaded 'how [A.A. and D.A.'s] particular impairments' limited their ability to take advantage of programs provided by HHCS, since the FAC 'fails to make any specific allegations at all' about HHCS's services."[3] ECF 45 at 5. But HHCS's argument is *not* that Plaintiffs neglected to make *any* allegations about HHCS's services. Indeed, HHCS quotes such allegations its Motion. *See* ECF 40 at 5, 6 (quoting FAC ¶¶ 43, 45,156). Rather, HHCS argues that despite the generalized allegations concerning the alleged shortcomings of HHCS's care, at bottom, it is not clear which program or activity serves as the basis for Plaintiffs' § 504 claim.

Plaintiffs then argue that the Rehabilitation Act applies to all of HHCS's operations. ECF 45 at 5. But even assuming that all of HHCS's operations could constitute a "program or activity" under the Rehabilitation Act, this does not relieve Plaintiffs of the responsibility of affirmatively identifying *which* operations they are challenging. *See, e.g.*, *Heth v. Lasalle Cty.*, No. 19-C-1096, 2019 WL 6327364, at *5 (N.D. Ill. Nov. 26, 2019) (dismissing Rehabilitation Act and ADA claims partly because the plaintiff "d[id] not identify the[] services, programs, or activities" being challenged). The case Plaintiffs cite, *Oconomowoc Residential Programs v. City of Milwaukee*, illustrates this point. Although the court noted that the ADA "applies to anything [the City of Milwaukee] does," the plaintiff still challenged a specific operation—the denial of a zoning variance—rather than all of the city's operations. 300 F.3d 775, 782 (7th Cir. 2002).

---

[3] Plaintiffs misattribute HHCS's words. The phrase "fails to make any specific allegations at all," as used by HHCS in its Motion to Dismiss, does not refer to HHCS's services, but rather to certain major life activities that Plaintiffs claim were impacted by A.A. and D.A.'s alleged disabilities. *See* ECF 40 at 5 ("*As to other major life activities*, the FAC *fails to make any specific allegations at all . . .*") (emphasis added).

### c. Plaintiffs have not adequately alleged facts to support a "failure to accommodate" claim.

As set out in HHCS's Motion, the FAC fails to plausibly allege that HHCS was aware that D.A. and A.A. were disabled, as allegations that "it was well known that children like D.A. and A.A. are disabled" and "require[] accommodation" are insufficient to allege such knowledge. ECF 40 at 8 (citing FAC ¶¶ 42, 157). In response, Plaintiffs point to allegations suggesting that HHCS knew that the children had undergone a traumatic experience. *See* ECF 45 at 7 (citing FAC ¶¶ 32, 42, 43 n.3). But Plaintiffs' argument conflates knowledge of injury with knowledge of disability. Plaintiffs must allege that HHCS knew that A.A. and D.A. were *disabled* within the meaning of the act, i.e., that the children were in fact impaired, not just that they had gone through a traumatic experience, and that these impairments were in fact substantially limiting one or more major life activities. Plaintiffs have failed to do so.[4]

Plaintiffs' response is equally lacking with respect to HHCS's argument that Plaintiffs failed to identify the specific accommodations that should have been made or to allege how they could have been provided without imposing significant costs or fundamentally altering the program or activity in question. ECF 40 at 7-8; *see Riley v. Vilsack*, 665 F. Supp. 2d 994, 1007 (W.D. Wis. 2009) (finding that the plaintiff failed to adequately allege failure-to-accommodate claim because his complaint did not, among other things, identify the accommodation he needed).

According to Plaintiffs, HHCS's position is that "the FAC fails to allege that [HHCS] could have made reasonable modifications to accommodate A.A. and D.A.'s disabilities." ECF 45 at 7.

---

[4] Plaintiffs point out that the FAC contains allegations that A.A. and D.A. hugged each other after arriving at HHCS and that D.A. had trouble sleeping on at least one occasion. ECF 45 at 7 (citing FAC ¶¶ 7, 38). These ambiguous occurrences—far more likely to be caused by factors other than the children's alleged disability (particularly given the children's ages)—are not sufficient to impute knowledge that A.A. and D.A. were disabled within the meaning of the act to HHCS. A child may be unhappy or distressed without necessarily being disabled, and Plaintiffs failed to allege facts showing that they were disabled or that HHCS had knowledge of any alleged disability.

