UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| D.A., A.A., and LUCINDA DEL CARMEN PADILLA-GONZALES, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) No. 20 C 3082 |
| UNITED STATES OF AMERICA, HEARTLAND ALLIANCE FOR HUMAN NEEDS AND HUMAN RIGHTS, and HEARTLAND HUMAN CARE SERVICES, INC., | ) ) Judge Pacold ) ) ) ) |
| Defendants. | ) ) ) |

## AMENDED RENEWED MOTION TO DISMISS

Date: February 15, 2022

BRIAN M. BOYNTON
Acting Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.     OVERVIEW................................................................................................... 1

II.    FACTUAL AND LEGAL BACKGROUND............................................... 2

    A.  Statutory framework for noncitizens entering the United States. ....................... 2

    B.  Statutory framework for immigration custody relating to unaccompanied minors. ............ 3

    C.  Flores Agreement requirements. ........................................................................ 4

    D.  Executive Branch directives regarding immigration enforcement....................... 5

    E.  Prosecution and detention of Plaintiff Padilla-Gonzales..................................... 7

    F.  Plaintiffs' amended complaint............................................................................. 8

    G.  Subsequent policy changes................................................................................. 8

III.   LEGAL STANDARD. ................................................................................. 9

    A.  Dismissal for lack of subject-matter jurisdiction. .............................................. 9

    B.  Transfer of venue............................................................................................... 10

IV.   PLAINTIFFS' CLAIMS ARE BARRED. ..................................................... 10

    A.  Plaintiffs' claims are barred by the FTCA's discretionary function exception................. 11

    B.  Plaintiffs' claims relating to the decision to transfer D.A. and A.A. to the custody of ORR is barred by the FTCA's exception for actions taken while reasonably executing the law. 23

    C.  Plaintiffs' claims are barred because there is no private person analogue. ........................ 25

V.    THE COURT SHOULD TRANSFER THIS ACTION. .................................................. 26

VI.   CONCLUSION ............................................................................................. 28

CERTIFICATE OF SERVICE ........................................................................................ 29

i

# <u>TABLE OF AUTHORITIES</u>

**Statutes:**

6 U.S.C. § 279 ............................................................................................................. 2, 19

6 U.S.C. § 279 (C) ............................................................................................................. 2

8 U.S.C § 1325 ................................................................................................................... 1

8 U.S.C. § 1225 ................................................................................................................. 1

8 U.S.C. § 1225 (b) ........................................................................................................ 1, 2

8 U.S.C. § 1231 ............................................................................................................ 2, 17

8 U.S.C. § 1232 .................................................................................................... 2, 3, 20, 23

8 U.S.C. § 1325 ........................................................................................................ 1, 5, 6, 15

28 U.S.C. § 1346 ......................................................................................................... 10, 24

28 U.S.C. § 1402 ........................................................................................................... 9, 26

28 U.S.C. § 1404 ........................................................................................................... 9, 26

28 U.S.C. § 2674 ............................................................................................................... 24

28 U.S.C. § 2680 ................................................................ 10, 11, 12, 13, 15, 21, 23

28 U.S.C. § 1346 ............................................................................................................. 1, 6

**Rules and Regulations:**

8 C.F.R. § 1236.3 ........................................................................................................ 20, 21

82 Fed. Reg. 8793 ............................................................................................................... 4

86 Fed. Reg. 8273, 8273 ................................................................................................... 1, 7

Fed. R. Civ. P. 12 ..................................................................................................... 1, 8, 10

**Cases:**

*A.P.F. v. United States*,
    492 F. Supp. 3d 989 (D. Ariz. 2020) ......................................................................... 24

*Accardi v. United States*,
    435 F.2d 1239 (3d Cir. 1970) ..................................................................................... 23

*Air Shuttle Corp. v. United States*,
    112 F.3d 532 (1st Cir. 1997) ...................................................................................... 25

*Amoco Oil Co. v. Mobil Oil Corp.*,
    90 F. Supp. 2d 958 (N.D. Ill. 2000) ................................................................... 9, 26, 27

*Antonelli v. Crow*,
    No. 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) ................................... 21-22

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*,
    571 U.S. 49 (2013) ........................................................................................................ 9

*Baie v. Secretary of Def.*,
    984 F.2d 1375 (9th Cir. 1986) ................................................................ 19

*Bailor v. Salvation Army*,
    51 F.3d 678 (7th Cir. 1995) ............................................................. 10, 18

*Barnes v. Rollins Dedicated Carriage Serv.*,
    976 F. Supp. 767 (N.D. Ill. 1997) ........................................................... 9

*Barton v. Barr*,
    140 S. Ct. 1442 (2020) ........................................................................... 1

*Berkovitz v. United States*,
    486 U.S. 531 (1988) ....................................................................... 11, 17

*Bhuiyan v. United States*,
    772 F. App'x 564 (9th Cir. 2019) ..................................................... 25-26

*Blanco Ayala v. United States*,
    982 F.3d 209 (4th Cir. 2020) ................................................................ 16

*Borquez v. United States*,
    773 F.2d 1050 (9th Cir. 1985) .............................................................. 23

*Bryan v. United States*,
    913 F.3d 356 (3d Cir. 2019) ................................................................. 14

*Bultema v. United States*,
    359 F.3d 379 (6th Cir. 2004) ................................................................ 21

*Bunikyte v. Chertoff*,
    No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ........................ 4, 18

*Butz v. Economou*,
    438 U.S. 478 (1978) .................................................................... 13-14, 14

*C.M. v. United States*
    No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ..... 24

*Calderon v. United States*,
    123 F.3d 947 (7th Cir.1997) ..................................................... 10, 11, 14

*Campos v. United States*,
    888 F.3d 724 (5th Cir. 2018) ................................................................ 21

*Cassens v. St. Louis River Cruise Lines, Inc.*,
    44 F.3d 508 (7th Cir. 1995) ........................................................... 11, 15

*Chen v. United States*,
    854 F.2d 622 (2d Cir. 1988) ................................................................. 24

*Clark v. Suarez Martinez*,
    543 U.S. 371 (2005) ............................................................................. 17

*Cohen v. United States*,
    151 F.3d 1338 (11th Cir. 1998) ........................................................................ 18

