UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| D.A., A.A., and LUCINDA DEL CARMEN PADILLA-GONZALES, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 20 C 3082 |
| UNITED STATES OF AMERICA, HEARTLAND ALLIANCE FOR HUMAN NEEDS AND HUMAN RIGHTS, and HEARTLAND HUMAN CARE SERVICES, INC., | ) ) ) ) ) ) | Judge Pacold |
| Defendants. | ) ) | |

## REPLY IN SUPPORT OF THE UNITED STATES' AMENDED MOTION TO DISMISS

Date:  April 6, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.     PLAINTIFFS' CLAIMS ARE BARRED .......................................................... 1

  A.  Plaintiffs' Claims Based on Their Separation Are Barred by the Discretionary Function Exception ......................................................................................................... 1

  B.  The Decision Concerning When To Release D.A. and A.A. to their Father is Protected by the Discretionary Function Exception ................................................................ 6

  C.  Plaintiffs' Allegations of Unconstitutional Conduct Do Not Defeat the Discretionary Function Exception ................................................................................................. 8

  D.  Plaintiffs' Claims Based Upon Their Treatment While In Custody Are Barred By The Discretionary Function Exception ....................................................................... 11

  E.  Plaintiffs' Claim Relating To The Decision To Transfer D.A. and A.A. To ORR Custody Is Barred By The FTCA's Exception for Actions Taken in Executing the Law ............... 12

  F.  Plaintiffs' Challenges to their Separation Are Barred Because There Is No Private Person Analogue to the Challenged Conduct ................................................................. 13

II.    THE COURT SHOULD TRANSFER THIS ACTION TO THE WESTERN DISTRICT OF TEXAS ................................................................................................................. 14

III.   CONCLUSION ........................................................................................... 15

IV.   CERTIFICATE OF SERVICE ..................................................................... 15

i

# TABLE OF AUTHORITIES

**Statutes:**

6 U.S.C. § 202 ................................................................................................................ 9

6 U.S.C. § 279 ................................................................................................................ 9

8 U.S.C. § 1103 .............................................................................................................. 9

8 U.S.C. § 1225 .............................................................................................................. 9

8 U.S.C. § 1226 .............................................................................................................. 9

8 U.S.C. § 1231 .............................................................................................................. 9

8 U.S.C. § 1232 .................................................................................................. 4, 5, 7, 9, 12

8 U.S.C. § 1325 .............................................................................................................. 1

8 U.S.C. § 1357 .............................................................................................................. 9

**Federal Rules:**

Fed. R. Civ. P. 12 ........................................................................................................... 1

**Cases:**

*Amoco Oil Co. v. Mobil Oil Corp.*,
    90 F. Supp. 2d 958 (N.D. Ill. 2000) ........................................................................ 15

*Baer v. United States*,
    722 F.3d 168 (3d Cir. 2013) ..................................................................................... 3

*Bryan v. United States*,
    913 F.3d 356 (3d Cir. 2019) ..................................................................................... 10

*Calderon v. United States*,
    123 F.3d 947 (7th Cir.1997) ..................................................................................... 4

*Camreta v. Greene*,
    563 U.S. 692 (2011) ................................................................................................. 11

*Cassens v. St. Louis River Cruise Lines, Inc.*,
    44 F.3d 508 (7th Cir. 1995) ..................................................................................... 4

*Castro v. United States*,
    608 F.3d 266 (5th Cir. 2010) ................................................................................... 10

*Cope v. Scott*,
    45 F.3d 445 (D.C. Cir. 1995) ................................................................................... 3

*D.B. v. Poston*,
    119 F. Supp. 3d 472 (E.D. Va. 2015) ..................................................................... 13

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) ................................................................................... 6

*Garza v. United States*,
    161 F. App'x 341 (5th Cir. 2005) ............................................................................ 10

*Gaubert v. United States,*
  499 U.S. 315 (1991) ................................................................................ 6, 9

*Gonzalez v. United States,*
  814 F.3d 1022 (9th Cir. 2016) ................................................................. 3

*Kiiskila v. United States,*
  466 F.2d 626 (7th Cir. 1972) ................................................................... 8

*Limone v. United States,*
  579 F.3d 79 (1st Cir. 2009) ..................................................................... 10