5

Not so. In its Motion, HHCS recognizes that the FAC recites that reasonable modifications "could have been offered" to A.A. and D.A. ECF 40 at 8 (citing FAC ¶ 156). HHCS's *actual* argument, however, is that bare allegations that reasonable accommodations could have been made is not enough to state a claim under a "refusal to accommodate" theory. ECF 40 at 7-8.

Plaintiffs decline to engage with this argument. Instead, they assert that "A.A. and D.A. required the ability to interact and develop in a setting that did not restrict basic human interaction." ECF 45 at 8 (citing FAC ¶ 156). Even assuming that "physical touch and hugging between the siblings, greater access to phone calls with family and relatives, and personal conversation," *id.*, would have allowed A.A. and D.A. to fully participate or receive the benefit of HHCS's programs or activities, Plaintiffs have identified the children's needs rather than the accommodations HHCS should have made to its programs and activities in order to meet those needs.

Plaintiff then restate the bare legal conclusion that HHCS's "programs could have been modified to permit basic human interaction, but were not." ECF 45 at 8 (citing FAC ¶ 157). Amazingly, Plaintiffs argue that there "is no reason to think that *the modest modifications Plaintiffs identified*" would have meaningfully "changed the nature of services that [HHCS] provided—nor does [HHCS] claim they would." *Id.* (emphasis added). But the FAC does not identify any "modifications," let alone "modest" ones, so it is impossible to assess whether they would have imposed significant costs or fundamentally changed the nature of HHCS's services. It is not HHCS's burden to identify the accommodations that could have been made so that the parties can debate their reasonableness; it is Plaintiffs', and they have failed to shoulder it.[5]

---

[5] To the extent that Plaintiffs propose such accommodations for the first time in their Response, *see* ECF 45 at 7, the Court should disregard these allegations. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (recognizing that it is a "basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

### d. Plaintiffs have not adequately pled intentional discrimination under a "deliberate indifference" theory.

Since Plaintiffs do not (and cannot) request an injunction, which is the primary remedy under § 504 of the Rehabilitation Act, they must allege that HHCS *intentionally* discriminated against A.A. and D.A. on the basis of their disability to be entitled to relief. *See Phipps v. Sheriff of Cook Cty*, 681 F. Supp. 2d 899, 917 (N.D. Ill. 2009) (noting that "it is necessary to show intentional discrimination in order to recover compensatory damages"). Perhaps to avoid dismissal on this ground, the FAC makes the conclusory statement that HHCS "actively discriminated against A.A. and D.A. because of their disabilities."[6] FAC ¶ 158. In its Motion, HHCS convincingly argued that the facts alleged by Plaintiffs cannot support the conclusion that HHCS treated the children unfavorably on the basis of their alleged disabilities.[7] *See* ECF 40 at 6-7. Since the FAC fails to plausibly allege intentional discrimination, no relief is available and the FAC should be dismissed on this ground alone. *Id.*

Unsurprisingly, Plaintiffs have seemingly abandoned this "active" discrimination theory completely. In their Response, Plaintiffs now argue that HHCS discriminated against the children through "deliberate indifference." ECF 45 at 9. But while a plaintiff may prove intentional discrimination under a "deliberate indifference" theory, *Lacy v. Cook Cty.*, 897 F.3d 847, 863 (7th Cir. 2018), nowhere *in the FAC* do Plaintiffs allege that HHCS was indifferent, let alone deliberately so. A court may consider a new theory presented in an opposing brief only if it is supported by allegations in the complaint. *See Epstein v. Epstein*, 843 F.3d 1147, 1151 n.5 (7th

---

[6] Plaintiffs failed to allege intentional discrimination in their initial complaint. *See* ECF 1. Only after HHCS pointed out in its first motion to dismiss that this failure meant that Plaintiffs were not entitled to any of their requested relief, *see* ECF 29 at 8, did Plaintiffs allege that HHCS "engaged in active disability discrimination," *see* ECF 35 at 13.

[7] As evidence of this purported "active disability discrimination," the FAC alleges that HHCS employees "punish[ed]…A.A. for crying and getting in a scuffle" and "ma[de] hostile remarks to A.A. and D.A. regarding…traumatic events…to which both children had been exposed." FAC ¶ 45.

7

Cir. 2016) (rejecting theory presented for the first time on appeal where it was unsupported by the allegations in the amended complaint). That is not the case here.