*Comm. Of Cent. Am. Refugees v. I.N.S.*,
    795 F.2d 1434 (9th Cir. 1986) ........................................................................ 17

*Cosby v. Marshals Service*,
    520 F. App'x 819 (11th Cir. 2013) ................................................................... 21

*Couch v. United States*,
    694 F.3d 852 (7th Cir. 2012) ........................................................................... 10

*D.B. v. Poston*,
    119 F. Supp. 3d 472 (E.D. Va. 2015) ............................................................ 19

*Dalehite v. United States*,
    346 U.S. 15 (1953) ......................................................................................... 23

*Dupree v. United States*,
    247 F.2d 819 (3d Cir. 1957) ............................................................................ 23

*Elgamal v. Bernacke*,
    714 F. App'x 741 (9th Cir. 2018) ................................................................... 25

*Elgamal v. United States*,
    No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) ......................... 25

*Espino v. Top Draw Freight Sys. Inc.*,
    713 F. Supp. 1243 (N.D. Ill. 1989) ................................................................. 27

*Ezekiel v. Michel*,
    66 F.3d 894 (7th Cir.1995) ............................................................................... 8

*F.D.I.C. v. Meyer*,
    510 U.S. 471 (1994) ............................................................................. 8, 10, 13

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*,
    592 F.2d 364 (7th Cir. 1979) ........................................................................... 23

*Fisher Bros. Sales, Inc. v. United States*,
    46 F.3d 279 (3d Cir. 1995) .............................................................................. 19

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) ............................................................. 3, 4, 18, 20

*Flores v. Rosen*,
    984 F.3d 720 (9th Cir. 2020) ............................................................................. 3

*Franklin Sav. Corp. v. United States*,
    180 F.3d 1124 (10th Cir. 1999) ...................................................................... 12

*Gandarillas-Zambrana v. BIA*,
    44 F.3d 1251 (4th Cir. 1995) ........................................................................... 17

iv

*Gaubert v. United States*,
    499 U.S. 315 (1991) ............................................................................... 11, 12

*General Dynamics Corp. v. United States*,
    139 F.3d 1280 (9th Cir. 1998) ................................................................... 16

*H&V Silver Mine, Inc. v. Cohen*,
    No. 96 C 3550, 1997 WL 639229 (N.D. Ill. Oct. 6, 1997) ....................... 27

*Halverson v. United States*,
    972 F.2d 654 (5th Cir. 1992) ..................................................................... 21

*Harrison v. Fed. Bureau of Prisons*,
    464 F. Supp. 2d 552 (E.D. Va. 2006) ........................................................ 22

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987) ..................................................................... 16

*Int'l Union of Operating Eng'rs Local 150, AFL–CIO v. Ward*,
    563 F.3d 276–82 (7th Cir. 2009) ................................................................. 8

*J.F.G. v. Hott*,
    921 F.3d 204 (4th Cir. 2019) ..................................................................... 13

*Kiiskila v. United States*,
    466 F.2d 626 (7th Cir. 1972) ..................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ..................................................................................... 8

*Lehman v. Nakshian*,
    453 U.S. 156 (1981) ................................................................................... 10

*Linder v. United States*,
    937 F.3d 1087 (7th Cir. 2019) ................................................................... 13

*Lineberry v. United States*,
    No. 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) .............. 22

*Lipsey v. United States*,
    879 F.3d 249 (7th Cir. 2018) ..................................................................... 18

*Liranzo v. United States*,
    690 F.3d 78 (2d Cir. 2012) ........................................................................ 25

*Maas v. United States*,
    94 F.3d 291 (7th Cir. 1996) ....................................................................... 11

*Mazur v. United States*,
    957 F. Supp. 1041 (N.D. Ill. 1997) ........................................................... 26

*Medina v. United States*,
    259 F.3d 220 (4th Cir. 2001) ..................................................................... 19

v

*Menolascina v. United States*,
  No. 12-cv-90, 2013 WL 707920 (N.D. Ill. Feb. 26, 2013) ................................................ 21

*Miller Harness Co. v. United States*,
  241 F.2d 781 (2d Cir. 1957) ................................................................................................ 21

*Mirmehdi v. United States*,
  662 F.3d 1073 (9th Cir. 2011) ............................................................................................. 18

*Ms. L. v. ICE*,
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ................................................................................ 7

*Parrott v. United States*,
  536 F.3d 629 (7th Cir. 2008) ........................................................................................ 10, 21

*Patel v. United States*,
  398 F. App'x 22 (5th Cir. 2010) .......................................................................................... 21

*Peña Arita v. United States*,
  470 F. Supp. 3d 663 (W.D. Tex. 2020) .................................................................. 16-17, 18, 22

*Powell v. United States*,
  233 F.2d 851 (10th Cir. 1956) ............................................................................................. 23

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ............................................................................................................. 17

*Reynolds v. United States*,
  549 F.3d 1108 (7th Cir. 2008) ....................................................................................... 12, 17

*Ryan v. U.S. Immigration & Customs Enf't*,
  974 F.3d 9 (1st Cir. 2020) ............................................................................................. 25, 26

*Santana-Rosa v. United States*,
  335 F.3d 39 (1st Cir. 2003) .......................................................................................... 18, 21

*Sasso v. Milhollan*,
  735 F. Supp. 1045 (S.D. Fla. 1990) ............................................................................... 17-18

*Sickman v. United States*,
  184 F.2d 616 (7th Cir. 1950) ............................................................................................... 23

*Smith v. United States*,
  375 F.2d 243 (5th Cir. 1967) ............................................................................................... 16

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................................................ 8

*Sw. Env't Ctr. v. Sessions*,
  355 F. Supp. 3d 1121 (D.N.M. 2018) .................................................................................. 17

*Sydnes v. United States*,
  523 F.3d 1179 (10th Cir. 2008) ........................................................................................... 12

*Mejia-Mejia v. ICE,*
   No 18-1445 (PLF), 2019 WL 4707150 (D.D.C. Sept. 26, 2019) ...................... 16

*United States v. Armstrong,*
   517 U.S. 456 (1996) ................................................................................. 16

*United States v. Dominguez-Portillo,*
   No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ............................. 3-4, 14, 18

*United States v. Olson,*
   546 U.S. 43 (2005) ................................................................................. 25