*Linder v. United States,*
  937 F.3d 1087 (7th Cir. 2019) ................................................................. 8

*Loumiet v. United States,*
  828 F.3d 935 (D.C. Cir. 2016) ................................................................. 10

*Maas v. United States,*
  94 F.3d 291 (7th Cir. 1996) ..................................................................... 3

*Menolascina v. United States,*
  No. 12-cv-90, 2013 WL 707920 (N.D. Ill. Feb. 26, 2013) ...................... 12

*Ms. L v. ICE,*
  310 F. Supp. 3d 1133 (S.D. Cal.) ............................................................ 3, 10

*Ms. L v. ICE,*
  415 F. Supp. 3d 980 (S.D. Cal. 2020) ..................................................... 5

*Nurse v. United States,*
  226 F.3d 996 (9th Cir. 2000) ................................................................... 10

*Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't,*
  319 F. Supp. 3d 491 (D.D.C. 2018) ......................................................... 3, 10

*Palay v. United States,*
  349 F.3d 418 (7th Cir. 2003) ................................................................... 2

*Prince v. Massachusetts,*
  321 U.S. 158 (1944) ................................................................................ 10

*Quilloin v. Walcott,*
  434 U.S. 246 (1978) ................................................................................ 10

*Ruiz v. United States,*
  No. 13-cv-1241, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ............... 12

*Santosky v. Kramer,*
  455 U.S. 745 (1982) ................................................................................ 10

*Sutton v. United States,*
  819 F.2d 1289 (5th Cir. 1987) ................................................................. 10

*Troxel v. Granville*,
 530 U.S. 57 (2000) ........................................................................................................... 10

*United States v. Dominguez-Portillo*,
 No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ........................................... 6

*W.S.R. v. Sessions*,
 318 F. Supp. 3d 1116 (N.D. Ill. 2018) ........................................................................... 3, 10

*Ziglar v. Abbasi*,
 137 S. Ct. 1843 (2017) ...................................................................................................... 8

The United States filed an amended motion to dismiss ("MTD") this action pursuant to

Fed. R. Civ. P. 12(b)(1), on the grounds that Plaintiffs' claims are barred by the Federal Tort

Claims Act (FTCA)'s discretionary function exception and the exception for actions taken in

executing the law, and because there is no private person analogue to the challenged conduct

upon which Plaintiffs' claims principally are based.  (ECF No. 73).   Alternatively, the United

States moved for a transfer of venue to the Western District of Texas.  *Id*.  Plaintiffs filed an

opposition to the United States' motion ("Opposition" or "Opp.").  (ECF No. 77.)  Plaintiffs

group their claims as falling into two categories: (1) those based upon the separation of Plaintiff

Padilla-Gonzales from D.A. and A.A. and (2) those based upon their treatment while in custody.

Opp. at 4 & n.1. For the reasons stated in the United States' motion, and in this reply in support,

the FTCA does not waive sovereign immunity for the claims in either category.  Therefore, this

action must be dismissed.

## I.     PLAINTIFFS' CLAIMS ARE BARRED

### A.  Plaintiffs' Claims Based on Their Separation Are Barred by the Discretionary Function Exception

Consistent with the Executive Branch enforcement policies addressed in the motion to

dismiss, Plaintiff Padilla-Gonzales was referred for prosecution and charged with violating 8

U.S.C. § 1325(a)(1) and, as a result, transported from the Ysleta Border Patrol station in El Paso,

Texas, to criminal custody for criminal proceedings.  MTD at 6-8.  Accordingly, she was no

longer available to provide care and physical custody of her children, D.A. and A.A, with whom

she arrived in the United States.  D.A. and A.A. were designated unaccompanied minor children

(UAC) and transferred from Border Patrol custody to the custody of the Department of Health

and Human Services (HHS)'s Office of Refugees and Resettlement (ORR), pursuant to the

dictates of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008

1

("TVPRA"). Following the conclusion of criminal proceedings – six days after her apprehension by Border Patrol – Plaintiff Padilla-Gonzales was transferred to the custody of Immigration and Customs Enforcement (ICE) and housed in secure adult detention.[1]