The FAC contained no allegations whatsoever supporting a claim of deliberate indifference. A plaintiff seeking to prove deliberate indifference must show (1) that the defendant "kn[ew] that a harm to a federally protected right [was] substantially likely," and (2) "a failure to act upon that likelihood." *Lacy*, 897 F.3d at 863. The crux of deliberate indifference is a conscious decision to refrain from acting to prevent an imminent and obvious violation of a federally protected right. *See Strominger v. Indiana Dep't of Correction*, No. 115CV01654TWPMPB, 2017 WL 4236570, at *4 (S.D. Ind. Sept. 25, 2017) ("Deliberate indifference in [the Rehabilitation Act] context 'must be a deliberate choice, rather than negligence or bureaucratic inaction.'") (quoting *S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248, 263 (3d Cir. 2013); *Reyes v. Dart*, No. 17-C-9223, 2019 WL 1897096, at *10 (N.D. Ill. April 29, 2019) ("[F]ailure to act [for purposes of an ADA damages claim] is a result of conduct that is more than negligent, and involves an element of deliberateness.") (citing *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018); *Updike v. Multnomah Cty.*, 870 F.3d 939, 951 (9th Cir. 2017)). This is a demanding standard. *See Audia v. Briar Place, Ltd.*, No. 17-CV-6618, 2018 WL 1920082, at *5 (N.D. Ill. April 24, 2018) (noting that the deliberate indifference standard is "remarkably similar" to the "standard for assessing whether conduct is willful and wanton") (quoting *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001)).

The allegations in the FAC do not support a "deliberate indifference" claim. In support of their contention that HHCS was deliberately indifferent, Plaintiffs point to allegations that HHCS was aware that A.A. and D.A. had experienced trauma and that HHCS did not make modifications to the programs and services it provides to unaccompanied minors. ECF 45 at 9. But the FAC

8

contains no factual allegations that plausibly state that HHCS engaged in such conduct with the requisite deliberateness; i.e., that HHCS was aware that it was substantially likely that A.A. and D.A. would be unable receive the benefits of HHCS's programs or services because of their alleged disabilities and made a conscious choice to refrain from acting.[8] Since Plaintiffs fail to allege any facts showing intentional discrimination, their § 504 claim should be dismissed.

## II. Plaintiffs Fail to Plead a Prima Facie Case of Breach of Fiduciary Duty

HHCS's Motion demonstrated that Plaintiffs did not plead a prima facie case for breach of fiduciary duty, as they failed to properly allege the existence of a fiduciary duty or how any alleged fiduciary duty was breached, or caused the harm. ECF 40 at 9-11. Plaintiffs' Response fails to cure these deficiencies.

In its Motion, HHCS explained that the FAC fails to allege the existence of a legally recognized fiduciary relationship. Specifically, under Illinois law a guardian must be appointed by the court, and in the absence of a formal fiduciary relationship, the party seeking to allege that an implied fiduciary relationship exists must do so by clear and convincing evidence. ECF 40 at 10. Plaintiffs cite to several cases that purportedly show a guardian-ward fiduciary relationship has been found under allegedly analogous circumstances. ECF 45 at 10-11. The authority on which these cases depend, however, has been misinterpreted and in any event is fact-bound.

Plaintiffs' argument relies on language in *Parks v. Kownacki* that a guardian-ward fiduciary relationship may be formed if the alleged guardian "accept[s] the responsibility of plaintiff's care and education … even though he was not given that title by a court." 737 N.E.2d 287, 290 (Ill. 2000); *see* ECF 45 at 10 (quoting *Parks*). All of the other cases Plaintiffs cite on this point rely

---

[8] Plaintiffs do allege that HHCS employees made "mocking and psychologically damaging comments" to the children. ECF 45 at 9. But this cannot provide a basis for a deliberate indifference claim because Plaintiffs have failed to identify which "federally-protected right" this harmed.

almost exclusively on the *Parks* quote to support their findings. *See Clayton v. Millers First Ins. Co.*, 892 N.E.2d 613, 619 (Ill. Ct. App. 2008) ("[a]lthough the supreme court reversed the appellate court decision…it did state [quote]"); *T.S. v. Twentieth Century Fox Television*, No. 16-cv-8303, 2017 WL 1425596, *10 (N.D. Ill. Apr. 20, 2017) (citing *Parks* quote and *Clayton* to find "[b]ased on this Illinois case law" a fiduciary relationship similar to guardian-ward existed).