*United States v. Varig Airlines,*
   467 U.S. 797 (1984) ................................................................................. 12

*United States, v. Padilla-Gonzalez,*
   No. 3:18-mj-03687 ................................................................................. 6

*Van Dinh v. Reno,*
   197 F.3d 427 (10th Cir. 1999) ................................................................... 18

*Vinzant v. United States,*
   458 F. App'x 329 (5th Cir. 2012) ............................................................... 21

*Washington v. Reno,*
   35 F.3d 1093 (6th Cir. 1994) ..................................................................... 22

*Westbay Steel, Inc. v. United States,*
   970 F.2d 648 (9th Cir. 1992) ..................................................................... 25

In response to Plaintiffs' First Amended Complaint, Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Alternatively, the United States moves for the transfer of venue. For several reasons discussed below, Congress has not waived sovereign immunity for the types of claims Plaintiffs assert in this action and, even if these claims could proceed, these matters should be decided by the Western District of Texas, which has a greater connection to the claims at issue.

## I.    OVERVIEW.

In May 2018, Plaintiff Lucinda del Carmen Padilla-Gonzales unlawfully entered the United States with her minor children, D.A. and A.A. Plaintiff Padilla-Gonzales was detained, separated from D.A. and A.A., and prosecuted for and found guilty of unlawful entry. She was then held in secure immigration detention until August 21, 2018, when she was released on bond. In the meantime, on June 29, 2018, D.A. and A.A. were released to their father, who was already living in the United States.

Plaintiff Padilla-Gonzales brings this action against the United States on her own behalf and on behalf of two of her children, D.A. and A.A., under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking monetary damages for alleged injuries caused by (1) Defendant's implementation of a policy to refer for prosecution all individuals suspected of illegally entering the United States at the United States-Mexico border, including parents traveling with children (referred to herein as the "Zero-Tolerance Policy"), and (2) the conditions of confinement and treatment of Plaintiffs after they were separated.

The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and has "condemn[ed] the human tragedy" that occurred because of the Zero-Tolerance Policy. *Establishment of Interagency Task Force on the*

1

*Reunification of Families*, Exec. Order 14011, § 1, 86 Fed. Reg. 8273, 8273 (Feb. 5, 2021). The Biden Administration has committed the federal government to "ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law."

The Court should not, however, reach the merits of Plaintiffs' FTCA claims. Plaintiffs' alleged injuries are not compensable under the FTCA because Congress has not waived the federal government's sovereign immunity from claims for money damages in these circumstances. And, if this Court disagrees, it should transfer this matter to the Western District of Texas, for the reasons described below.

## II. FACTUAL AND LEGAL BACKGROUND.

### A. Statutory framework for noncitizens entering the United States.[1]

Noncitizens who arrive in the United States, including those who arrive between ports of entry, are considered "applicant[s] for admission" and are "inspected by immigration officers" to determine their admissibility to the United States. 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). When a noncitizen enters the United States between official ports of entry, he or she may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C § 1325(a). Violation of section 1325(a) is a misdemeanor punishable by a fine and "imprison[ment] not more than 6 months" for a first infraction. *Id*.

Individuals arriving in or present in the United States who are deemed inadmissible also are subject to removal from the United States and, as appropriate, detention pending such removal.

---

[1] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

*See id*. §§ 1225(b); 1226; 1357. These provisions apply to both adults and children. The federal government possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *Id*. § 1231(g)(1). In some cases, the Department of Homeland Security ("DHS") may exercise its discretion to release a noncitizen from custody pending a decision on removal. *See, e.g.*, 8 U.S.C. §§ 1182(d)(5), 1226(a)(2).

### B.  Statutory framework for immigration custody relating to unaccompanied minors.

Federal immigration law authorizes the United States to provide for the custody and care of minor children who are present in the United States without lawful immigration status. Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom … there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency … shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). However, ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(2)(B). Rather, once in ORR custody, there are detailed statutory and regulatory provisions

3

that must be followed before the child is released to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3). Congress requires that "an unaccompanied alien child may not be placed with a person … unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that "[s]uch determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a home study is required. *Id*. § 1232(c)(3)(B).

      **C.**     **Flores Agreement requirements.**

     In 1996, the federal government entered into a settlement agreement referred to as the "Flores Agreement." *See, e.g., Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9). According to the Ninth Circuit, the Flores Agreement "unambiguously" applies both to unaccompanied minors and to minors who are encountered together with their parents or legal guardians. *Id.* at 901. Under the Flores Agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id*. at 902-03 (quoting Flores Agreement ¶ 12). The government must also "make and record the prompt and continuous efforts on its part toward … release of the minor." *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agreement ¶ 14).

     Notably, the Flores Agreement applies only to minors. *Flores*, 828 F.3d at 901. It "does not address … the housing of family units and the scope of parental rights for adults apprehended

with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores*, 828 F.3d at 906; *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"), *aff'd United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007). Though the Flores Agreement gives preference to release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

**D. Executive Branch directives regarding immigration enforcement.**

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws. First, Executive Order 13767 was issued in January 2017. *See* § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017) ("EO 13767"). EO 13767 stated that "[i]t is the policy of the executive branch to … detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" *Id*. § 2(b). Executive Order 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law" (*id*. § 6) and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute … and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole" (*id*. § 11(d)).

5

Second, on April 11, 2017, the Department of Justice ("DOJ") issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325. *See* U.S. DOJ Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

Third, on April 6, 2018, the DOJ issued a "Memorandum for Federal Prosecutors along the Southwest Border" on "Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a). U.S. DOJ Memorandum on Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a). (April 6, 2018), available at https://www.justice.gov/opa/press-release/file/1049751/download (the "Zero-Tolerance Memorandum"). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS, to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id*. In addition, on May 4, 2018, the DHS Secretary directed officers and agents to ensure that all adults deemed prosecutable for improper entry in violation of 8 U.S.C. § 1325(a) are referred to the DOJ for criminal prosecution. This initiative applied to all amenable adults, including parents or legal guardians traveling with minor children. Consistent with EO 13767 and the April 2018 Zero-Tolerance Memorandum, DHS began to refer for prosecution increased numbers of adults – including those traveling with children – who unlawfully entered the United States on the Southwest border in violation of Section 1325. *See generally* Executive Order 13767. Minor children designated as UACs were transferred to ORR custody, as required by the TVPRA.