Plaintiffs acknowledge that (1) whether to refer Plaintiff Padilla-Gonzales for prosecution for violation of criminal statute, (2) whether to prosecute her, and (3) whether and where to detain her during removal proceedings are areas where the Government has "the power and authority to set policy[.]" Opp. at 4. In arguing that the discretionary function exception does not apply, Plaintiffs do not focus on the Executive Branch policies to enforce federal immigration statutes at the time of their unlawful entry into the United States, and instead focus on the "actions of individual DHS agents" who separated Plaintiff Padilla-Gonzales and D.A. and A.A. and interacted with them while they were in federal custody. Opp at 4 & n.1.[2]

Plaintiffs' arguments are unsuccessful. First, it is well-established in this Circuit that the government actor whose conduct is challenged need not "belong to the policymaking or planning ranks of the government in order for the [discretionary function] exception to apply." *Palay v. United States*, 349 F.3d 418, 428 (7th Cir. 2003) (quoting *Gaubert v. United States*, 499 U.S. 315, 324-25 (U.S. 1991)).

Second, Plaintiffs are incorrect that, despite the Executive Branch policies directing enforcement of federal immigration statutes, Border Patrol lacked discretion to separate them because "family unity" was required by CBP's General Standards on Transport, Escort,

---

[1] According to the allegations in the Amended Complaint, Plaintiffs were apprehended on May 23, 2018, and Plaintiff Padilla-Gonzales was criminally sentenced on May 29, 2018. MTD at 7.

[2] Throughout the Opposition, Plaintiffs refer generically to "DHS agents", without distinguishing between the separate components of DHS and their distinct functions, namely U.S. Border Patrol (which is component of U.S. Customs and Border Protection ("CBP"), agents of which apprehended Plaintiffs), and ICE (which took custody of Plaintiff Padilla following her criminal proceedings).

Detention and Search ("TEDS") and the Flores Agreement. Opp. at 7-12.[3] In particular, Plaintiffs cite to a provision in TEDS that states, "CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation." Opp. at 7 (citing TEDS ¶ 1.9). But determining whether family unity is "operationally feasible" or whether there is a "legal requirement" or "safety or security concern" calls for judgment by CBP employees, and TEDS does not mandate following a "precise and optionless directive." *Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996).[4] Plaintiff Padilla-Gonzales was transferred to criminal custody in connection with her prosecution and was thus separated from her children, who could not be placed in criminal custody with her.[5] And in any event, the existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion. *See* MTD at 12 (citing *Cassens v. St. Louis River Cruise Lines*, Inc., 44 F.3d 508, 513 (7th Cir. 1995) and *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir.1997)).[6]

---

[3] Plaintiffs cite to TEDS throughout the Amended Complaint, and provide a citation to where TEDS is publicly available. Am. Compl. (ECF 35) ¶¶ 76, 80, 81, 83. The stated purpose of TEDS is to provide "agency-wide policy that sets forth the first nationwide standards which govern CBP's interaction with detained individuals." For the court's convenience, a copy of TEDS is included as Exhibit A.

[4] *See also Gonzalez v. United States*, 814 F.3d 1022, 1030 (9th Cir. 2016) (the phrase "whenever feasible" confers discretion); *Baer v. United States*, 722 F.3d 168, 173 (3d Cir. 2013) (regulation stating that particular action shall be taken "as appropriate" not a mandatory directive); *Cope v. Scott*, 45 F.3d 445, 450 (D.C. Cir. 1995) (manual providing road standards to be met "to the extent practicable" not a mandatory directive).

[5] *See Ms. L v. ICE*, 310 F. Supp. 3d 1133, 1139 (S.D. Cal.) ("When a parent is charged with a criminal offense, the law ordinarily *requires* separation of the family.") (emphasis added); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1125 (N.D. Ill. 2018) ("The fathers' criminal detentions *necessitated* the separation of W.S.R. and C.D.A.") (emphasis added). Plaintiffs' reliance on *Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't*, 319 F. Supp. 3d 491, 495 n.2 (D.D.C. 2018), Opp. at 11, does not change this result, as that case addressed conduct subsequent to the criminal proceedings.

[6] Insofar as Plaintiffs rely also on *Flores*, they do not cite to a particular provision relating to maintaining family unity. Rather, as explained in the motion to dismiss, the Flores Agreement merely expresses a "preference" for the persons to whom a juvenile should be released. *See* MTD at 4-5, 20.