Plaintiffs' reliance on *Parks* is misplaced because the quoted language was neither holding nor dicta: it was merely an *allegation in the complaint* that the court accepted as true for purposes of ruling on the motion to dismiss. *Parks v. Kownacki*, 737 N.E.2d 287, 290 (Ill. 2000) ("The following facts are alleged in the complaint, and we accept them as true for purposes of our review of the rulings on defendants' motions to dismiss . . . [w]hen Kownacki accepted the responsibility of plaintiff's care and education, he took on the role of her guardian, even though he was not given that title by a court."). Because the court dismissed the claim as time-barred, it never reached the merits of this allegation. Without the support of *Parks*, and the concomitant weakening of the cases that rely on it, Plaintiffs' claim to a per se rule that a fiduciary duty arose "as a matter of law without a court order" is erroneous.

Moreover, the facts in *Parks* are entirely distinguishable. *Parks* involved a priest who was sexually abusing an underage girl and convinced her parents to let the girl move with him to a new parish, where the abuse continued. *Id.* at 290. The fact that the plaintiff's parents in *Parks* consented to the temporary living arrangement is significant, because a legal parent or guardian may transfer guardianship without prior judicial approval. *See, e.g.*, 755 ILL. COMP. STAT. § 5/11-5.4 ("[a] parent…may appoint…without court approval, a short-term guardian of an unmarried minor").

Finally, Plaintiffs' claim that the FAC "allege[s] that A.A. and D.A. were placed in Heartland's custody," ECF 45 at 11, is unclear, because the FAC admits that children at HHCS remain

10

in "ORR [i.e., the government's] custody." FAC ¶ 18. Plaintiffs' argument then, is to ask the Court to find that HHCS was a fiduciary, despite no court adjudication to that effect, or to impose a fiduciary duty as if HHCS was functionally the children's parents despite the fact that "Illinois does not recognize functional parent theories." *See* ECF 40 at 10; *In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 46; 28 N.E.3d 776, 790 (Ill. 2015).

Even if the Court were to find that a fiduciary relationship existed, Plaintiffs failed to identify fiduciary duties that HHCS allegedly breached. ECF 40 at 10-11. The FAC alleges only that HHCS failed to "act in the best interest of D.A. and A.A," (*id.* at 11), an allegation that sounds in the duty of loyalty. Plaintiffs concede, however, that they do not allege a breach of the duty of loyalty. ECF 45 at 11. Instead, they now attempt to shoehorn their allegations into a breach of the fiduciary duty of care (though the FAC makes no mention of such a duty). *Id.* And, according to Plaintiffs, the duty of care requires only that a caretaker "protect the child from harm" and "watch out for the well-being of the child." *Id.* The authority Plaintiffs rely on for this standard, however, is a criminal case that does not so much as mention fiduciary relationships or duties. *Id*. Rather, the court in *Watson* merely rejected (in a single paragraph, without citing to authority) one of the defendant's many arguments on appeal of his conviction for involuntary manslaughter: that he had no duties *generally* to the child he was watching as a caretaker. *People v. Watson*, 431 N.E.2d 1355 (Ill. Ct. App. 1982). Plaintiffs use this brief reference in a criminal case to argue both that the relationship between a caretaker and child was fiduciary in nature, and that the "duty to watch out for the well-being of the child" and to "protect the child from harm" were *fiduciary duties*. ECF 45 at 11. Plaintiffs' claim finds no support in the law Plaintiffs cite.

Plaintiffs also fail to rebut that the applicable standard of care to plead a breach of the fiduciary duty of care is gross negligence. *Id.* Plaintiffs argue that ordinary negligence is sufficient

11

under Illinois law, but this is not so. 805 ILL. COMP. STAT. § 215/408(c) (violation of the fiduciary duty of care requires gross negligence); *see also In re Estate of D.W.*, 134 Ill. App. 3d 788, 481 N.E.2d 355, 356-357 (1985) (Illinois courts give guardians broad discretion to act in the best interest of a ward, and should not intervene after a good-faith choice was made). So long as the fiduciary's motives in acting are not self-interested—i.e., covered by the duty of loyalty—courts are loath to substitute their hindsight-enhanced judgment for that of the fiduciary, and will therefore require more than regular negligence to find a breach of the fiduciary duty of care. *See Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1015-16 (Ill. Ct. App. 1993) (explaining why a business fiduciary who acts in good faith is shielded from negligence liability). This reasoning is as true for the officer making business decisions as it is for the guardian making care decisions. *See In re Estate of D.W.*, 481 N.E.2d at 356-57.