6

### E.     Prosecution and detention of Plaintiff Padilla-Gonzales

According to the First Amended Complaint, on May 23, 2018, Plaintiff Padilla-Gonzales illegally crossed the United States-Mexico border into Texas with her minor children, D.A. and A.A., in violation of 8 U.S.C. § 1325.  Am. Compl. ¶¶ 2, 19-20.  Shortly after crossing, they were apprehended by U.S. Border Patrol agents and transported to nearby Border Patrol stations in Texas.  Am. Compl. ¶¶ 20, 22.[2]  Consistent with the Executive Branch enforcement directives discussed above, Plaintiff Padilla-Gonzales was charged with violating 8 U.S.C. § 1325(a)(1).  Plaintiff Padilla-Gonzales was separated from D.A. and A.A. and transported from the Border Patrol holding facility to criminal custody for her criminal proceedings.  Am. Compl. ¶¶ 23.

Because Plaintiff Padilla-Gonzales would no longer be available to provide care and physical custody of her children, D.A. and A.A. were designated unaccompanied minor children and transferred to the custody of ORR pursuant to the TVPRA.  Am. Compl. ¶ 27, 71.  D.A. and A.A. were placed with Heartland Human Care Services, Inc. ("Heartland") in Chicago, Illinois.  Am. Compl. ¶¶ 29, 31-33.

On May 29, 2018, Plaintiff Padilla-Gonzales was found guilty of illegal entry under 8 U.S.C. § 1325 and was sentenced to one year of probation.  Am. Compl. ¶ 53; *see also United States v. Padilla-Gonzalez*, Case 3:18-mj-03687-LS (ECF 2, May 29, 2018).   Following the criminal proceedings and custody, she was transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE"), where she remained in secure adult immigration detention until August 21, 2018, when she was released on bond.  Am. Compl. ¶¶ 54, 60.

On June 29, 2018, after ORR completed its assessment regarding his suitability as a sponsor, D.A. and A.A. were released to their father, who had crossed the United States-Mexico

---

[2] The U.S. Border Patrol is part of the U.S. Customs and Border Protection ("CBP").

border before Plaintiffs Padilla-Gonzales, D.A., and A.A., and was in the United States.  Am. Compl. ¶¶ 2, 46, 51.

F.      **Plaintiffs' amended complaint.**

Plaintiffs bring this action against the United States seeking money damages under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, alleging that "Defendants needlessly separated the fourteen-year-old and the five-year-old from their parents for approximately five weeks."  Am. Compl. ¶ 51.  Plaintiffs allege that they were subjected to the same "family separation practices" ruled "unconstitutional" on due process grounds in *Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018).  Am. Compl. ¶¶ 78, 86-94.  In addition, Plaintiffs allege that the separation practices were unconstitutional because they were "motivated by discriminatory animus toward Latino immigrants of Central American origin."  Am. Compl. ¶ 90.  Plaintiff Padilla-Gonzales also alleges that she suffered injuries arising out of certain treatment and conditions relating to her confinement.  Am. Compl. ¶¶ 8, 21, 24, 40, 52, 55, 58, 59, 75, 80, 83, 84, 85, 88.

G.      **Subsequent policy changes.**

On February 2, 2021, President Biden issued an Executive Order that condemned the "human tragedy" of the prior Administration's Zero-Tolerance Policy, and committed the United States government to "ensure that children entering the United States are not separated from their families, except in the most extreme circumstances where a separation is clearly necessary for the safety and well-being of the child or is required by law."  Family Reunification Task Force EO 14011, § 1, 86 Fed. Reg. 8273, 8273.  That Order created a Task Force to identify and reunify families separated under the Zero-Tolerance Policy, and to make recommendations for the potential provision of immigration benefits and mental-health services to those separated families.  *Id.* § 4; *see also* Interim Progress Report, Interagency Task Force on the Reunification

8

of Families, November 29, 2021.[3]

## III.  LEGAL STANDARD.

### A.  Dismissal for lack of subject-matter jurisdiction.

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Courts must consider the threshold issue of jurisdiction before addressing the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Motions to dismiss pursuant to Rule 12(b)(1) are premised on either facial attacks or factual attacks to jurisdiction.  When reviewing a motion raising a facial attack to jurisdiction, the Court "must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor."  *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995) (citation omitted).  However, when presented with a factual attack to jurisdiction, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Id*. (quoting *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993)).

A district court cannot hear a suit against the United States unless the government has waived sovereign immunity.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Therefore, the objection presented by a Rule 12(b)(1) motion challenging the Court's subject matter jurisdiction

---

[3] Available at https://www.dhs.gov/sites/default/files/publications/21_1129_s1_interim-progress-report-family-reunification-task-force.pdf

9

is that the Court has no authority or competency to hear and decide the case before it. *See Int'l*

*Union of Operating Eng'rs Local 150, AFL–CIO v. Ward*, 563 F.3d 276, 280–82 (7th Cir. 2009).

## B.    Transfer of venue.

Venue for an FTCA claim is governed by 28 U.S.C. § 1402(b), which permits such a claim

to be prosecuted "in the judicial district where the claimant resides or where the act or omission

occurred." 28 U.S.C. § 1402(b).  However, section 1404(a) of Title 28 of the United State Code

provides for transfer to another district court:

> For the convenience of parties and witnesses, in the interest of justice, a district
> court may transfer any civil action to any other district or division where it might
> have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  *See also Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western*

*District of Texas*, 571 U.S. 49, 62-63 (2013).

When determining the convenience of the parties and witnesses, the court considers: (1) the

plaintiff's choice of forum, (2) the site of material events, (3) the convenience to the parties of

litigating in the respective forum, and (4) the availability of evidence in each forum. *See Barnes*

*v. Rollins Dedicated Carriage Serv.*, 976 F. Supp. 767, 768 (N.D. Ill.1997); *Amoco Oil Co. v.*

*Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000).  "While a plaintiff's choice of forum is

an important consideration in determining whether a motion to transfer should be granted, it,

however, is not absolute." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill.

2000).