Plaintiffs next contend that the statutory duty under the TVPRA to transfer A.A. and D.A. to ORR custody could have been avoided if Border Patrol had waited to reunite them with Plaintiff Padilla-Gonzales following the conclusion of her criminal proceedings. Opp. at 11-12. But Plaintiffs' assertion that the Border Control could have done so only underscores that Plaintiffs challenge discretionary conduct relating to the processing and custody of minors. And regardless, the TVPRA expressly mandates that children determined to be unaccompanied – which D.A. and A.A. were once Plaintiff Padilla-Gonzales was to be prosecuted and thus transported to criminal custody – are to be transferred to ORR custody "not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). Put simply, under the TVPRA, CBP cannot simply hold UACs in its custody for an indefinite period of time awaiting the conclusion of a parent's criminal prosecution and sentence. Further, TEDS provides that "[e]very effort must be made to transfer UAC from CBP to ORR custody *as soon as possible*, but no later than 72 hours after determining that a child is a UAC." TEDS ¶ 5.6 (emphasis added).

The policy thus is to transfer all detainees, especially minors, out of Border Patrol custody as quickly as possible. *See* TEDS ¶ 4.1.1 ("Every effort must be made to hold detainees for the least amount of time required for their processing, transfer, release, or repatriation as appropriate and as operationally feasible."); TEDS ¶ 1.8. ("Every effort must be made to promptly transfer, transport, process, release, or repatriate detainees as appropriate according to each operational office's policies and procedures, and as operationally feasible."); TEDS ¶5.6 ("Whenever operationally feasible, at-risk individuals will be expeditiously processed to minimize the length of time in CBP custody").[7] Additionally, Border Patrol is to "consider the

---

[7] The definition of at-risk individuals includes juveniles. *See* TEDS ¶ 5.1

4

best interest of the juvenile at all decision points beginning at the first encounter and continuing through processing, detention, transfer, or repatriation." TEDS ¶ 1.6. The Flores Agreement likewise states that DHS "shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs[,]" Flores Agreement ¶ 11, and that DHS "shall release a minor from its custody *without unnecessary delay*[.]" *Id*. at ¶ 14 (emphasis added).

Accordingly, consistent with TEDS and the Flores Agreement, Border Patrol held Plaintiffs for as briefly as operationally possible following apprehension.[8] As such, Border Patrol was well within its discretion not to delay, for some indefinite period of time, the transfer of D.A. and A.A. from the Ysleta Border Patrol holding facility to await the conclusion of Plaintiff Padilla-Gonzales' criminal custody.[9] Such discretionary decision-making implicates important policy considerations relating to the safety and well-being of children in Border Patrol custody, as well as considerations of how extending minors' time in custody diverts Border Patrol resources from critical border security functions to providing care to children.

Assuming for argument's sake that Border Patrol somehow could have maintained custody of D.A. and A.A. until the conclusion of Plaintiff Padilla-Gonzales' criminal proceedings six days later, re-unification only could have been possible at that point if ICE were not to hold Plaintiff Padilla-Gonzales in secure adult immigration detention pending removal proceedings. *See* MTD 18-20. Yet Plaintiffs do not contest that the decision of whether to hold

---

[8] *See Ms. L v. ICE*, 415 F.Supp.3d 980, 992 n.8 (S.D. Cal. 2020) (relying on declaration stating that "Border Patrol stations are designed for short-term custody[,]" and because "*Border Patrol Stations were not designed to hold individuals—particularly children—for a long period of time*. . . Border Patrol Agents process all individuals as expeditiously as possible and make every effort to transfer them to facilities that are more appropriate for longer-term detention (such as those run by ... [ICE and ORR]" ) (bracketed language in original) (emphasis added).

[9] *See also* Exhibit B (transfer to U.S. Marshals Service custody on May 24, 2018).

5

Plaintiff Padilla-Gonzales in secure adult immigration detention is discretionary and protected by the discretionary function exception.