In any event, regardless of the applicable standard of care, Plaintiffs have not alleged anything substantive that shows the fiduciary duty of care was breached, or explains what the fiduciary duty of care entails. As shown above, the authority Plaintiffs cite for this purpose, *Watson*, is not a fiduciary case and does not articulate breach-able fiduciary duties. Without establishing duty or breach, any causation argument must also fail. ECF 40 at 11.

### III.     Plaintiffs' Negligence Claim Remains Inadequate

HHCS's Motion showed that Plaintiffs' negligence claim should be dismissed because the allegations against HHCS were an impermissible "statement of facts that merely create a suspicion of a legally cognizable right of action." ECF 40 at 12. In other words, the FAC failed to make clear "which of Heartland's acts or omissions Plaintiffs allege to have been negligent, and on what basis." *Id.* In an effort to remedy this pleading deficiency, Plaintiffs assert that HHCS's duty to act

with ordinary care encompasses the duty to avoid compounding the trauma the children experienced at the hands of the government. ECF 45 at 14. This argument is without merit.

As an initial matter, Plaintiffs' assertion that HHCS "takes no issue" with FAC ¶ 122 is misleading. ECF 45 at 14. The allegation in FAC ¶ 122 merely recites the general duty standard, and as HHCS noted, "labels and conclusions or formulaic recitations of the elements of a cause of action are insufficient." ECF 40 at 2-3. Plaintiffs have to take the next step and allege facts that show the existence of a duty and how that duty was breached through an articulated standard of care. They have failed to do so.

Plaintiffs further argue that it was reasonably foreseeable to HHCS that its conduct could compound the trauma the children suffered at the hand of the government. ECF 45 at 14. Plaintiffs are correct to point out that the existence of a duty requires the plaintiff's injury to have been a reasonably foreseeable consequence of defendant's conduct. *Id.* Where Plaintiffs err, however, is in their conclusion. Even if it were reasonably foreseeable to HHCS that children can experience trauma prior to their arrival, it does not follow that it was reasonably foreseeable to HHCS that the normal operation of its program would compound trauma for children in its care, particularly those who exhibited no signs of trauma while they were with HHCS. *Id.*

The only allegation in the FAC that suggests that the children exhibited signs of distress while in HHCS's care was that A.A. would cry at night asking for his mother. FAC ¶ 38. While the context in which the child was separated from his mother at the hands of the government is tragic, it can hardly be said that a young child missing his or her mother at night is a sign of trauma triggering a negligence-based duty to avoid compounding that trauma. ECF 45 at 14. Properly understood, Plaintiffs are asking the Court to impose an affirmative duty on HHCS to identify and rectify the trauma inflicted on the children by others, a duty Plaintiffs do not and cannot allege

HHCS undertook. *See Demos v. Ferris-Shell Oil Co.*, 317 Ill. App. 3d 41, 48, 740 N.E.2d 9, 16 (Ill. Ct. App. 2000) (affirmative duties are limited to what the defendant expressly undertook).

More fundamentally, the issue with Plaintiffs' negligence claim—an issue that is not addressed in the FAC and not referenced in the Response—is that it does not identify what standard of care applies to Plaintiffs' allegations. As noted above, Plaintiffs state that HHCS "failed to act with ordinary care" (FAC ¶ 122) and list several allegations that Plaintiffs imply make HHCS negligent, but they never take the crucial next step of saying *why* these actions fall below the standard of care or *what* HHCS should have done differently. Plaintiffs cite to the "regimented routine" and "inadequate medical care" as apparent signs of negligence, but do not articulate what would have been reasonable under the circumstances. ECF 45 at 14. Plaintiffs do not say whether these isolated acts are negligent and trauma-compounding in and of themselves, or only in combination. In either case, Plaintiffs have not alleged the bar upon which the factfinder can determine the reasonableness of HHCS's conduct. Therefore, Plaintiffs never articulate the "certain standard of conduct" pleading a negligence claim demands. ECF 40 at 12.