## IV.    PLAINTIFFS' CLAIMS ARE BARRED.

For the reasons set forth below, Plaintiffs' claims should be dismissed for lack of

jurisdiction.  The government does not defend the merits of the policy choices at issue in this case,

which have now been repudiated.  But this case does not concern the wisdom of those now-revoked

policies. Instead, it is a personal injury suit for damages under the FTCA. Plaintiffs cannot prevail on their FTCA claims because this Court lacks subject-matter jurisdiction under established legal principles.

### A. Plaintiffs' claims are barred by the FTCA's discretionary function exception.

#### 1. Legal standard for discretionary function exception.

The United States, as a sovereign entity, is immune from suit except insofar as it has specifically and expressly consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman*, 453 U.S. at 160 (internal quotes and citations omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

The FTCA is "a limited waiver of the United States' sovereign immunity." *Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012). The statute allows individuals to sue the United States when a federal employee's conduct, within the scope of his or her employment, causes "injury, loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity is subject to exceptions. *See* 28 U.S.C. § 2680.

When an exception applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Calderon v. United States*, 123 F.3d 947, 948 (7th Cir.1997) (affirming dismissal of action pursuant to Rule 12(b)(1)); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (same).[4] One such exception – the "discretionary function

---

[4] *But cf. Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008) (28 U.S.C. § 2680 exceptions are affirmative defenses). Where, as here, a motion brings a facial attack on the complaint that accepts all allegations as true, the standard of review is the same.

exception" ("DFE") – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Gaubert v. United States*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies. *Gaubert*, 499 U.S. at 328-32. Courts must first ask whether the challenged conduct was in fact "discretionary in nature" – that is, whether the conduct involved "'an element of judgment or choice.'" *Id.* at 322 (quoting *Berkovitz*, 486 U.S. at 536). The first prong is met unless "a federal statute, regulation or policy *specifically prescribes* a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322 (emphasis added); *see also Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996) (the statute, regulation, or policy does not call for the exercise of judgment only if it provides a "precise and optionless directive."). Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *See Cassens v. St. Louis River Cruise Lines, Inc.,* 44 F.3d 508, 513 (7th Cir. 1995) ("In this inquiry, the existence of regulatory requirements, however detailed, is of no import if the means of determining compliance . . . involves the type of judgment protected by the discretionary function exception."); *Calderon*, 123 F.3d at 950 (whether a particular response under the regulatory scheme was mandatory turned on discretionary judgments as to whether certain conditions were met).

Second, if the conduct involves choice or discretion, courts must next determine whether the judgment of the government employee was "of the kind that the discretionary function exception was designed to shield.'" *Gaubert*, 499 U.S. at 322-23. Recognizing that tort actions

challenging the Government's discretionary policy judgments could "seriously handicap efficient government operations," Congress designed the DFE to "'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy' through a tort action." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984); *see also Reynolds v. United States,* 549 F.3d 1108, 1112 (7th Cir. 2008) ("All that matters is the nature of the actions taken and ... whether they are susceptible to policy analysis."); *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008 ("[W]e operate at a higher level of generality. . . asking categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns.").

The government need not prove that it considered these factors and made a conscious decision on the basis of them. Indeed, under the second prong, the government actors' subjective motive is immaterial: "The focus of the inquiry is *not* on the agent's subjective intent in exercising the discretion conferred by statute or regulation." *Gaubert*, 499 U.S. at 325 (emphasis added); *Reynolds*, 549 F.3d at 1112 ("The government actor's intent is of no consequence to our analysis, [n]or must the actor belong to the policymaking or planning ranks of government in order for the exception to apply.") (citations and quotation marks omitted).[5] Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Gaubert*, 499 U.S. at 324. And the statutory text confirms that the exception applies "whether or not the discretion involved [was] abused" by United States officials. 28 U.S.C. § 2680(a); *see also Reynolds*, 549 F.3d at 1112 (the DFE applies where there

---

[5] *Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) ("FTCA claims are not vehicles to second-guess policymaking. That principle requires a federal court to dismiss an FTCA claim if jurisdiction is so dependent on allegations about government officials' intent or decisionmaking process that resolving the claim would require judicial inquiry into those subjective matters.").

are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis").

Plaintiffs' assertion that certain alleged conduct violated the Constitution does not alter the discretionary function analysis. Congress did not create the FTCA to address constitutional violations but rather to address violations of state tort law committed by federal employees. *See Meyer*, 510 U.S. at 477 (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim"). Consistent with the FTCA provisions barring claims for constitutional torts, the FTCA's discretionary function exception precludes government liability for discretionary decision-making even where the government acted unconstitutionally. *See, e.g., Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) (discretionary function exception applies even if alleged conduct is unconstitutional); *Kiiskila v. United States*, 466 F.2d 626, 627-28 (7th Cir. 1972) (military base commander's decision to prohibit civilian employee entering base protected by discretionary function exception, even though it was "constitutionally repugnant" and violated First Amendment).

As the Seventh Circuit explained in *Linder*, the discretionary function exception bars claims based on discretionary decision-making regardless of whether the government "abused" its discretion by acting unconstitutionally or issued a directive that was "invalid." 937 F.3d at 1090. According to the *Linder* court, "Section 2680(a) tells us that there is no liability even if a regulation or directive is invalid, and even if the discretion conferred under it has been abused." *Id.* The Seventh Circuit continued, "[t]he upshot of § 2680(a) is that, when some legal doctrine creates discretion, the fact that the discretion was misused and a tort ensued does not lead to liability for the Treasury." *Id.* at 1091. Indeed, the Supreme Court recognized as much in *Butz v. Economou*, 438 U.S. 478 (1978), observing that "no compensation would be available from the Government"

14

in suits alleging that officials' discretionary conduct violated the Constitution, because the FTCA "prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id.* at 505; *see also Shivers v. United States*, 1 F.4th 924, 930 (11th Cir. 2021) ("[T]he statutory text of the discretionary function exception is unambiguous and categorical . . . Congress left no room for the extra-textual 'constitutional-claims exclusion' for which Shivers advocates.") (citations omitted). And at a minimum, the discretionary function exception is not made inapplicable by every allegation of unlawful or unconstitutional conduct, but only by a showing that the government official's discretion was cabined by a specific, clearly established constitutional directive, accompanied by plausible assertions that the specific directive was violated. *See, e.g.*, *Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the discretionary function exception). [6]

If both prongs of the *Gaubert/Berkowitz* test are met, the DFE applies, the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *See Calderon*, 123 F.3d at 948. This result applies even where the government may have been negligent in the performance of such discretionary acts, as negligence is irrelevant to the discretionary function inquiry. *See* 28 U.S.C. § 2680(a) (discretionary function exception applies "whether or not the discretion involved be abused"); *Cassens,* 44 F.3d 515 ("If the discretionary function exception could be pierced by showing negligent acts in implementing the discretionary

---

[6] Whatever the precise standard, it is not satisfied here. Regardless of whether the alleged actions reflected an abuse of discretion, Plaintiffs have identified nothing in the decisions of the Supreme Court or the Seventh Circuit that removed any official's discretion with respect to any of the alleged actions by "specifically prescrib[ing] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322. Indeed, as the Fourth Circuit observed, "we . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019).

function, the exception would be no shield at all."); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (the statute's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion.").