Plaintiffs next assert that Plaintiff Padilla-Gonzales, as a parent, could have waived her children's rights under the Flores Agreement to allow Plaintiffs to be held together for the duration of their immigration proceedings. Opp. at 10. But Plaintiffs do not contest that ICE possessed the policy-based, discretionary authority to determine to detain Plaintiff Padilla-Gonzales in secure adult detention. *See* MTD at 4-5. Moreover, as the United States explained in its opening motion, and Plaintiffs do not refute, the Flores Agreement does not require release of a detained parent, does not compel release of a child to a detained parent, or prescribe that a parent be held with her child while in immigration detention. *See* MTD at 4-5 (citing *Flores v. Lynch*, 828 F.3d 898, 906, 908 (9th Cir. 2016); *United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[Flores] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]")).

Finally, Plaintiffs concede that decisions regarding whether to prosecute and where to detain non-citizens are policy decisions, but contend that the discretionary function exception does not apply because of the alleged motivations for those decisions. Opp. at 5. Plaintiffs' claims are immaterial: the subjective motivations and intent of federal officials and employees are not relevant to the discretionary function exception analysis, as shown in the government's motion. *See* MTD at 13-14; *Gaubert*, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation.").

**B. The Decision Concerning When To Release D.A. and A.A. to their Father is Protected by the Discretionary Function Exception**

Plaintiffs argue that transfer of D.A. and A.A. to ORR custody could have been avoided by instead releasing them to their father, who had entered the United States a month before Plaintiffs with other family members and was located in North Carolina.  Opp. at 1-2, 10; Am. Compl. ¶¶ 2, 30.  But the decision by Border Patrol to designate children such as D.A. and A.A. as UACs and transfer custody to ORR pursuant to the TVRPA – rather than prolong their detention by CBP for some unpredictable amount of time while attempting to verify a potential sponsor – is a discretionary decision grounded in a balancing of policy considerations, such as the best interests of the child and an allocation of Border Patrol's limited personnel and resources.  Indeed, such discretionary decision-making is consistent with the provisions in TEDSs and the Flores Agreement regarding the transfer of minors out of their custody as expeditiously as possible.  ORR – not CBP – is the federal agency charged with providing custody and care for minors like D.A. and A.A. when the parent with whom they arrived in the United States is unavailable to do so, and to decide to whom a child should be released.  *See* 8 U.S.C. § 1232(c)(3).  Plaintiffs do not contest that Border Patrol has the discretion to designate children as UACs, which then compels their transfer to ORR custody pursuant to the TVPRA.  Additionally, Plaintiffs do not contest that before minors can be released to sponsors, ORR seeks to verify the "custodian's identity and relationship to the child" and ensure "that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A); *see* MTD 4, 20.[10]

---

[10] Plaintiffs argue that "there was no uncertainty about the parentage or fitness of either of A.A. and D.A.'s parents." Opp. at 10 n.2.  But this argument mischaracterizes the allegations in the Amended Complaint regarding what Border Patrol agents knew about D.A. and A.A.'s father's location, parentage, fitness, and willingness to take custody of the children.  The Amended Complaint alleges that after being transferred to another Border Patrol facility to await transfer to ORR custody, D.A. had "a small piece of paper with phone numbers on it, and she showed it to the federal agents so that they would let her call her family[,]" and was told "she could not speak to her father."  Am. Compl. ¶ 28.  Plaintiffs did not allege in the Amended Complaint that Border Patrol agents in fact had determined that D.A. and A.A.'s father was

### C.  Plaintiffs' Allegations of Unconstitutional Conduct Do Not Defeat the Discretionary Function Exception

Relying on non-binding out-of-Circuit case law, Plaintiffs attempt to circumvent the discretionary function exception by arguing that Plaintiffs' separation violated their constitutional right to family integrity.  Opp. at 12.  Such an argument is unavailing because the Seventh Circuit has held that the discretionary function exception applies even if the conduct on which the claim is based allegedly violates the Constitution.  *See* MTD at 14-15 (citing *Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) and *Kiiskila v. United States*, 466 F.2d 626, 627-28 (7th Cir. 1972)).  Faced with this binding Seventh Circuit precedent, Plaintiffs assert (in a footnote) that *Linder* and *Kiiskila* "merely held that where a statute or regulation expressly grants discretion, the DFE will apply to government officials exercising that discretion, even where such exercise ultimately violated the Constitution[.]"  Opp. at 13 n.4.[11]  Plaintiffs are incorrect, though, that in order for the discretionary function exception to bar their claims there must have been an explicit grant of statutory authority to exercise discretion.  In so contending, Plaintiffs misunderstand the first prong of the discretionary function analysis.  Contrary to Plaintiffs' view,