IV. **Plaintiffs' Fiduciary Duty and Negligence Claims Are Duplicative**

As HHCS demonstrated in its Motion, Plaintiffs' fiduciary duty and negligence claims are duplicative of one another. ECF 40 at 12. None of Plaintiffs' three arguments in response effectively rebut this contention. First, Plaintiffs make the unsubstantiated and unsupported argument that claims are not duplicative if they have different standards of care. ECF 45 at 13. Not so. Claims are duplicative when they are based on the same operative facts and allege the same injury. *Neade v. Portes*, 193 Ill. 2d 433, 439-450 (Ill. 2000);739 N.E.2d 496, 500-504 (Ill. 2000); *Pippen v. Pedersen*, 986 N.E.2d, 697, 705 (Ill. Ct. App. 2013) ("we look to the operative facts and injury to determine whether the causes of action are duplicative…").

Plaintiffs next argue that these causes of action are not factually duplicative. But that is belied by Plaintiffs' own memorandum. ECF 45 at 12-14. A reading of Plaintiffs' fiduciary duty and negligence arguments shows that Plaintiffs rely on identical operative facts. Indeed, Plaintiffs go so far as to cite to the memorandum's fiduciary breach section to show that the same alleged acts (e.g., isolation, adequacy of medical care, and an employee's remark) are grounds to also find that HHCS breached its negligence duties. *Id.* Injury is no different; the psychological harm alleged in the negligence and fiduciary sections are indistinguishable. *Id.* The claims are therefore duplicative and, contrary to Plaintiffs' position,[9] dismissal on the grounds of duplicative claims is regularly given at the pleading stage. *Neade v. Portes*, 193 Ill. 2d 433; *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 653 N.E.2d 915 (Ill. Ct. App. 1995).

While HHCS explained in its Motion that Plaintiffs' fiduciary duty claim should be dismissed as duplicative under the circumstances, ECF 40 at 12, Plaintiffs contend that if the claims are found to be duplicative, their fiduciary duty claim should survive and the negligence claim should be dismissed. ECF 45 at 13, n.2. The important point is that because the claims are based on the same operative facts and allege the same injury they are duplicative, warranting dismissal of one of the claims. And the remaining claim should be dismissed for the reasons set forth above.

V.  **CONCLUSION**

For the foregoing reasons, HHCS respectfully requests that the Court grant its motion to dismiss Counts III, V and XI of the FAC pursuant to Fed. R. Civ. P. 12(b)(6), and grant such other relief as the Court deems appropriate.

---

[9] The case Plaintiffs cite in support of this position is not germane, as it involved a claim brought under multiple sections of the Fair Housing Act, and the court declined to find the FHA claims duplicative based on the particular statutory structure. *See Willborn v. Sabbia*, No. 10-cv-5382, 2011 WL 1900455, at *6 (N.D. Ill. May 19, 2011).

Dated: December 4, 2020

Respectfully submitted,

*/s/ Kurt A. Mathas*
Kurt A. Mathas
ARDC No. 6286812
Saranya Raghavan
ARDC No. 6321346
Nasir Hussain
ARDC No. 6324090
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-8329
kmathas@winston.com
sraghavan@winston.com
nhussain@winston.com
*Counsel for Heartland Alliance and HHCS*

**CERTIFICATE OF SERVICE**

I, Kurt Mathas, an attorney, certify that on December 4, 2020, I caused the foregoing ***Reply Memorandum in Support of HHCS's Motion to Dismiss the First Amended Complaint*** to be served via this Court's CM/ECF system upon the ECF-registered parties at the email addresses below:

Jimmy Lorenzo Arce
Jimmy.Arce@usdoj.gov
Phil Davis MacWilliams
phil.macwilliams@usdoj.gov
AUSA – Chicago
USAILN.ECFAUSA@usdoj.gov
    *Attorneys for the United States of America*

Sarah Copeland Grady
sarah@loevy.com
Anand Swaminathan
anand@loevy.com
Stephen H. Weil
weil@loevy.com
Conchita Cruz
conchita.cruz@asylumadvocacy.org
Zachary Manfredi
info@asylumadvocacy.org
    *Attorneys for A.A., D.A., and Lucinda del Carmen Padilla Gonzalez*

    */s/ Kurt A. Mathas*
    Kurt A. Mathas
    ARDC No. 6286812
    WINSTON & STRAWN LLP
    35 W. Wacker Drive
    Chicago, Illinois 60601-9703
    (312) 558-8329
    kmathas@winston.com
    *Attorney for Heartland Alliance and HHCS*