### 2. The decisions to prosecute Plaintiff Padilla-Gonzales under the Zero-Tolerance Policy and then detain her in secure detention facilities pending immigration proceedings are discretionary in nature.

Plaintiffs' claims based on the decisions to prosecute Plaintiff Padilla-Gonzales (which necessarily involved transfer to criminal custody) and to detain her pending immigration proceedings, resulting in the separation of Plaintiff Padilla-Gonzales and D.A. and A.A., are barred by the discretionary function exception because these decisions involved an element of judgment or choice, and were susceptible to policy analysis. Plaintiffs do not contest that Border Patrol agents lawfully apprehended them after they crossed the border illegally. Nor do Plaintiffs contest that the government had discretion to refer Plaintiff Padilla-Gonzales for prosecution for illegal entry under 8 U.S.C. § 1325 or to prosecute her. Moreover, Plaintiffs do not challenge that the government had discretion to hold her in secure detention pending immigration proceedings. And Plaintiffs do not dispute that the government had discretion to conclude that, in these circumstances, D.A. and A.A. were unaccompanied within the meaning of the TVPRA.

These decisions, which resulted in the separation of Plaintiff Padilla-Gonzales from D.A. and A.A. pursuant to the TVPRA, are quintessentially discretionary. The discretionary function exception plainly applies to decisions relating to the apprehension of noncitizens for unlawful entry and referral for criminal prosecution. Indeed, "[d]iscretion lies at the heart of the DHS law enforcement function." *Blanco Ayala v. United* States, 982 F.3d 209, 215 (4th Cir. 2020). In exercising this function, DHS agents must "make all the classic judgment calls the discretionary function was meant to exempt from tort liability." *Id.* Moreover, immigration policy involves "vital national interests in law enforcement at the borders," and "DHS officers' decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations." *Id.* at 217. Thus, the decision to apprehend and refer for criminal

16

prosecution are discretionary decisions that cannot be challenged.

Regarding prosecutions, as the Supreme Court has recognized, "[t]he Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Indeed, "[t]he Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matter of "discretion"); *General Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998). ("The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability" under the FTCA.).

As other courts have recognized, the particular prosecution policy that was in place when Plaintiff Padilla-Gonzales was prosecuted—the Zero-Tolerance Policy, which was subsequently revoked—"amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, No 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita v. United States*, 470 F. Supp. 3d 663, 686-87 (W.D. Tex. 2020); *Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1126 (D.N.M. 2018) ("Whether a person is prosecuted for [8 U.S.C. § 1325(a)] after a referral by DHS is a decision made by DOJ, and is subject to DOJ's prosecutorial discretion.") (citation omitted). The discretionary function exception bars the Court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz*, 486 U.S. at 536. In determining the applicability of the discretionary function exception, the court looks only at whether the conduct or decision at issue is "'susceptible' to policy analysis" from an objective perspective – subjective intent is not part of the inquiry. *Reynolds*, 549 F.3d at 1112. Here, however, the government's decisions were not merely "susceptible to" policy analysis, but the government spelled out the policies it sought to further through its enforcement efforts in a series of Executive Branch directives. Concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-*

*Discrimination Comm.*, 525 U.S. 471, 490 (1999).

Following completion of her criminal proceedings, Plaintiff Padilla-Gonzales was transferred to ICE custody pending immigration proceedings. Am. Compl. ¶ 54. The government's decisions concerning where to detain Plaintiff Padilla-Gonzales for immigration proceedings were also discretionary and susceptible to policy analysis. The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[7] "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added); *see also Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings … and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

"Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, it falls within this [FTCA] exception." *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011); *see also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions where to place prisoners are policy-based decisions protected by DFE); *Bailor,* 51 F.3d at 685 (decisions whether to detain or release are policy-based decisions protected by DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units … must be viewed as falling within the discretionary function exception to the

---

[7] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security. *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

FTCA").

This discretion necessarily entails decisions regarding with whom noncitizens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together. *See Peña Arita*, 470 F. Supp. 3d at 691-92 (decisions by DHS to separate family members are protected by the discretionary function exception). Although the Flores Agreement contains some requirements concerning the detention of minors, it does not specifically prescribe a course of action and thus does not remove the government's discretion. Moreover, the Flores Agreement does not require release of a parent or mandate that parents be housed with a child, and indeed does not apply to parents. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte*, No. 07-164, 2007 WL 1074070, at *16; *see supra* at 4-5. In this case, Plaintiffs can cite to no statutes, regulations, or policies that prescribe a specific course of action that the government was required to take in connection with the prosecution and immigration detention of Plaintiff Padilla-Gonzales. Instead, the challenged decisions were the result of the exercise of discretion. Accordingly, the exercise of the statutory authority regarding whether and where to detain Plaintiff Padilla-Gonzales for immigration proceedings following her criminal proceedings is protected by the discretionary function exception.[8]

For similar reasons, the decision to determine that D.A. and A.A. were "unaccompanied" within the meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Secretary of Def.*, 984 F.2d 1375, 1377 (9th Cir. 1986) ("[I]nterpretation of the statute is a plainly discretionary administrative act the 'nature and quality' of which Congress

_____

[8] Plaintiffs' suggestion that a CBP policy referencing family unity constrained its discretion (Am. Compl. ¶ 76) is refuted by the policy itself, which addresses family unity only during the limited time that noncitizens are in CBP custody and even then affords discretion to agents based on operational considerations.

intended to shield from liability under the FTCA."); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (determining whether conduct constituted "crime of moral turpitude" under applicable statute was "a quintessential exercise of [agency's] broad discretion"). Here, Plaintiff Padilla-Gonzales was referred for prosecution, transferred to criminal custody and prosecuted, and then held in secure immigration detention following her criminal proceedings. The discretionary function exception protects the government's determination that D.A. and A.A. should have been deemed unaccompanied in those circumstances and thus transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision was protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data.").