---

their father or that he was fit, available, and willing to take custody of them.  Rather, Plaintiffs alleged that "[t]here was no basis to dispute his parentage, and in any event his paternity could have been quickly verified."  Am. Compl. ¶ 30.  Importantly, the I-213s created during the processing of Plaintiffs do not reflect such information.  *See* Exhibit B (declarations and attachments thereto).  Rather, these documents note their intention upon entering the United States was to go to South Carolina where an individual described as Padilla's brother-in-law and the children's uncle was located.  *See* Exhibit B. In any event, for the reasons noted, even if, for the sake of argument, Plaintiffs' new allegations are accepted as true, they do not change the inherently discretionary nature of the decisions Border Patrol makes when deciding what to do when children are separated from the parent with whom they arrived and there may be another parent present somewhere else in the United States.

[11] The Supreme Court has expressly held that government officials who exercise discretionary functions are entitled to qualified immunity under certain circumstances in damages suits for violating the Constitution while exercising their discretion.  In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Court summarized this immunity as striking a balance between two competing interests and, ultimately, turning on the "clearly established law" at the time the official actions were taken.  *Id.* at 1866 (citations omitted).  Thus, the Supreme Court has long recognized that conduct may be "discretionary" even if it later is determined to have violated the Constitution.

the Supreme Court has made clear that the existence of discretion for purposes of application of the discretionary function exception turns on the *lack* of a "federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow," *Gaubert*, 499 U.S. at 322, not on an express statutory or regulatory grant of discretion.

Plaintiffs do not contest that their separation was a result of the execution of statutory authorities that afforded discretion to federal officials and employees. *See* MTD at 2-4. In particular, DHS, of which Border Patrol is a component, possessed the statutory authority to make the discretionary decision whether to refer an individual for criminal prosecution. *See* 6 U.S.C. § 202; 8 U.S.C. § 1103. DHS possessed the statutory authority under the TVPRA to make the discretionary determination whether a minor in custody is a UAC, necessitating transfer of the child to ORR. *See* 8 U.S.C. § 1232(b)(2) and (b)(3) (imposing duty on federal agencies to notify ORR of the apprehension or discovery of an unaccompanied alien child and to transfer that child to ORR custody); *see also* 6 U.S.C. § 279(g)(2) (providing definition of UAC for federal agencies to determine status of children in custody). And DHS was granted the statutory authority to make the discretionary determination whether and where to house immigration detainees. *See* 8 U.S.C. §§ 1225(b); 1226; 1231(g)(1); 1357.

Finally, although binding Seventh Circuit authority controls here, it bears noting that the out-of-circuit cases upon which Plaintiffs rely do not hold, as Plaintiffs contend, that an alleged constitutional violation necessarily renders the discretionary function exception inapplicable. Rather, those cases left unanswered what level of specificity in the constitutional provision is necessary to defeat application of the exception, and whether the putative constitutional right at issue must have been clearly established at the time of the challenged conduct.[12] Indeed, other

---

[12] *See Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (expressly declining to decide "the level of specificity with which a constitutional proscription must be articulated in order to

courts of appeal have looked to whether the constitutional right was "clearly established" when deciding whether a constitutional violation can defeat the discretionary function exception. *See, e.g., Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the discretionary function exception).

In arguing that there was a "clearly established" right to family unity in the context of civil immigration detention, Plaintiffs rely on the decisions of three district court judges, all of which were rendered *after* the conduct that forms the basis for Plaintiffs' claims. Those decisions therefore are irrelevant to the question of whether the right at issue was "clearly established" at the time of the challenged conduct here.[13] Moreover, decisions of district judges do not create a "clearly established" right. *See Camreta v. Greene*, 563 U.S. 692, 708 n.7 (2011) (decisions of a federal district court judge are not binding precedent in either a different judicial district, the same judicial district, or even on the same judge in a different case). Also, Plaintiffs fail to

---

remove the discretion of the actor"); *Loumiet v. United States*, 828 F.3d 935, 946 (D.C. Cir. 2016) (remanding to the district court to decide in the first instance whether the conduct at issue violated clearly established constitutional right; *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) (holding the discretionary function exception did not apply where there was "a *clear* violation of due process.") (emphasis added). And while Plaintiffs cite *dicta* from the Fifth Circuit panel in *Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987) to argue that the discretionary function exception is invalidated by alleged constitutional violations (Opp. at 10), Plaintiffs ignore the Fifth Circuit's subsequent *en banc* ruling in *Castro v. United States*, 608 F.3d 266 (5th Cir. 2010), which reinstated the district court's decision rejecting this position. *See also Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. 2005) (holding that the Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable").