In the end, Plaintiffs do not allege injury from any government action or decision that was not subject to discretion and susceptible to policy analysis. To the extent that Plaintiffs suggest that the government was required to release them into the interior, did not have the discretion to prosecute Plaintiff Padilla-Gonzales for criminal violations of immigration law, or did not have discretionary authority to determine that D.A. and A.A. were unaccompanied, the adoption of the Zero-Tolerance Policy and related Executive Branch directives regarding immigration enforcement—which have since been rescinded—are quintessential discretionary policy judgments subject to the discretionary function exception.

Plaintiffs also allege that defendants "unnecessarily delay[ed]" the release of the children to their father until five weeks after their apprehension (Am. Compl. ¶¶ 48-50). However, the timing of D.A. and A.A.'s release from ORR custody was occasioned by discretionary decisions regarding the health and safety of children in the government's custody. As outlined above, *supra* at 4, ORR seeks to verify the "custodian's identity and relationship to the child" and ensure "that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). Plaintiffs have not alleged any specific deadline imposed by statute or

regulation on ORR for release of children to custodians.[9] Such discretionary decisions are the precise sort of decisions that are protected by the FTCA's discretionary function exception.

### 3. Plaintiffs' remaining claims concerning their conditions of confinement are also barred by the discretionary function exception.

Plaintiffs also challenge their conditions of detention, including the frequency of communications between Plaintiff Padilla-Gonzales and D.A. and A.A. (Am. Compl. ¶¶ 24, 88), lack of adequate computer systems for tracking children (*id.* ¶¶ 24, 28), crowding, temperature and lighting (*id.* ¶¶ 21, 40, 52, 59, 75, 80), removal of Plaintiff Padilla-Gonzales' crutches (*id.* ¶¶ 8, 83), adequacy of restraints when Plaintiff Padilla-Gonzales was transported (*id.* ¶ 55, 84), and decisions regarding whether to transport her to a hospital (*id.* ¶¶ 8, 58, 85).[10]

Courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by the discretionary function exception because they involve discretionary decisions susceptible to policy considerations. *See, e.g., Bultema v. United States*,

---

[9] Plaintiffs' suggestion that the Flores Agreement and 8 C.F.R. § 1236.3 required immediate release of D.A. and A.A. from ORR custody is incorrect. Am. Compl. ¶ 70. Nothing in the Flores Agreement or the regulation provides a deadline for release, much less provides that release shall be immediate. Rather, those authorities merely address the individuals to whom children are released, expressing a "preference" for release to parents followed by legal guardians and adult relatives. *See* 8 C.F.R. § 1236.3 (providing "preference" for release to certain individuals); *Flores*, 828 F.3d at 908 ("if available, the parent is the first choice"). Moreover, § 1236.3 is not applicable here because it applies only to "[j]uveniles for whom bond has been posted, for whom parole is authorized, or who have been ordered released on recognizance." Similarly, the Flores Agreement provides no deadline for release of children from a facility such as Heartland. *See* Am. Compl. ¶ 69. While, as noted above, the Flores Agreement addresses the length of time minors may be detained in DHS custody, it does not say anything about the length of time children may remain in the custody of ORR.

[10] Moreover, Plaintiff Padilla-Gonzales' allegation that the government sought to mislead her into giving up her asylum rights is barred by the FTCA's "misrepresentation" exception, which bars "[a]ny claim arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 2680(h); *see Miller Harness Co. v. United States*, 241 F.2d 781, 783 (2d Cir. 1957). Similarly, Plaintiff Padilla-Gonzales' claim that the government failed to return her personal property is independently barred by 28 U.S.C. § 2680(c), which prohibits "claims arising out of the detention of goods." *See Parrot*, 536 F.3d at 635-36; *Halverson v. United States*, 972 F.2d 654, 656 (5th Cir. 1992).

359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Santa-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (whether to permit certain instruments in detention facility susceptible to policy analysis); *Vinzant v. United States*, 458 F. App'x 329, 333 (5th Cir. 2012) (decision not to use seatbelts when transporting prisoners is policy-based decision); *Cosby v. Marshals Service*, 520 F. App'x 819, 821 (11th Cir. 2013) (detainee decisions involve "several policy considerations … including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Menolascina v. United* States, No. 12-cv-90, 2013 WL 707920, at *2 (N.D. Ill. Feb. 26, 2013) ("[D]etermining how to load prisoners into a van to transport them back to prison – is exactly the kind of discretionary function that the exception was designed to shield."); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (DFE shielded decision to transfer prisoner); *Antonelli v. Crow*, No. 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by DFE); *Lineberry v. United States*, No. 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception").[11]  In *Peña Arita*, the court rejected plaintiffs' contention that

---

[11] The manuals and other materials cited in the Amended Complaint demonstrate that what measures are "reasonable," "acceptable", and "proper[]" involve discretionary determinations. *See, e.g.,* Am. Compl. ¶ 80 (CBP manual stating temperatures are to be "within a reasonable and comfortable range for both detainees and officers/agents"); *id.* ¶ 83 (CBP manual stating, observed medical issues should receive "appropriate" and "timely" attention); *id.* ¶ 84 (ICE manual stating transport should occur in a "safe and humane manner" and detainees should be "properly" secured); *id.* ¶ 85 (ICE manual providing detainees entitled to "request" care and should receive "timely" follow-up); *id.* ¶ 81 (CBP manual stating officers should behave in manner that "reflects positively" on agency and treat others with "dignity and respect"); *id.* ¶ 73 (Flores provisions calling for access to food, water, sinks and toilets "as appropriate" and "adequate" temperature, ventilation, and supervision).

associated determinations regarding conditions of confinement such as transfer decisions, where and how to house detainees or appropriate medical care were "nondiscretionary" in nature. Concluding that the discretionary function exception applied because the government decision-making regarding conditions of confinement was "susceptible to policy analysis," the court observed that it "must generally defer to the expertise of prison officials and is not to substitute its judgment for the considerations of such officials." 470 F. Supp. 3d at 691.