[13] Opp. at 14 (citing *Ms. L.*, 310 F. Supp. 3d at 1142–44; *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1126 (N.D. Ill. 2018); and *Jacinto-Castanon de Nolasco*, 319 F. Supp. 3d at 499). The additional cases Plaintiffs cite do not involve detainees and thus are inapposite. Opp. at 13-14 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982) (termination of parental rights); *Troxel v. Granville*, 530 U.S. 57 (2000) (visitation rights of grandparents); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (parental right to give children religious training and encourage them in the practice of religious belief); *Quillon v. Walcott*, 434 U.S. 246 (1978) (right to challenge adoption)).

address altogether the Fourth Circuit's published decision cited by the United States which did

not find a right to family integrity in the context of immigration detention. *See* MTD at 11 n.6

(citing *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019)).

Further, Plaintiffs' attempt to avoid the discretionary function exception by alleging

violations of the Equal Protection Clause fares no better. Opp. at 14-15. As stated above, under

controlling Seventh Circuit precedent, constitutional violations do not render inapplicable the

exception.

### D.  Plaintiffs' Claims Based Upon Their Treatment While In Custody Are Barred By The Discretionary Function Exception

Plaintiffs contend that the government failed to explain how the alleged treatment of

Plaintiffs during their custody was susceptible to policy analysis. Opp. at 6. To the contrary, the

United States cited numerous cases directly addressing the very conduct put in issue by Plaintiffs

– that is, the objects detainees may maintain possession of while in detention; whether and when

to arrange medical treatment; the temperature of the facilities; communications; and how to

transport detainees – which held that claims based on such conduct met *both* prongs of the

discretionary function exception. *See* MTD at 21-23.

Plaintiffs largely fail to respond to this argument, instead addressing only the transport of

detainees by arguing that the exception does not apply to "everything" that may happen during

transport. Opp.at 6. However, the exception is not asserted here for all types of acts or omissions

that may occur during transport, but the specific issue raised by Plaintiffs regarding the securing

of a detainee during transport. On this specific issue, the discretionary function exception clearly

applies. *See* MTD at 22 (citing *Menolascina v. United* States, No. 12-cv-90, 2013 WL 707920,

at *2 (N.D. Ill. Feb. 26, 2013). Plaintiffs also rely on *Ruiz v. United States*, No. 13-cv-1241,

2014 WL 4662241, at *5 (E.D.N.Y. Sept. 18, 2014), Opp. at 5, although it is not clear whether

they do so in regard to the separation at issue here or their treatment while in custody. In any event, it is an un-published district court order that is completely inapposite. In *Ruiz*, a young U.S. citizen was detained at the airport following her return from Guatemala because her adult traveling companion was inadmissible. Here, the context is completely different, and involves three individuals who unlawfully entered the United States and, consequently, were lawfully detained in a Border Patrol facility while awaiting transfer. In this particular setting, the length of time in custody while awaiting transfer, where to hold such individuals while awaiting transfer, and whether to facilitate contact with putative family members while in the process of transfer, all involve a balancing of considerations, such as how to provide detainee care while efficiently managing Border Patrol operations.

### E. Plaintiffs' Claim Relating To The Decision To Transfer D.A. and A.A. To ORR Custody Is Barred By The FTCA's Exception for Actions Taken in Executing the Law

Plaintiffs argue that the government was not executing a statute or regulation when it separated the Plaintiff families. On the contrary, the TVPRA required the Government to transfer the plaintiff children to ORR custody within 72 hours of the determination that the children were "unaccompanied."

As an initial matter, the decision to determine that the Plaintiff children were "unaccompanied" within the meaning of the TVPRA is a discretionary decision that cannot be challenged in an FTCA action. *See* MTD at 19-20; *D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."). Once this discretionary decision was made, execution of the TVPRA required their transfer to the custody of ORR. *See* MTD at 24 (citing 8 U.S.C. § 1232(b)(3)).