With regard to Plaintiffs' challenge to the frequency of their communications, courts have held that detained individuals have "no right to unlimited telephone use," *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994), and that a detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests," *id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *see also Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

### B. Plaintiffs' claims relating to the decision to transfer D.A. and A.A. to the custody of ORR is barred by the FTCA's exception for actions taken while reasonably executing the law.

Plaintiffs' claims relating to the decision to transfer D.A. and A.A. to the custody of ORR are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

This exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d

23

Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation … even though the regulation may be irregular or ineffective"). Thus, where a government employee's actions are authorized by statute or regulation – even if that statute or regulation is later found unconstitutional or invalid – the claim must be dismissed for lack of subject matter jurisdiction. *See Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Borquez v. United States*, 773 F.2d 1050, 1052-53 (9th Cir. 1985).

Here, the United States is required to "transfer the custody" of unaccompanied children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that there was no parent available to provide care and physical custody for D.A. and A.A. The government made discretionary decisions to refer Plaintiff Padilla-Gonzales for criminal prosecution, to transfer her to criminal custody for prosecution, and to detain her in a secure immigration detention facility. Once those protected discretionary determinations were made, the TVPRA required that D.A. and A.A. be transferred to ORR custody. The enforcement of that statutory command cannot form the basis of an FTCA claim.[12]

---

[12] In reaching the contrary conclusion, district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *see also C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020). But, as just described, federal law does require that children be placed into ORR custody if their parents are unavailable to provide care and physical custody. And for the reasons described above, the decision to detain those parents for prosecution is a

24

### C.      Plaintiffs' claims are barred because there is no private person analogue.

Plaintiffs' claims also fail because the government acts that Plaintiffs challenge have no private person analogue.  The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." *Id*. § 2674.  The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotations omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).  Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analogue that would support a claim under the FTCA.  The alleged harms here stem from the federal government's decision to enforce federal immigration laws, criminally prosecute certain individuals, and hold parents in custody pending immigration proceedings or prosecution, resulting

---

quintessentially discretionary one.  In *A.P.F. and C.M.*, the plaintiffs were not charged with any crime, and are distinguishable on that basis.

in their children's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, as the decisions have no private-person counterpart. *See, e.g., See Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (in matters relating to naturalization of noncitizens, "only the United States has the power to act," and, "[a]ccordingly . . . there is no private analog under state law").[13]

## V.     THE COURT SHOULD TRANSFER THIS ACTION.

In the alternative, the United States moves to transfer this case to the Western District of Texas "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Both steps of the Section 1404(a) analysis are satisfied here because (1) the Western

---

[13] Although civil in nature, immigration arrests and resulting detention are viewed as more akin to criminal enforcement. *See Ryan*, 974 F.3d at 27 ("Just as criminal arrests implicate the uniquely sovereign interests in enforcing the penal laws and protecting the public, so too do civil immigration arrests seek to vindicate similar kinds of interests in controlling immigration and the presence of noncitizens in the country.").

District of Texas is the appropriate forum for this dispute, and (2) the balance of relevant factors favors litigating this action in that venue.

Section 1404(a) permits transfer to any district where the case "might have been brought." 28 U.S.C. § 1404(a). Pursuant to 28 U.S.C. § 1402(a), venue is proper in the Western District of Texas, where the majority of the allegedly tortious acts or omissions occurred. In particular, the Western District of Texas is where Plaintiff Lucinda del Carmen Padilla-Gonzales unlawfully entered the United States with D.A. and A.A.; where she was apprehended; where she was detained pending prosecution, and prosecuted; where she was separated from her minor children, D.A. and A.A.; and where she was detained pending immigration proceedings following her criminal conviction. The witnesses with relevant information, and other sources of evidence, relating to these events are predominantly in the Western District of Texas. *See Amoco*, 90 F. Supp.2d at 962 (the district where such information is found "would have greater access to this important source of proof"). Indeed, the alleged tortious act that is the centerpiece of Plaintiffs' Amended Complaint – family separation – occurred in the Western District of Texas. *Cf. Amoco*, 90 F. Supp. 2d at 961 ("the heart of the controversy" occurred in the proposed transferee district). The only connection with this District appears to be that this District is where D.A. and A.A were housed while in ORR custody.

Furthermore, the convenience of the parties and witnesses substantially favors transfer to the Western District of Texas. Plaintiffs do no allege that they live in this District; rather, upon release, they travelled to North Carolina. Am. Coml. ¶ 60. While the Amended Complaint does not name any individual agents or officers, it alleges improper conduct by many different government officials in connection with Plaintiffs' apprehensions, separation, and detention that occurred in the Western District of Texas.

27

Finally, the interests of justice also favor transfer. This analysis "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Espino v. Top Draw Freight Sys., Inc.*, 713 F. Supp. 1243, 1245 (N.D. Ill. 1989). It includes such considerations as the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale. *H&V Silver Mine, Inc. v. Cohen*, No. 96 C 3550, 1997 WL 639229, at *5 (N.D. Ill. Oct. 6, 1997). Plaintiffs' allegations focus significantly on the actions of government employees in the Western District of Texas and the conditions of facilities therein. Thus, the U.S. District Court for the Western District of Texas has the stronger interest in hearing claims related to conduct and conditions occurring it its district.

## VI.    CONCLUSION

For the foregoing reasons, Defendant United States requests that this action be dismissed, or transferred to the Western District of Texas.

Date: February 15, 2022                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Acting Assistant Attorney General

                                           JAMES G. TOUHEY, JR.
                                           Director, Torts Branch

                                           *s/ Phil MacWilliams*
                                           PHILIP D. MACWILLIAMS
                                           Trial Attorney
                                           D.C. Bar No. 482883
                                           E-mail: phil.macwilliams@usdoj.gov
                                           U.S. Department of Justice
                                           Civil Division, Torts Branch
                                           Benjamin Franklin Station, P.O. Box 888
                                           Washington, DC 20044
                                           Telephone: (202) 616-4285

                                           Attorneys for United States of America

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America