Nor can Plaintiffs avoid the exception by characterizing their separation as resulting from the execution of a policy, rather than the execution of federal statutes. Opp. at 17. While the

decisions to refer Plaintiff Padilla-Gonzales for prosecution and to prosecute her – rendering her unavailable to provide custody and care for D.A. and A.A. – were in accordance with the Executive Branch policies in effect at the time, as explained above, the TVPRA required the transfer of the children to the care and physical custody of ORR, once the discretionary decision was made that the children were unaccompanied.

Finally, Plaintiffs cannot avoid this exception by conflating the decisions resulting in their separation with allegations relating to their conditions of confinement. Opp. at 19. The challenged actions are distinct, and Plaintiffs' allegations of mistreatment while in federal custody do not negate that their separation was occasioned by execution of the TVPRA to transfer D.A. and A.A. to ORR custody.

### F. Plaintiffs' Challenges to their Separation Are Barred Because There Is No Private Person Analogue to the Challenged Conduct

Plaintiffs' challenges to their separation and the failure to release D.A. and A.A. to their father fail as a matter of law because there is no private person analogue to these decisions. As the United States established in its opening motion, those decisions were the result of an exercise of statutory authority that only federal employees possesses. In an effort to change the focus, Plaintiffs attempt to identify a private person analogue in wrongful imprisonment cases. Opp. at 21-22. Reliance on such cases, however, is unavailing because Plaintiffs do not dispute that Plaintiff Padilla-Gonzales was lawfully held in criminal custody and secure adult immigration detention pending immigration proceedings. Moreover, there was nothing unlawful about the transfer of D.A. and A.A. from Border Patrol to ORR. Plaintiffs also cite to cases involving the unlawful taking or concealing of a child. Opp. at 22-23. Such cases do not supply the necessary analogous private conduct, as federal officials did not unlawfully take or conceal D.A. and A.A. Rather, as demonstrated in the United States' opening motion and herein, federal employees

made decisions, authorized by federal law, regarding the detention and transfer of custody of non-citizens, and that private persons are not empowered to do.

## II.     THE COURT SHOULD TRANSFER THIS ACTION TO THE WESTERN DISTRICT OF TEXAS

Plaintiffs oppose transfer of this action to the Western District of Texas primarily on the ground that their choice of forum should be entitled to "substantial deference.  Opp. at 26.  But such choice does not control when, as here, the balance of factors point to transferring venue. Indeed, Plaintiffs acknowledge that "witnesses in this case will undoubtedly be located in the Western District of Texas[.]"  Opp. at 28.  Plaintiffs argue that this district is more convenient for some witness employed by Heartland (where D.A. and A.A. were placed while in ORR custody), but Heartland has been dismissed as a co-defendant from the case, which necessarily will reduce the number of Heartland employees as potential witnesses.  ECF No. 75.  Moreover, the alleged acts or omissions that occurred in this district while D.A. and A.A. were in ORR custody – namely, the alleged lack of communication with Plaintiff Padilla-Gonzales and the alleged delays in releasing D.A. and A.A. from ORR custody to their father – are ancillary to Plaintiffs' separation, which is the conduct at the heart of this case.  *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 961 (N.D. Ill. 2000) (ordering transfer when "the heart of the controversy" occurred in the proposed transferee district).

### III.    CONCLUSION

For the foregoing reasons, this action should be dismissed, or in the alternative transferred to the Western District of Texas.


Date: April 6, 2022                     Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General
                                        Civil Division

                                        JAMES G. TOUHEY, JR.
                                        Director, Torts Branch

                                        *s/ Phil MacWilliams*
                                        PHILIP D. MACWILLIAMS
                                        Trial Attorney
                                        D.C. Bar No. 482883
                                        E-mail: phil.macwilliams@usdoj.gov
                                        U.S. Department of Justice
                                        Civil Division, Torts Branch
                                        Benjamin Franklin Station, P.O. Box 888
                                        Washington, DC 20044
                                        Telephone: (202) 616-4285

                                        Attorneys for United States of America


## CERTIFICATE OF SERVICE


I hereby certify that on April 6, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


                                        *s/Phil MacWilliams*
                                        PHILIP D. MACWILLIAMS
                                        Attorney for United States of America